# IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA CIVIL DIVISION

| | |
|---|---|
| **CLAUDIA A. BARBER** | ) |
| **10 OAK RUN ROAD** | ) |
| **LAUREL, MD 20724** | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| **v.** | ) |
| | )   **Jury Trial Demand** |
| **DISTRICT OF COLUMBIA GOVERNMENT** | ) |
| **441 Fourth Street, NW, Suite 1100S** | ) |
| **Washington, DC 20001** | ) |
| | )   **Civil Action No.: 17-620** |
| Serve on: | ) |
| | ) |
| **Mayor Muriel Bowser** | ) |
| **1350 Pennsylvania Avenue, NW, Suite 316** | ) |
| **Washington, DC 20004** | ) |
| | ) |
| **Karl Racine, D.C. Attorney General** | ) |
| **441 Fourth Street, NW, Suite 1100S** | ) |
| **Washington, DC 20001** | ) |
| | ) |
| **and** | ) |
| | ) |
| **EUGENE ADAMS** | ) |
| **441 Fourth Street, NW, Suite 450N** | ) |
| **Washington, DC 20001** | ) |
| | ) |
| **and** | ) |
| | ) |
| **VANESSSA NATALE** | ) |
| **441 Fourth Street, NW, Suite 450N** | ) |
| **Washington, DC 20001** | ) |
| | ) |
| **and** | ) |
| | ) |
| **SHAWN NOLEN** | ) |
| **441 Fourth Street, NW, Suite 450N** | ) |
| **Washington, DC 20001** | ) |
| | ) |
| **and** | ) |

1

RONALD JARASHOW                          )
162 West Street                          )
Annapolis, MD 21401                      )
                                         )
                    *Defendants*.        )
_____ )

## COMPLAINT

Plaintiff Claudia A. Barber, by and through counsel, hereby files this Complaint against Defendant the District of Columbia ("the District") for violations of Plaintiff's procedural and substantive due process rights under the Fifth Amendment to the U.S. Constitution; a violation of the Equal Protection Clause under the Fourteenth Amendment to the U.S. Constitution; and a constitutional violation resulting from a custom or policy of the District of Columbia, 42 U.S.C. § 1983.  In addition, Plaintiff Barber brings claims against Defendants the District, Eugene Adams, Vanessa Natale, Shawn Nolen, and Ronald Jarashow for conspiring for the purpose of depriving Plaintiff of the equal protection of the laws, 42 U.S.C. § 1985(3); against Defendants the District, Adams, Natale, and Nolan for a violation of the District of Columbia Whistleblower Protection Act; and against Defendant Jarashow for interference with contract.

### Jurisdiction and Venue

1.      This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 1331 and 2201(a).

2.      Plaintiff has exhausted all administrative remedies prior to filing suit.

3.      Venue is proper in this court pursuant to 28 U.S.C. §§ 1391(b) and 1391(e)(1) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendants may be found in this judicial district.

2

## Parties

4.     Plaintiff Claudia A. Barber was a former Administrative Law Judge ("ALJ") at the District of Columbia Office of Administrative Hearings ("OAH").  She is a citizen of the United States and a resident of the state of Maryland.

5.     The District of Columbia is a municipal government.  Defendant Adams is the Chief Administrative Law Judge of OAH.  Defendant Natale is the OAH General Counsel, and Defendant Nolen is an attorney advisor for OAH.  Defendants the District of Columbia, Adams, Natale and Nolen were Plaintiff's employers within the meaning of the District of Columbia Whistleblower Protection Act.  Defendants Adams, Natale, Nolen also conspired with one or more other persons for the purpose of depriving Plaintiff equal protection of the laws or equal privileges under the laws.

6.     The District of Columbia Commission on Selection and Tenure ("The COST") is a Commission of the District of Columbia government, responsible for hiring, discipline and removal actions against OAH Administrative Law Judges.  At all times relevant to this matter, The COST voting members are comprised of Superior Court Judge Yvonne Williams, and attorneys Joseph Onek and James Cooper.

7.     Defendant Jarashow is a former Anne Arundel County Circuit Court judge, who interfered with Plaintiff Barber's employment with OAH, and conspired with one or more other persons for the purpose of depriving Plaintiff equal protection of the laws or equal privileges under the laws.

## Factual Allegations

8.     Plaintiff Claudia A. Barber was employed as an ALJ at the OAH from 2005 through August 2016.  Throughout her tenure, she met and/or exceeded performance

expectations for her position.  Plaintiff Barber is a resident of Anne Arundel County, Maryland.

9.      In 2015, ALJ Barber began contemplating whether she would and could become a candidate for a judge position at the Circuit Court for Anne Arundel County.  On December 8, 2015, ALJ Barber sent an email to The COST Chair Yvonne Williams with the subject line:  Advisory Opinion sought by Commission on Selection and Tenure.  In this email, ALJ Barber sought an advisory opinion from The COST as to whether or not an ALJ at OAH can run in a judicial election for a judicial vacancy without resigning as an ALJ. In the email, she specifically noted that Canon 4 of the Annotated Model Code of Conduct provides that judges need not resign when seeking another judicial position, which appeared to contrast with OAH's Ethics Code which states that an ALJ should resign when an ALJ becomes a candidate for a judicial vacancy that involves a partisan primary.  Judge Williams responded on December 15, 2015, advising ALJ Barber that The COST was not the appropriate forum to consider the issue and suggested that ALJ Barber contact the District of Columbia Board of Ethics and Government Accountability (BEGA).

10.     Following the suggestion of Judge Williams, ALJ Barber contacted Brian Flowers, General Counsel at BEGA, and presented the same question.  On December 18, 2015, Mr. Flowers responded to ALJ Barber's inquiry.  He opined that the District of Columbia Ethics Act would not prohibit an ALJ from running for judicial office in an election that is not regulated by the District of Columbia Board of Elections.  He further communicated that he could not offer an opinion on whether running for office would

comport with OAH rules that apply to ALJs or the application of the D.C. Rules of Professional Conduct because those authorities were outside the jurisdiction of BEGA.

11.     ALJ Barber sent a follow up email to Judge Williams on December 31, 2015, advising that she received a response from Brian Flowers and providing a copy of his email response.   She stated that she "wanted reassurance from the Commission on Selection and Tenure as the disciplinary and enforcement authority for ALJs that [she] would not be forced to resign as an ALJ under Section V.U of [OAH's] ethics code provided [she] follow[s] the parameters Mr. Flowers set forth [in his email response]."

12.     On January 14, 2016, ALJ Barber sent Judge Williams an email and inquired if there was a response to her December 31, 2015 email because the filing deadline for judicial candidates to submit a certificate of candidacy was less than three weeks away, and she advised that she had conducted further research and learned that the American Bar Association considered Maryland's judicial elections to be nonpartisan, even though the primaries are considered partisan because Maryland has closed primary elections. ALJ Barber did not receive a response from Judge Williams.

13.     On January 20, 2016, ALJ Barber filed with the State of Maryland a Certificate of Candidacy for a Judge of the Circuit Court for the Fifth Judicial Circuit, which is Anne Arundel County.  In the Certificate, ALJ Barber listed her Party Affiliation as "Judicial."

14.     On or about January 2016, Ms. Barber made protected disclosures when she filed a complaint with the Office of D.C. Inspector General and disclosed that Defendant Adams ordered OAH ALJs to attend mandatory diversity training and later allowed a large number of Caucasian ALJs to not attend the training that was already paid for by taxpayers.  By April 2016, Defendant Adams was contacted by an individual who was

contacted by an investigator in the Office of Inspector General and commented that ALJ Barber filed the complaint against him with the Office of Inspector General.

15.     On February 4, 2016, OAH Chief Administrative Law Judge Eugene Adams received a letter from a Maryland attorney, Defendant Ronald H. Jarashow, a former Anne Arundel County Circuit Court judge, who was supporting other candidates for the vacant circuit court judge positions.  Defendant Jarashow complained that ALJ Barber had filed as a candidate for a Judge of the Circuit Court for Anne Arundel County, Maryland, and should be required to resign from her ALJ position or be terminated. Defendant Jarashow argued that under the District of Columbia Code of Ethics for ALJs, Chapter V, Sections U and V, an ALJ is required to resign upon becoming a candidate in a primary election or engaging in political activity.

16.     Section V(U) of the OAH Code of Ethics provides that:

> An Administrative Law Judge shall resign from judicial office when the Administrative Law Judge becomes a candidate either in a party primary or in a partisan general election except that the Administrative Law Judge may continue to hold office, while being a candidate for election to or serving as a delegate in a jurisdiction's constitutional convention, if otherwise permitted by law to do so.

17.     Defendant Jarashow protested that ALJ Barber should not be allowed to remain in office if she remained a candidate for election, and he urged immediate action by Chief Administrative Law Judge Adams.

18.     The Jarashow letter was provided to ALJ Barber on February 5, 2016, and ALJ Barber responded by providing the information she received from Judge Williams and Mr. Flowers.   ALJ Barber did not receive an immediate response from Chief Administrative Law Judge Adams.

19.     On February 12, 2016, ALJ Barber completed a portion of her morning docket when General Counsel Vanessa Natale and Attorney Advisor Louis Neal came to her office.   At this meeting, ALJ Barber was given a letter with the subject: Notice of Violation—the Code of Ethics for OAH Administrative Law Judges, issued by Chief Administrative Law Judge Adams.   In the Notice of Violation, Chief Administrative Law Judge Adams acknowledged that he received a formal complaint from Mr. Jarashow and concluded that ALJ Barber violated Section V(U) of the Code of Ethics for OAH Administrative Law Judges, and that ALJ Barber's pursuit of the judgeship in Maryland violated several other rules governing the conduct of ALJs at OAH, including Sections I(A), II(D) and V(V).   Chief Administrative Law Judge Adams stated that the Maryland State Board of Elections confirmed that ALJ Barber was a candidate in a party primary scheduled for April 26, 2016 and the primary is viewed as a partisan election.   He noted that ALJ Barber would appear as a candidate for Circuit Court Judge in both the Republican and Democratic primaries and both primaries are exclusive to the respective party and exclude unaffiliated and third party voters, and by participating on these party tickets, ALJ Barber violated Section V(U) of the OAH Code of Ethics.   Chief Administrative Law Judge Adams cited the Maryland Court of Appeals decision, *Suessmann v. Lamone*, 862 A.2d 1 (Md. 2004), for the contention that a judicial election is partisan.   Chief Administrative Law Judge Adams further commented that ALJ Barber had an obligation to uphold the integrity and independence of the agency and although ALJ Barber contacted Mr. Flowers and Judge Williams to obtain an opinion on the issue, she made no additional effort to determine whether the election was partisan.   Chief Administrative Law Judge Adams claimed there was clear case law that would have

provided guidance.  Finally, Chief Administrative Law Judge Adams noted that ALJ Barber's campaign website represented that she had received the highest ratings for all years as an ALJ, and stated that be believed that ALJ Barber used her ALJ position for her private interests.

20.     During the February 12, 2016 meeting, ALJ Barber was told by Ms. Natale that she could immediately resign from her position.  ALJ Barber stated that she had not done anything wrong and would not resign.  She was again encouraged to think about resigning, and ALJ Barber emphatically stated she would not resign.  ALJ Barber inquired if she could work the remainder of the day and conclude matters, and she was told that she would be permitted to work for the rest of the day.  Five minutes later, Ms. Natale returned and abruptly informed her that she must leave the office immediately. ALJ Barber was escorted out of the OAH offices by Mr. Neal in front of her colleagues and subordinates.

21.     On February 16, 2016, Chief Administrative Law Judge Adams sent a letter to The COST Commissioners advising that he placed ALJ Barber on administrative leave with pay after demanding her resignation and that ALJ Barber refused to resign from her position.  As a result of ALJ Barber refusing to resign from her position, Chief Administrative Law Judge Adams requested that the Commissioners consider his letter as a proposal to terminate ALJ Barber from her position.  ALJ Barber was not given notice of any violations or charges or an opportunity to respond to any alleged violations before the letter was sent to The COST.  After February 16, 2016, ALJ Barber sent a number of emails to The COST regarding her response to the Notice of Violation.

22.     After receipt of the Notice of Violation, ALJ Barber immediately alerted The COST to her concern that Chief Administrative Law Judge Adams was engaging in improper *ex parte* communication with The COST.   Administrative Law Judge Barber, through counsel, responded to the Notice of Violation on March 4, 2016 and requested that the notice be dismissed, and requested that The COST comply fully with all statutory due process requirements in adjuidcating the Notice of Violation.

23.     Sometime between March and April 2016, Chief Administrative Law Judge Adams discussed ALJ Barber being placed on administrative leave with The COST without giving notice to ALJ Barber or her counsel.  ALJ Barber's confidential personnel information was shared with Defendant Jarashow before formal proceedings were instituted against ALJ Barber.  Defendant Jarashow then published this information to the press.

24.     On March 14, 2016, Chief Administrative Law Judge Adams submitted a response to ALJ Barber's request to dismiss the Notice of Violation and attached to OAH's response an affidavit from Jared Demarinis of the Maryland State Board of Elections, who concluded that Maryland judicial elections were partisan affairs. The affidavit was prepared by Defendant Shawn Nolen, an attorney advisor with OAH. ALJ Barber submitted a reply on March 23, 2016, and included the opinion of a nationally-renowned ethics expert, Mark I. Harrison, who concluded that the Maryland judicial elections were not partisan as the term is defined by the D.C. Code.

25.     In April 2016, ALJ Barber disclosed in a D.C. auditor survey that OAH lacked transparency and management misused government funds.

26.     On April 19, 2016, The COST submitted to ALJ Barber's counsel notice of initiation of formal proceeding against ALJ Barber.  Section 3730.4 of Chapter 6-B of the D.C. Municipal Regulations provides that: "If, after investigation, the Commission has reason to believe that there is cause to discipline or remove an Administrative Law Judge, it may commence a formal proceeding against the Administrative Law Judge."  6-B DCMR § 3730.4.  Section 3730.6 further provides that "**Before** instituting a formal proceeding against an Administrative Law Judge, the Commission shall serve the Administrative Law Judge with notice of the investigation and offer the Administrative Law Judge an opportunity to meet with the Commission."  6-B DCMR § 3730.6 (emphasis added).  The COST did not serve notice of any investigation, nor offer ALJ Barber an opportunity to meet with The COST before instituting a formal proceeding in violation of 6-B DCMR § 3730.4 and 6-B DCMR § 3730.6.

27.     ALJ Barber submitted an Answer to the Formal Proceeding and requested a status hearing, limited discovery and an opportunity to present the testimony of an ethics expert at the hearing.  Judge Williams, on behalf of The COST, denied ALJ Barber's request to present an ethics expert at the hearing.

28.     On May 18, 2016, The COST, through Judge Williams, scheduled an evidentiary hearing on June 10, 2016. After the notice was issued, COST Commissioner Joseph Onek sent an email expressing surprise at the scheduling of the hearing because the date of the hearing did not provide the adequate (thirty days) advance notice as required by 6-B DCMR § 3735.2.  Mr. Onek emailed The COST Commissioners, including Defendant Adams, on May 18, 2016, stating that: "I thought we couldn't have a hearing on June 10

because of the notice requirements."  The June 10, 2016 hearing date was subsequently vacated after Plaintiff Barber protested the violation of the applicable regulations.

29.     On May 24, 2016, The COST held a conference call and Chief Administrative Law Judge Adams either was present on the call or was informed of the discussions during the call.  Following the conference call, Chief Administrative Law Judge Adams sent a letter to The COST where he acknowledged discussions during The COST conference call and provided information regarding the date of the hearing, which he could have only learned by participating in The COST conference call or being provided a summary of the conference.  On May 24, 2016, ALJ Barber requested that The COST disclose all *ex parte* communication with Chief Administrative Law Judge Adams.

30.     On May 25, 2016, Plaintiff Barber, through counsel, objected to Defendant Adams' *ex parte* communication with The COST, and requested the dates, content and substance of all conversations and communication between Defendant Adams and The COST.  The COST did not disclose this information.  Plaintiff Barber later filed a motion for recusal of The COST panel and appointment of an independent panel.

31.     On July 8, 2016, at the request of Plaintiff's counsel, The COST scheduled a telephonic prehearing call for 8:30 a.m.  Plaintiff requested a recorded prehearing conference.  Judge Williams declined to do so.  Judge Williams appeared on the call at 8:45 a.m., fifteen minutes after the call was scheduled to begin, Mr. Onek appeared on the call at approximately 8:50 a.m., and Mr. Cooper did not appear on the call.  During the call, Judge Williams denied the motion for recusal and appointment of an independent panel, and denied Plaintiff's request for any hearing witnesses other than Plaintiff Barber,

including her own expert, the former Chief Administrative Law Judge Butler, who promulgated OAH's Code of Ethics, and Defendant Adams.

32.     On July 13, 2016, The COST convened a hearing.  Defendant Jarashow was present at the hearing.  During the course of the hearing, COST Commissioner Onek questioned counsel for the OAH, Defendant Nolen, extensively on whether there was a purpose or rational basis for Section V(U) of the OAH Code of Ethics.  OAH's counsel was unable to provide a rational basis for the policy.  It was clear from the hearing record that OAH's policy had constitutional equal protection implications.  The COST only received testimony from Plaintiff Barber, and not her expert witnesses or other relevant witnesses, including former Chief Tyrone Butler, who promulgated the OAG Ethics Code.

33.     On August 2, 2016, The COST issued an Order finding that Plaintiff Barber violated Section V(U) of the OAH  Code of Ethics, and immediately removed her from her position as an administrative law judge.  Plaintiff Barber was not provided any information on her appeal rights.

34.     Following ALJ's Barber's termination and thirty days before the general election, Defendants Adams and Natale strategically filed allegations of ethical violations of dishonesty against Plaintiff with the District of Columbia Disciplinary Counsel and the Maryland Attorney Grievance Commission on September 27, 2016, and provided incomplete documents and misstated and misrepresented facts with the intent that the complaints would result in disciplinary action being taken against Plaintiff and would damage her personal and professional reputation.

35.     Defendant Jarashow continued to communicate with OAH after the hearing to inquire about the decision of The COST and OAH and Plaintiff's employment status. OAH subsequently provided The COST Order to Defendant Jarashow.  On November 8, 2016, the date of the general election, Defendant Jarashow distributed flyers to voters with a photograph of Plaintiff Barber, which included a misleading statement that she was determined not qualified by a Judicial Nomination Commission and terminated for an ethics violation without disclosing that the alleged ethics violation was on appeal and based on the exercise of her constitutional right to run for office in a non-partisan election to become a judge.

## Count I

### Violation of Procedural Due Process
### Fifth Amendment to the U.S. Constitution
### (Plaintiff Barber v. Defendant District of Columbia)

36.     Plaintiff Barber incorporates by reference paragraphs 1 through 35 as if fully stated herein.

37.     The Fifth Amendment to the U.S. Constitution provides that no person shall be deprived of life, liberty, or property without due process of law.  The Fifth Amendment to the U.S. Constitution encompasses "the right of the individual to contract [and] . . . to engage in any of the common occupations of life."  *Board of Regents of States Colleges v. Roth,* 408 U.S. 564, 572 (1972) (citations omitted).  "Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to her, notice and an opportunity to be heard are essential."  *Id*. at 573.  Finally, courts have recognized that the due process clause protects against the loss of future employment. *Paul v. Davis*, 424 U.S. 693, 704 (1976).

38.     Defendant the District of Columbia and The COST violated Plaintiff Barber's procedural due process rights by demanding that she resign from her position as an ALJ on February 12, 2016, and thereafter removing her from the OAH and imposing a "stigma" on Plaintiff Barber and foreclosing her freedom to take advantage of employment opportunities; denying Plaintiff Barber a pre-termination meeting; conspiring with Defendant Jarashow to cause Plaintiff's termination, disclosing confidential personnel information to Defendant Jarashow, and defaming Plaintiff Barber; engaging in *ex parte* communication between Defendant Adams and The COST; and authorizing Defendant Nolen to draft an Affidavit on behalf of Jared Demarinis. Defendant Nolen also prepared a false and misleading supplement to the notice of violation in February 2016, charging Ms. Barber with establishing a political committee and endorsing another judicial candidate, Rickey Nelson Jones, which is all permitted conduct under the ABA Model Rules of Judicial Conduct.   In February 2016 and September 2016, Defendant's Nolen, Adams and Natale also misrepresented Plaintiff's campaign flyer about her top performance evaluations to COST and the Maryland Attorney Grievance Commission.  The COST attempted to schedule a hearing without providing thirty-days' notice to Plaintiff Barber as required by the applicable regulations; denied Plaintiff's request for witnesses at The COST evidentiary hearing; allowed published Plaintiff's placement on administrative leave to be published to Defendant Jarashow in a manner to publicly humiliate Plaintiff Barber.  Defendants Adams and Natale maliciously filed disciplinary actions with the District of Columbia Disciplinary Counsel and Maryland Attorney Grievance Commission against Plaintiff Barber to

impose a "stigma " on Plaintiff Barber and foreclose her freedom to take advantage of employment opportunities.

39.     Plaintiff Barber was terminated from employment and defamed, and she is being denied future opportunities in her chosen profession because of Defendants' violation of her due process rights and termination without due process.

40.     Defendant the District of Columbia has knowingly and willfully violated Plaintiff Barber's Fifth Amendment rights to liberty and property without due process and has prevented her from obtaining employment in her chosen profession.

**Count II**

**Violation of Substantive Due Process**
**Fifth Amendment to the U.S. Constitution**
**(Plaintiff Barber v. Defendant District of Columbia)**

41.     Plaintiff Barber incorporates by reference paragraphs 1 through 40 as if fully stated herein.

42.     The Fifth Amendment to the U.S. Constitution provides that no person shall be deprived of life, liberty, or property without due process of law.  The Fifth Amendment to the U.S. Constitution encompasses "the right of the individual to contract [and] . . . to engage in any of the common occupations of life."  *Board of Regents of States Colleges v. Roth,* 408 U.S. 564, 572 (1972) (citations omitted).  "Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to her, notice and an opportunity to be heard are essential."  *Id*. at 573.  Finally, courts have recognized that the due process clause protects against the loss of future employment.  *Paul v. Davis*, 424 U.S. 693, 704 (1976).   The Supreme Court has recognized a substantive due process right for a public employee with a protected property interest to

be free from arbitrary and capricious state action. *See Harrah Independent School District v. Martin,* 440 U.S. 194 (1979).

43.     Defendant the District of Columbia has violated Plaintiff Barber's substantive due process rights by demanding that she resign from her position as an ALJ on February 12, 2016, and thereafter removing her from the OAH based on an alleged violation of Section V(U) of the OAH Code of Ethics, which is an unconstitutional, arbitrary and capricious policy.

44.     Plaintiff Barber was terminated and is being denied future opportunities in her chosen profession because of the Defendants' decision that she violated an unconstitutional policy.

45.     Defendant the District of Columbia has knowingly and willfully violated Plaintiff Barber's Fifth Amendment rights to liberty and property without due process and has prevented her from obtaining employment in her chosen profession.

46.     As a direct and proximate cause of the Defendants' actions, Ms. Barber lost wages and health benefits, and suffered damage to her professional reputation and career, emotional distress, embarrassment, mental distress, and humiliation.

### Count III

**Violation of 42 U.S.C. § 1983**
**(Plaintiff Barber v. Defendant District of Columbia)**

47.     Plaintiff Barber incorporates by reference paragraphs 1 through 46 as if fully stated herein.

48.     42 U.S.C. § 1983 prohibits a constitutional violation resulting from a custom or policy of a municipality such as the District of Columbia.  The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that no state shall deny to

any person within its jurisdiction the equal protection of the laws.  The Fifth Amendment to the U.S. Constitution encompasses "the right of the individual to contract [and] . . . to engage in any of the common occupations of life."  *Board of Regents of States Colleges v. Roth,* 408 U.S. 564, 572 (1972) (citations omitted).

49.     Defendant Adams' interpretation of Section V(U) of the OAH Code of Ethics bars ALJs who do not reside in the District of Columbia, such as Plaintiff Barber, from participating in judicial elections to become judges in states such as Maryland where trial judges are elected, and requires ALJs who do run in elections such as the Maryland election for Circuit Court judges to resign from employment or be terminated.  As such, Section V(U) of the OAH Code of Ethics is unconstitutional on its face, arbitrary and cannot be sufficiently justified by government interests.

50.     Plaintiff Barber was terminated from her position as an ALJ is being denied future opportunities in her chosen profession because of the application and enforcement of OAH's policy, Section V(U) of the OAH Code of Ethics.

51.     As a direct and proximate cause of the Defendant District of Columbia's actions, Plaintiff Barber lost wages and benefits, and suffered damage to her professional reputation and career, emotional distress, embarrassment, mental distress, and humiliation.

### Count IV

### Violation of 42 U.S.C. § 1985(3)
### (Plaintiff Barber v. Defendants District of Columbia, Adams, Natale, Nolen, and Jarashow)

52.     Plaintiff Barber incorporates by reference paragraphs 1 through 51 as if fully stated herein.

53.     42 U.S.C. § 1985(3) prohibits two or more persons in any State from conspiring for the purpose of depriving any person equal protection of the laws or equal privileges under the laws.

54.     Defendants violated 42 U.S.C. § 1985(3) and deprived Plaintiff of equal protection of the laws and/or privileges under the laws by conspiring to violate her due process rights under the Fifth Amendment, and violating the Equal Protection Clause of the Fourteenth Amendment.   Specifically, Defendant Jarashow, who knew Plaintiff Barber was a resident of Anne Arundel County, Maryland and had a constitutional right to run in a judicial election, filed a complaint against Plaintiff Barber with Defendant Adams with the goal of getting Plaintiff Barber terminated from her position at OAH, to provide a political advantage to his desired candidates.   The District of Columbia Defendants demanded that Plaintiff Barber resign from her position as an ALJ on February 12, 2016, and thereafter removed her from the OAH, and shared Plaintiff's confidential personnel information with Defendant Jarashow before formal proceedings were instituted, in a manner to publicly humiliate Plaintiff.   Defendants Adams, Natale and Nolen conspired with Jared Demarinis at the Maryland State Board of Elections to execute an affidavit, which was prepared by Defendant Nolen, to offer a legal opinion on whether the Maryland election for Circuit Court judges was partisan. Mr. Demarinis further articulated a letter to Plaintiff dated April 4, 2016, misrepresenting the office of judge of the Circuit Court in Maryland as a partisan office. Defendant Adams engaged in ex parte contact with The COST to deny Plaintiff Barber's due process rights.   Defendant Adams conspired with Defendant Jarashow to make public confidential personnel information of Plaintiff Barber, and Defendant Jarashow used that information to produce

a misleading election flyer on the day of the election to cause Plaintiff Barber to be cast in a false light on election day.  Defendant Adams and Defendant Natale filed misleading charges with the District of Columbia Disciplinary Counsel and the Maryland Attorney Grievance Commission on September 27, 2016.

55.     Defendants have knowingly and willfully violated 42 U.S.C. § 1985(3) by conspiring with one or more other persons for the purpose of depriving Plaintiff equal protection of the laws or equal privileges under the laws. Plaintiff Barber is being denied future opportunities in her chosen profession because of Defendants' violations of 42 U.S.C. § 1985(3).

56.     As a direct and proximate cause of the Defendants' actions, Ms. Barber lost wages and benefits, and suffered damage to her professional reputation and career, emotional distress, embarrassment, mental distress, and humiliation.

<u>**Count V**</u>

**Violation of the D.C. Whistleblower's Protection Act**
**(Plaintiff Barber v. Defendants District of Columbia, Adams, Natale and Nolen)**

57.     Plaintiff Barber incorporates by reference paragraphs 1 through 56 as if fully stated herein.

58.     At all pertinent times, Defendants the District of Columbia, Adams, Natale, and Nolen were employers subject to provisions of the D.C. Whistleblowers Protection Act, § 1-615.53 *et seq.*, of the District of Columbia Code.

59.     At all pertinent times, Plaintiff was an employee entitled to protection under the D.C. Whistleblower's Protection Act.

60.     The D.C. Whistleblower's Protection Act prohibits personnel action being taken against an employee because she refuses to comply with an illegal order or because she

has made a protected disclosure.  The D.C. Whistleblower's Protection Act guarantees that a D.C. employee is free to disclose information that is illegal or unethical or that threatens public funds and public health and safety without fear of retaliation.  On or about January 2016, Ms. Barber made protected disclosures when she filed a complaint with the Office of D.C. Inspector General and disclosed that Defendant Adams ordered OAH ALJs to attend mandatory diversity training and later allowed a large number of Caucasian ALJs to not attend the training that was already paid for by taxpayers.  On October 11, 2016, Plaintiff discovered through a Freedom of Information Act (FOIA) request that by April 2016, Defendant Adams was contacted by an individual who was contacted by an investigator in the Office of Inspector General and commented that ALJ Barber filed the complaint against him with the Office of Inspector General. Defendants responded to these disclosures and prior protected disclosures made in 2015 by Plaintiff Barber and Linda Bussey by removing both from the OAH; denying Plaintiff Barber a pre-termination meeting with The COST; conspiring with Defendant Jarashow to cause Plaintiff's termination; engaging in *ex parte* communication between Defendant Adams and The COST; authorizing Defendant Nolen to draft an affidavit on behalf of Jared Demarinis; attempting to schedule a hearing without thirty-days' notice as required by the applicable regulations; denying Plaintiff's request for witnesses at The COST evidentiary hearing; publishing the decision and other personnel data on Plaintiff to Defendant Jarashow in a manner to publicly humiliate Plaintiff; and filing disciplinary actions with the District of Columbia Disciplinary Counsel and Maryland Attorney Grievance.

61.    Defendants District of Columbia, Adams, Natale and Nolen also retaliated against Plaintiff for negatively responding to a DC auditor survey in April 2016 about the lack of transparency and misuse of funds by management.

62.    Defendants District of Columbia, Adams, Natale and Nolen took "prohibited personnel actions," as defined by the Whistleblower's Protection Act, §. 1-615.52(a)(5), and otherwise retaliated against Ms. Barber because of her protected activities.  Plaintiff Barber's exercise of her whistleblower rights was a substantial or motivating factor in the adverse actions taken against her by Defendants between February 2016 and August 2, 2016.

63.    As a direct and proximate cause of the Defendants' actions, Plaintiff Barber lost wages and benefits, and suffered damage to her professional reputation and career, emotional distress, embarrassment, mental distress, and humiliation.

## Count VI

### Interference with Employment Contract
### (Plaintiff Barber v.  Jarashow)

64.    Plaintiff Barber incorporates by reference paragraphs 1 through 63 as if fully stated herein.

65.    Defendant Jarashow, a former Anne Arundel County Circuit Court judge, was aware that Ms. Barber was an employee with a contractual interest in her position with the District of Columbia government OAH.  Defendant Jarashow engaged in efforts to interfere with Plaintiff Barber's employment and cause Defendant the District of Columbia to remove Plaintiff from her position; and has published the removal decision in a manner to publicly humiliate Plaintiff and prevent her from entering into any other employment contract.   Specifically, Defendant Jarashow filed a complaint against

Plaintiff Barber in February 2016 with Defendant Adams with the goal of getting Plaintiff Barber terminated.  Defendant Jarashow communicated with OAH and received Plaintiff's confidential personnel information from Defendants Adams, Natale and/or Nolen and published this information before formal proceedings were instituted against Plaintiff Barber, in a manner to publicly humiliate Plaintiff.    After Plaintiff's termination, Defendant Jarashow made public confidential personnel information of Plaintiff Barber, and Defendant Jarashow used that information to produce a misleading election flyer on the day of the election to cause Plaintiff Barber to be cast in a false light on election day.

66.    Defendant Jarashow knew his complaint against Plaintiff Barber was false and the information he publicized was misleading and that Plaintiff Barber did not engage in any ethical violation. Plaintiff Barber was removed from her position with OAH and has been denied other employment opportunities as a result of Defendant Jarashow's conduct.

67.    The actions were maliciously done by unlawful or tortious means, namely by defaming Plaintiff Barber and/or by interfering with her employment opportunities.

68.    These actions have resulted in actual loss to Plaintiff Barber, including her loss of employment with OAH, lost wages, and the loss of prospective employment.

69.    As a direct and proximate cause of the Defendant Jarashow and his law firm's actions, Ms. Barber has lost wages and benefits and has suffered emotional distress, embarrassment, mental distress, and humiliation, and damage to her employment and personal reputation.

70.    Defendant Jarashow acted maliciously, willfully, wantonly, and with reckless disregard of Ms. Barber's rights.

## Prayer for Relief

WHEREFORE, Plaintiff Claudia Barber prays the Court:

71.     Enter judgment against Defendants individually and severally on all Counts;

72.     Award Plaintiff Barber reinstatement, back pay, lost wages, all work-related benefits, medical expenses, health insurance, and front pay;

73.     Award Plaintiff Barber compensatory damages in an amount to be determined by a jury for emotional distress, embarrassment, humiliation, and mental anguish, for defamation of her character and reputation, in an amount no less than $10 million dollars;

74.     Award Plaintiff Barber punitive damages against Defendant Jarashow for tortious inference with her employment in an amount no less than $10 million dollars;

75.     Award Plaintiff Barber her costs, expenses, and reasonable attorney's fees; and

76.     Grant Plaintiff Barber such other and further relief as the Court may consider just and proper.

## Jury Trial Demand

Plaintiff demands a jury trial on all counts so triable.


Respectfully submitted,


_____/s/_____
David A. Branch #438764
Law Office of David A. Branch & Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax
davidbranch@dbranchlaw.com