## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

**CLAUDIA BARBER,**

      PLAINTIFF,

V.

**DISTRICT OF COLUMBIA
GOVERNMENT, ET AL.,**

      DEFENDANTS.

**CIVIL ACTION NO: 1:17-CV-620 (KBJ)**

## DEFENDANT JARASHOW'S MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT

Defendant Ronald Jarashow (hereinafter "Defendant Jarashow") by and through his undersigned counsel, Justin M. Flint, Esq., Abby A. Franke, Esq., and Eccleston and Wolf, P.C., pursuant to Federal Rule of Civil Procedure 12(b)(6) and this Court's General Order § 5(a), hereby respectfully moves this Court to dismiss Plaintiff's Amended Complaint for failure to state a claim for which relief can be granted, and in support thereof states:

On May 22, 2017, Plaintiff filed an Amended Complaint alleging, *inter alia*, (1) a civil conspiracy under 42 U.S.C. § 1985(3) against Defendants Jarashow, District of Columbia, Adams, Natale, and Nolen, (2) interference of employment contract against Defendant Jarashow, and (3) defamation against Defendant Jarashow.  Plaintiff lodges three additional federal claims against Defendant District of Columbia.  In addition, Plaintiff asserts Defendants District of Columbia, Adams, Natale, and Nolen violated the District of Columbia Whistleblower's Protection Act.

First, Plaintiff fails to state a viable claim under 42 U.S.C. § 1985(3) because the factual allegations are insufficient to raise an inference that Defendants participated in a conspiracy

i

motivated by class-based discriminatory animus.  Upon dismissal of Plaintiff's 42 U.S.C. § 1985(3) claim against Defendant Jarashow, this Court should decline to exercise supplemental jurisdiction over the remaining District of Columbia substantive law claims for lack of subject matter jurisdiction.

Even if this Court exercises supplemental jurisdiction, Plaintiff fails to sufficiently plead elements required to state viable claims for interference with employment contract and defamation under District of Columbia law.  In the District of Columbia two elements of interference with employment contract are (1) the existence of a contract and (2) a breach of that contract.  Nevertheless, Plaintiff fails to assert the existence of a contract or any allegations that the District of Columbia Office of Administrative Hearings ("OAH") breached its contract, if any, with Plaintiff.  In fact, on the face of the Amended Complaint, Plaintiff breached any "contractual interest" she had with the OAH by Plaintiff's own violations of the OAH Code of Ethics.  In addition, Plaintiff pleads insufficient facts to allege and establish causation as Defendant Jarashow's complaint did not directly and proximately cause her removal from the ALJ position.  Indeed, Plaintiff's own ethical violation was the direct and proximate cause of her removal.  Further, Defendant Jarashow's alleged interference is privileged because the February 4, 2016 formal complaint conveyed truthful information.

What is more, Plaintiff's defamation claim against Defendant Jarashow is time-barred due to the one year statute of limitations.  In addition, Defendant Jarashow's alleged defamatory statement is protected by absolute privilege as it was published incidental to a quasi-judicial proceeding.  Further, Plaintiff fails to allege facts sufficient to satisfy the fourth element of her defamation claim, i.e., the February 18, 2016 publication caused the Plaintiff special harm.  However, Plaintiff cannot allege such facts because the COST terminated Plaintiff after findings

of fact and conclusions of law that determined Plaintiff committed an ethical violation. Last, Plaintiff's statement was not defamatory as a matter of law. As a result, Defendant Jarashow respectfully requests this Court grant this Motion to Dismiss and dismiss all three claims against Defendant Jarashow with prejudice. Defendant Jarashow incorporates herein his Memorandum of Points and Authorities in support of this Motion.

WHEREFORE, for the reasons set forth in Defendant Jarashow's Motion to Dismiss and his Memorandum of Points and Authorities, Defendant Jarashow respectfully requests this Court grant this Motion and dismiss all three claims against him with prejudice.

Respectfully submitted,

Eccleston & Wolf, P.C.

_____/s/_____
Justin M. Flint (#491782)
Abby A. Franke (#1030041)
1629 K Street, N.W., Suite 260
Washington, DC 20006
(202) 857-1696 (Tel)
flint@ewdc.com
franke@ewdc.com
*Counsel for Defendant Ronald Jarashow*

## CERTIFICATE OF SERVICE

I hereby certify that on this day of June 5, 2017, a copy of the foregoing Defendant

Jarashow's Motion to Dismiss Plaintiff's Amended Complaint was served via CM/ECF, to:

David Branch, Esq.
Law of Office of David A. Branch & Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax
davidbranch@dbranchlaw.com
*Counsel for Plaintiff Claudia Barber*

Cara J. Spencer, Esq.
Kerslyn D. Featherstone, Esq.
OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA
441 Fourth Street NW
Suite 600 South
Washington, DC 20001
(202) 442-9754
Fax: (202) 741-0431
cara.spencer@dc.gov
kerslyn.featherstone@dc.gov
*Counsel for Defendants District of Columbia Government,*
*Eugene Adams, Vanessa Natale, & Shawn Nolen*


Respectfully submitted,


_____/s/_____
Abby A. Franke (#1030041)

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

**CLAUDIA BARBER,**

      PLAINTIFF,

V.

**DISTRICT OF COLUMBIA**
**GOVERNMENT, ET AL.,**

      DEFENDANTS.

**CIVIL ACTION NO: 1:17-CV-620 (KBJ)**

## ORDER

Upon consideration of Defendant Jarashow's Motion to Dismiss, any opposition hereto, and the entire record in this case, it is this _____ day of June 2017, hereby

**ORDERED** that Defendant Jarashow's Motion to Dismiss is hereby **GRANTED**.

**FURTHER ORDERED** that Counts IV, VI, and VII against Defendant Jarashow are dismissed with prejudice.

_____
Judge Ketanji Brown Jackson
United States District Court

Copies To:

Justin M. Flint, Esq.
Abby A. Franke, Esq.
Eccleston & Wolf, P.C.
1629 K Street, N.W., Suite 260
Washington, D.C. 20006
*Counsel for Defendant Ronald Jarashow*


David Branch, Esq.
Law of Office of David A. Branch & Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
*Counsel for Plaintiff Claudia Barber*

Cara J. Spencer, Esq.
Kerslyn D. Featherstone, Esq.
441 Fourth Street NW
Suite 600 South
Washington, DC 20001
*Counsel for Defendants District of Columbia Government,*
*Eugene Adams, Vanessa Natale, & Shawn Nolen*

## TABLE OF CONTENTS

Defendant Jarashow's Motion to Dismiss ......................................................... i

Certificate of Service .................................................................................... iv

Proposed Order ............................................................................................. v

Table of Contents......................................................................................... vii

Table of Authorities ..................................................................................... ix

Memorandum of Points and Authorities in Support ...................................... 1

   I.      Introduction........................................................................................... 1

   II.     Plaintiff's Allegations .......................................................................... 2

   III.    Standard of Review............................................................................... 5

   IV.    No Federal Claim Under 42 U.S.C. §1985(3) Exists .......................... 6

   V.     No District of Columbia Substantive Law Claims Exist ...................... 8

         A. Upon Dismissing Plaintiff's 42 U.S.C. 1985(3) Claim, This Court Lacks Subject Matter Jurisdiction over the District of Columbia Substantive Law Claims Against Defendant Jarashow................................................. 8

         B. No Viable Interference with Employment Contract Claim Exists Against Defendant Jarashow........................................................................... 9

         C. No Viable Defamation Claim Exists Against Defendant Jarashow ............... 14

             1. The statute of limitations bars Plaintiff's defamation claim............... 14

             2. Even if Plaintiff timely filed her defamation claim, Plaintiff fails to allege facts sufficient to plead defamation .......................................... 15

                i.  Defendant Jarashow's statement was privileged ........................... 16

                ii.  Defendant Jarashow's statement did not cause special harm ........ 17

                iii.  Defendant Jarashow's statement was not defamatory .................. 17

   VI.    Conclusion ........................................................................................ 19

Exhibit Index ............................................................................................................................a

Exhibit A.................................................................................................................................b

Exhibit B.................................................................................................................................d

## TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................... 5, 7

*Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) ....................................... 6

*Beckwith v. Ware,* 174 F. Supp. 3d 1, 4 (D.D.C. 2014) ........................................................... 3

*Beeton v. District of Columbia*, 779 A.2d 918 (D.C. 2001) ................................................. 15, 17

*Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ..................................................... 6

*Browing v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002) ......................................... 15

*Guilford Transp. Industries, Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000) ...................... 17-19

*International City Management Ass'n Retirement Corp. v. Watkins,*
726 F.Suppp.2d 1, 6 (D.D.C. 1989) ................................................................ 14

*Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 121 (D.D.C. 2012) ................................. 6-7

*King v. District of Columbia*, 878 F.Supp 8, 11 (D.D.C. 2012) ........................................... 6

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). .................................... 6

*LeFande v. District of Columbia*, 864 F. Supp. 2d 44, 52 (D.D.C. 2012) ................................. 19

*Mazanderan v. McGranery*, 490 A.2d 180, 181-182 (D.C. 1984) ........................................... 16

*Mullin v. Washington Free Weekly, Inc.,* 785 A.2d 296, 298-99 (D.C. 2001) ...................... 14-15

*Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325 (D.C. 2008) ..................................... 10

*Ning Ye v. Holder*, 667 F. Supp. 2d 103, 104 (D.D.C. 2009) ........................................... 8

*Onyeoziri v. Spivok*, 44 A.3d 279, 286–87 (D.C. 2012) ............................................... 13

*Oparaugo v. Watts*, 884 A.2d 63, 79 (D.C. 2005) ....................................................... 16

*Taylor v. District of Columbia*, 626 F. Supp. 2d 25, 28 (D.D.C. 2009) ................................. 8

### Statutes & Regulations

D.C. Code 2-1831.08 ...................................................................................... 10

D.C. Code 2-1831.10 ...................................................................................................... 9-10

D.C. Code 12-301(4) ......................................................................................................... 14

28 U.S.C. § 1367(a) ............................................................................................................. 8

42 U.S.C. § 1983 .................................................................................................................. 9

42 U.S.C. § 1985(3) ............................................................................................. 1, 5-8, 19

Section 3730.4 of Chapter 6-B of the D.C. Municipal Regulations ...................................... 4, 17

**<u>Secondary Sources</u>**

Restatement § 767 ............................................................................................................. 13-14

Restatement § 772(a) ........................................................................................................... 14

Prosser and Keeton on Torts at 773-74, 816–17 (5th ed. 1984)) .......................................... 16, 18

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION

|  |  |
|---|---|
| **CLAUDIA BARBER,** | |
| PLAINTIFF, | |
| V. | **CIVIL ACTION NO: 1:17-CV-620 (KBJ)** |
| **DISTRICT OF COLUMBIA GOVERNMENT, ET AL.,** | |
| DEFENDANTS. | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT JARASHOW'S MOTION TO DISMISS

Defendant Ronald Jarashow, by and through his attorneys, Justin M. Flint, Abby A. Franke, and Eccleston & Wolf, P.C., pursuant to Fed. R. Civ. P. 12(b)(6) and this Court's General Order § 5(a), hereby files this Memorandum supporting the Motion to Dismiss Plaintiff's Amended Complaint and in support thereof respectfully states:

## I.    INTRODUCTION

No justification exists for this lawsuit based on the allegations and applicable law. All three claims against Defendant Jarashow should be dismissed with prejudice. First, Plaintiff fails to state a viable claim under 42 U.S.C. § 1985(3) because the factual allegations are insufficient to raise an inference that Defendants participated in a conspiracy motivated by class-based discriminatory animus. Upon dismissal of Plaintiff's 42 U.S.C. § 1985(3) claim against Defendant Jarashow, this Court should decline to exercise supplemental jurisdiction over the remaining District of Columbia substantive law claims for lack of subject matter jurisdiction.

1

Even if this Court exercises supplemental jurisdiction, Plaintiff fails to state a viable interference with employment contract claim against Defendant Jarashow for four reasons: (1) Plaintiff fails to plead and cannot establish the existence of a contract; (2) Plaintiff fails to plead and cannot establish breach of contract, an essential element under District of Columbia law; (3) Plaintiff fails to plead and cannot establish causation; and (4) Defendant Jarashow's alleged interference is privileged because the February 4, 2016 formal complaint conveyed truthful information as independently determined by the District of Columbia Office of Administrative Hearings ("the OAH"), Chief Judge Adams, and District of Columbia Commission on Selection and Tenure of Administrative Law Judges of the Office of Administrative Hearings ("the COST").

Last, even if this Court exercises supplemental jurisdiction, Plaintiff fails to state a viable defamation claim for four reasons: (1) Plaintiff's defamation claim is time-barred by the one year statute of limitations; (2) Defendant Jarashow's alleged defamatory statement is protected by absolute privilege; (3) Plaintiff fails to plead how the alleged defamatory statement caused her special harm; and (4) Defendant Jarashow's statement was not defamatory.

Accordingly, for the reasons set forth fully below, Defendant Jarashow respectfully requests this Court dismiss all three claims against him with prejudice.

## II.    PLAINTIFF'S FACT ALLEGATIONS[1]

Plaintiff was an Administrative Law Judge ("ALJ") at the District of Columbia Office of Administrative Hearings ("OAH") from 2005 until August 2016.  Am. Compl. ¶ 8.  "On January 20, 2016, Plaintiff filed with the State of Maryland a Certificate of Candidacy for Judge of the

---

[1] For purposes of this Motion, the Plaintiff's allegations are accepted on face value.

2

Circuit Court of the Fifth Judicial Circuit, which is Anne Arundel County." *Id.* at 13. Thereafter, "[o]n February 4, 2016, OAH Chief Administrative Law Judge Eugene Adams received a letter from a Maryland attorney, Defendant Ronald H. Jarashow, a former Anne Arundel County Circuit Court judge, who was supporting other candidates for the vacant circuit court judge positions." *Id.* at 15. Defendant Jarashow's letter to Defendant Adams was a formal complaint against Plaintiff for ethical violations of the OAH Code of Ethics. *Id.*; *see* attached hereto as Exhibit A.[2] Plaintiff alleges Defendant Jarashow "was aware that Plaintiff was an employee with a contractual interest in her position with the District of Columbia government OAH." *Id.* at 65. In addition, Plaintiff asserts, "Defendant Jarashow knew his complaint against Plaintiff Barber was false and the information he publicized was misleading and that Plaintiff Barber did not engage in any ethical violation." *Id.* at 66. The OAH provided the February 4, 2016 formal complaint to Plaintiff on February 5, 2016. *Id.* at 18. Thereafter, on February 12, 2016, the OAH issued Plaintiff a Notice of Violation and asked Plaintiff to resign from her ALJ position. *Id.* at 19.

Plaintiff asserts in support of her defamation claim, "[o]n February 18, 2016, Defendant Jarashow sent an email to Defendant Nolen with the subject line: 'Claudia Barber candidacy for judge,' and email falsely claimed that an attached article stated that Plaintiff Barber was going to participate in a candidates' forum and she was 'running as the Democrat candidate for judge.' The attached article did not state that Plaintiff Barber was 'running as the Democrat candidate

---

[2] The reference and attachment of the February 4, 2016 letter does not convert Defendant Jarashow's 12(b)(6) motion to dismiss to a motion for summary judgment. *See Beckwith v. Ware,* 174 F. Supp. 3d 1, 4 (D.D.C. 2014). "In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider 'any documents either attached to or incorporated in the complaint ... without converting the motion to dismiss into one for summary judgment.'" *Id.* (citations omitted). "This includes documents that are 'referred to in the complaint and [are] central to the plaintiff's claim,' even if they are produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Id.* (citations omitted).

for judge.'" *Id.* at 18.  Plaintiff claims she discovered this email in September 2016, only after she submitted a FOIA request to the District of Columbia.  *Id.*  Specifically, Plaintiff contends she was running as a judicial candidate and claims Defendant Jarashow's representation that she was the Democrat candidate was intended to cause her termination as an ALJ.  *Id.* at 72.

In addition, Plaintiff complains, "ALJ Barber's confidential personnel information was shared with Defendant Jarashow before formal proceedings were instituted against ALJ Barber." *Id.* at 23, 65.  District of Columbia Commission on Selection and Tenure of Administrative Law Judges of the Office of Administrative Hearings (hereinafter referred to as "the COST") initiated formal proceedings against Plaintiff on April 19, 2016 after conducting its own investigation.  *Id.* at 26.  As provided in the Amended Complaint, "If, after investigation, the Commission has reason to believe that there is cause to discipline or remove an Administrative Law Judge, it may commence a formal proceeding against the Administrative Law Judge."  *Id.* (citing Section 3730.4 of Chapter 6-B of the D.C. Municipal Regulations).  On August 2, 2016, the COST issued its Order with findings of fact and conclusions of law.  *Id.* at 33; *see* attached hereto as Exhibit B.[3]  The COST Order concluded because of Plaintiff's violation of Section V(U), Plaintiff shall be removed from her position as an ALJ at OAH.  *Id.* at 4.

Last, Plaintiff alleges, in pertinent part, Defendants Jarashow, District of Columbia, Adams, Natale, and Nolen conspired to have Plaintiff terminated from her Administrative Law Judge position at OAH and because of this conspiracy, she was deprived of equal protection of the laws and "is being denied future opportunities in her chosen profession."  *Id.* at 54-55.

---

[3]  The reference and attachment of the COST Order does not convert Defendant Jarashow's 12(b)(6) motion to dismiss to a motion for summary judgment as it is referred to in Plaintiff's Amended Complaint and central to Plaintiff's claims.

Specifically, Plaintiff alleges Defendants' motivations behind the alleged conspiracy were "to provide a political advantage to [Defendant Jarashow's] desired [judicial] candidates," "to publicly humiliate Plaintiff," and "to cause Plaintiff Barber to be cast in a false light on election day." *Id.* at 54.

Plaintiff filed an Amended Complaint on May 22, 2017 alleging, *inter alia*, (1) a civil conspiracy under 42 U.S.C. § 1985(3) (hereinafter referred to as "Section 1985(3)") against Defendants Jarashow, District of Columbia, Adams, Natale, and Nolen, (2) interference of employment contract against Defendant Jarashow, and (3) defamation against Defendant Jarashow.   Plaintiff lodges three additional federal claims against Defendant District of Columbia.  In addition, Plaintiff asserts Defendants District of Columbia, Adams, Natale, and Nolen violated the D.C. Whistleblower's Protection Act.

## III.   STANDARD OF REVIEW

Whether under District of Columbia or federal law, a complaint must contain sufficient facts, accepted as true, to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When considering a motion under Rule 12(b)(6), the Court must accept as true all of the factual allegations contained in the complaint, but not the legal conclusions.  *Id.*  In addition, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.  A claim is facially plausible when the factual content "allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 663. While plausibility does not equate to the "probability requirement, [a plaintiff must show] more than a sheer possibility that a defendant acted unlawfully." *Id.* The complaint must include more than mere "labels and conclusions." *Id.*

5

In construing the complaint liberally in the light most favorable to Plaintiff, the Court grants Plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by Plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept Plaintiff's legal conclusions. *Id.* A complaint's "factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "[D]ismissal under Rule 12(b)(6) is appropriate where the complaint fails to allege the elements of a legally viable claim." *King v. District of Columbia*, 878 F.Supp 8, 11 (D.D.C. 2012).

## IV.   NO FEDERAL CLAIM UNDER 42 U.S.C. § 1985(3) EXISTS.

Section 1985(3) "provides a cause of action against two or more persons who participate in a conspiracy motivated by class-based discriminatory animus." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009). To state a claim under Section 1985(3), Plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, ... and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States.

*Id.* (citation omitted). "The statute does not apply to all conspiratorial tortious interferences with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus." *Id.* (citation omitted).

Absent from Plaintiff's Amended Complaint are any allegations that the alleged conspiracy was motivated by class-based discriminatory animus. In other words, Plaintiff does not allege she belongs to a protected class—such as one based on race, national origin, or

6

gender—nor does she allege that the Defendants' alleged conspiracy was driven by membership in such class.  *See Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 121 (D.D.C. 2012).   In the absence of pleading this essential element, the Plaintiff's allegations are insufficient to state a valid Section 1985(3) claim.  *See Id.*

The crux of Plaintiff's 1985(3) claim is   Defendants conspired to have Plaintiff terminated from her ALJ position at OAH and because of this conspiracy, she was deprived of equal protection of the laws and "is being denied future opportunities in her chosen profession." Am. Compl. ¶ 54-55.  Specifically, Plaintiff alleges Defendants' motivations behind the alleged conspiracy were "to provide a political advantage to [Defendant Jarashow's] desired [judicial] candidates," "to publicly humiliate Plaintiff," and "to cause Plaintiff Barber to be cast in a false light on election day."  *Id.*  These bare facts do not raise an inference that Defendants were conspiratorially motivated by some class-based, invidiously discriminatory animus.

The Plaintiff also asserts the Defendants "knowingly and willfully violated 42 U.S.C. § 1985(3) by conspiring with one or more other persons for the purpose of depriving Plaintiff equal protection of the laws or equal privileges under the laws."  *Id.* at 55.  However, these "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a cause of action under Section 1985(3).  *Iqbal,* 556 U.S. at 678.  As a result, this Court should dismiss the Section 1985(3) conspiracy claim against Defendant Jarashow with prejudice.

V.   **NO DISTRICT OF COLUMBIA SUBSTANTIVE LAW CLAIMS EXIST.**

A.   **Upon Dismissing Plaintiff's 42 U.S.C. 1985(3) Claim, This Court Lacks Subject Matter Jurisdiction over the District of Columbia Substantive Law Claims Against Defendant Jarashow.**

Procedurally, this Court should decline to exercise supplemental jurisdiction over the common law defamation and interference with employment contract claims against Defendant Jarashow because they do not derive from a common nucleus of operative fact as the constitutional violations alleged in the remaining federal claims against the District of Columbia. A court with original jurisdiction over certain claims has supplemental jurisdiction over state law claims "that are so related ... that they form part of the same case or controversy under Article III of the United States Constitution." *Ning Ye v. Holder*, 667 F. Supp. 2d 103, 104 (D.D.C. 2009) (quoting 28 U.S.C. § 1367(a)). "In order for a federal claim and a state-law claim to form part of the same case or controversy, the claims must derive from a common nucleus of operative fact." *Id.* (citation omitted). "Claims derive from a common nucleus of operative fact only if the plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Taylor v. District of Columbia*, 626 F. Supp. 2d 25, 28 (D.D.C. 2009). "If there is almost no factual or legal overlap between the state and federal claims, a common nucleus of operative fact does not exist." *Ning Ye,* 667 F. Supp. 2d at 104 (citation omitted). "Where the federal claims that provide the Court with original jurisdiction over the action have been dismissed, the Court 'may decline to exercise supplemental jurisdiction' over the remaining state law claims." *Id.* (quoting 28 U.S.C. § 1367(c)(3)).

Here, Plaintiff's remaining claims against Defendant Jarashow are District of Columbia substantive law claims: interference with an employment contract and defamation. The only remaining federal claims are those against the federal defendant, District of Columbia, in Counts

I, II, and III.  These counts allege violations of procedural due process, substantive due process, and 42 U.S.C. § 1983, and they arise from a February 12, 2016 meeting in which she was asked to resign from her position as an ALJ and subsequent removal from her ALJ position by the COST Order.  Am. Compl. ¶¶ 21-22, 38, 43, 49-50.  By contrast, the two remaining claims against Defendant Jarashow, for interference with an employment contract and defamation, arise from (1) a February 4, 2016 letter Defendant Jarashow sent to Defendant Adams, Chief ALJ Judge of the OAH, communicating a formal complaint against Plaintiff for violation of the District of Columbia Code of Ethics of OAH Administrative Law Judges, Chapter V., Sections U and V, and (2) a February 18, 2016 email correspondence with Defendant Nolen of OAH regarding Plaintiff's judicial candidacy.  *Id.* at 15-18, 65, 72.  The facts alleged supporting liability for Defendant Jarashow and for Defendant District of Columbia are completely separate: Defendant Jarashow's alleged liability stems from purported false, misleading, and defamatory statements made on February 4, 2016 and February 18, 2016, whereas Defendant District of Columbia's liability stems from its alleged failure to provide due process in Plaintiff's removal from her ALJ position for OAH ethical violations and the alleged unconstitutionality of the District of Columbia's policy in Section V(U) of the OAH Code of Ethics.  As a result, this Court should dismiss the remaining substantive law claims against Defendant Jarashow for lack of subject matter jurisdiction.

### B. No Viable Interference with Employment Contract Claim Exists Against Defendant Jarashow.

Even if this Court exercises supplemental jurisdiction over Plaintiff's interference with employment contract claim, Plaintiff fails to state a claim for which relief can be granted.  To "prevail on a claim of tortious interference with contract, a plaintiff must establish: (1) the

existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, and (4) damages resulting from the breach." *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325 (D.C. 2008) (internal citations and quotations omitted). The District of Columbia has recognized "[o]ne who intentionally and improperly interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Id.* (internal citations and quotations omitted). An existing contract and a breach of that contract are required: "unlike in some jurisdictions, courts in the District of Columbia have held that a breach of contract is an essential element of the tort." *Id.* (internal citations and quotations omitted). Neither exists in the instant case.

Plaintiff alleges she was employed as an ALJ at the OAH from 2005 through August 2016. Am. Compl. ¶ 8. She asserts Defendant Jarashow "was aware that Plaintiff was an employee with a contractual interest in her position with the District of Columbia government OAH." *Id.* at 65. Notably, Plaintiff does not allege (1) she had a contract with OAH or (2) a breach of that contract.

Plaintiff cannot satisfy the contract requirement because there is no contract of employment between an individual ALJ and the OAH. An OAH ALJ is selected and appointed through a statutory process for a term defined by statute. "Administrative Law Judge shall be appointed to the Excepted Service as a statutory officeholder pursuant to § 1-609.08, upon the affirmative vote of a majority of the voting members of the Commission, [("the COST")], after a selection process in accordance with rules promulgated pursuant to § 2-1831.11(a) and (b)." D.C. Code § 2-1831.08(a) (2017). Reappointments are subject to a majority vote of the COST.

D.C. Code § 2-1831.10(a) (2017).  All OAH ALJ's are subject to discipline for cause by the COST and/or removal for cause by a majority vote of the COST.  D.C. Code § 2-1831.10(d), (e) (2017).  This was the process through which the Plaintiff was removed from her OAH ALJ position.  Plaintiff cannot plead the existence of a contract as a matter of law.

Even if a contract existed, for sake of argument, Plaintiff fails to assert any allegation that the OAH breached its contract with Plaintiff.  In fact, on the face of the Amended Complaint, it is evident Plaintiff breached any "contractual interest" she had by Plaintiff's own violations of the OAH Code of Ethics as charged by the OAH Chief Judge and investigated and determined by the COST.  As stated in Plaintiff's Amended Complaint:

> In the Notice of Violation, Chief Administrative Law Judge Adams acknowledged that he received a formal complaint from Mr. Jarashow and concluded that ALJ Barber violated Section V(U) of the Code of Ethics for OAH Administrative Law Judges, and that ALJ Barber's pursuit of the judgeship in Maryland violated several other rules governing the conduct of ALJs at OAH, including Sections I(A), II(D) and V(V).  Chief Administrative Law Judge Adams stated that the Maryland State Board of Elections confirmed that ALJ Barber was a candidate in a party primary scheduled for April 26, 2016 and the primary is viewed as a partisan election.  He noted that ALJ Barber would appear as a candidate for Circuit Court Judge in both the Republican and Democratic primaries and both primaries are exclusive to the respective party and exclude unaffiliated and third party voters, and by participating on these party tickets, ALJ Barber violated Section V(U) of the OAH Code of Ethics.   Chief Administrative Law Judge Adams cited the Maryland Court of Appeals decision, *Suessmann v. Lamone*, 862 A.2d 1 (Md. 2004), for the contention that a judicial election is partisan.   Chief Administrative Law Judge Adams further commented that ALJ Barber had an obligation to uphold the integrity and independence of the agency and although ALJ Barber contacted Mr. Flowers and Judge Williams to obtain an opinion on the issue, she made no additional effort to determine whether the election was partisan.   Chief Administrative Law Judge Adams claimed there was clear case law that would have provided guidance.

11

*Id.* at 19.  The August 2, 2016 COST Order concluded that because of Plaintiff's violation of Section V(U), Plaintiff shall be removed from her position as an OAH ALJ.  Exhibit B at 4. Plaintiff cannot pursue a lawsuit for interference with an employment contract when (1) a contract did not exist and (2) if one did exist, her own conduct breached the contract.

Further, Plaintiff fails to allege and cannot allege causation.  Plaintiff cannot establish that Defendant Jarashow's letter directly and proximately caused a breach of contract because Plaintiff was removed from the ALJ position due to her own OAH Code of Ethics violation. Although Defendant Jarashow submitted a formal complaint to the OAH, the OAH separately concluded that the Plaintiff committed ethical violations.  *Id.* at 19.  As a result, the OAH issued a Notice of Violation to Plaintiff.  *Id.*  Thereafter, the COST investigated and conducted a formal hearing through which the COST determined that Plaintiff did commit an ethical violation that warranted removal.  *Id.* at 26.  Contrary to Plaintiff's allegations, Plaintiff's OAH Code of Ethics violation was the direct and proximate cause of her removal.

Plaintiff further alleges she has been denied other employment opportunities as a result of Defendant Jarashow's conduct.  *Id.* at 66.  Plaintiff provides no factual basis for these allegations except Defendant Jarashow published the COST Order "in a manner to publicly humiliate Plaintiff and prevent her from entering into any other employment contract." *Id.* at 65.  Notably, the COST Order in which Plaintiff describes as "the removal decision" is public information. The Plaintiff made the decision public when she appealed the decision to the D.C. Court of Appeals on September 2, 2016.

Last, even if Plaintiff has been denied employment opportunities, Plaintiff fails to allege and demonstrate plausibly that Defendant Jarashow's interference directly and proximately impacted Plaintiff's employment opportunities.  Although Plaintiff pleads, "As a direct and

proximate cause of Defendant Jarashow and his law firm's actions," Plaintiff has, *inter alia*, suffered harm, this threadbare conclusory recital of causation is insufficient to state a claim for interference with employment contract.

An additional ground to dismiss this claim, as a matter of law, is that Defendant Jarashow's filing of the formal complaint did not constitute an improper interference because it was privileged. A "defendant is privileged if he acts in order to protect a present, existing economic interest." *Onyeoziri v. Spivok*, 44 A.3d 279, 286–87 (D.C. 2012). The Plaintiff contends Defendant Jarashow was a former Anne Arundel County Circuit Court judge and "was supporting other candidates for the vacant circuit court judge positions" when he submitted the formal complaint to OAH. Am. Compl. ¶ 15. As a result, Defendant Jarashow had present, existing economic interest in the integrity of the judiciary and the judicial election.

The District of Columbia Court of Appeals has "cited the Restatement with approval in defining the defense of legal justification or privilege: One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." *Onyeoziri*, 44 A.3d at 288.

There are seven factors, adopted from the Restatement, the Court will weigh in its determination of "whether conduct that interferes with business relations is improper: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

13

(f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." *Id.* citing Restatement § 767.  In addition, "There is of course no liability for interference with a ... prospective relation on the part of one who merely gives truthful information to another." *International City Management Ass'n Retirement Corp. v. Watkins*, 726 F.Suppp.2d 1, 6 (D.D.C. 1989) (citing Restatement § 772(a)).

Plaintiff alleges, "Defendant Jarashow knew his complaint against Plaintiff Barber was false and the information he publicized was misleading and that Plaintiff Barber did not engage in any ethical violation."  Am. Compl. ¶ 66.  Plaintiff's conclusory allegations are baseless. The Chief ALJ Adams and the COST Order confirmed Defendant Jarashow's truthfulness in his formal complaint by determining that the Plaintiff violated the OAH Code of Ethics as asserted by Defendant Jarashow.  *See* Exhibit B at 4.  Further, the social interest in protecting the freedom of an individual to file a complaint with an agency and/or regulatory body regarding a judge or attorney's ethical conduct outweighs Plaintiff's "contractual interests" with OAH.  To hold otherwise, would upend the self-regulatory nature of judges and attorneys.  Accordingly, this Court should dismiss Plaintiff's interference with employment contract claim against Defendant Jarashow with prejudice.

> ### C.   No Viable Defamation Claim Exists Against Defendant Jarashow.

*1.   The statute of limitations bars Plaintiff's defamation claim.*

D.C. Code 12-301(4) provides a one year statute of limitations for defamation.  As a general rule, "[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Mullin v.*

*Washington Free Weekly, Inc.,* 785 A.2d 296, 298-99 (D.C. 2001).[4]  Plaintiff alleges Defendant

Jarashow sent a defamatory email to Defendant Nolen, an OAH attorney, on February 18, 2016.

Am. Compl. ¶ 72.  Plaintiff explains she did not discover this email until September 2016 after

she submitted a FOIA request to the District of Columbia.  *Id.*

No good reason exists why Plaintiff failed to submit a FOIA request after February 5,

2016, when Chief Judge Adams gave a copy of Defendant Jarashow's letter to Plaintiff.  *Id.* at

18.  Plaintiff was on notice as early as February 5, 2016 that Defendant Jarashow and the OAH

were communicating about her ethical violations and judicial candidacy.  As a result, Plaintiff's

defamation claim against Defendant Jarashow is time-barred because Plaintiff delayed bringing

her claim within the one year statute of limitations.  As such, this Court should dismiss the

defamation claim with prejudice for failure to state claim for which relief can be granted.

2.      *Even if Plaintiff timely filed her defamation claim, Plaintiff fails to allege facts sufficient to plead defamation.*

In the District of Columbia, in order to state a cause of action for defamation, Plaintiff

must allege the four (4) elements of the claim: (1) Defendant Jarashow "made a false and

defamatory statement concerning [P]laintiff;" (2) Defendant Jarashow "published the statement

without privilege to a third party;" (3) Defendant Jarashow's "fault in publishing the statement

amounted to at least negligence;" and (4) "either that the statement was actionable as a matter of

law irrespective of special harm or that its publication caused the plaintiff special harm."  *Beeton*

*v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001).

_____

[4]  This Court applies District of Columbia substantive law to analyze the statute of limitations for defamation. *Browing v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002).

### i. Defendant Jarashow's statement was privileged.

Plaintiff fails to allege facts sufficient to satisfy the pleading requirement for the second element of the claim because Defendant's alleged defamatory statement was privileged. The District of Columbia "has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relationship to the proceeding." *Oparaugo v. Watts*, 884 A.2d 63, 79 (D.C. 2005). The District of Columbia has acknowledged, "Treatises addressing this issue have indicated that the so-called judicial privilege applies to judges, court officers, attorneys, parties, grand and petit jurors performing those functions, witnesses and participants in judicial proceedings." *Id.* at 79-80 (citing Prosser and Keeton on Torts at 816–17 (5th ed. 1984)).

The application of absolute privilege has been extended to encompass quasi-judicial proceedings conducted by administrative bodies. *Mazanderan v. McGranery*, 490 A.2d 180, 181-182 (D.C. 1984). It is well-settled that defamatory statements published incidental to judicial proceedings are absolutely privileged, provided the statements are relevant to the proceeding. The Court of Appeals reasoned an appellee/defendant's letter to the Public Vehicles Division served as a formal complaint against an appellant, as a result of which the Hacker's License Appeal Board conducted a hearing. *Id.* at 181. As a result, the Court of Appeals held the letter to the Hacker's Board comes squarely within the ambit of absolute privilege.

Similar to *Mazanderan*, Defendant Jarashow's formal complaint to OAH, as a result of which the COST conducted a hearing, is within the ambit of absolute privilege. Likewise and by extension, Defendant Jarashow's subsequent February 18, 2016 email to OAH was published in the course of the quasi-judicial proceeding against Plaintiff and related to the formal complaint,

investigation, and formal proceedings initiated by the COST regarding Plaintiff's ethical violations and Plaintiff's judicial candidacy.

### ii. Defendant Jarashow's statement did not cause special harm.

Plaintiff fails to allege facts sufficient to satisfy the fourth element of her claim, i.e., the February 18, 2016 publication caused the Plaintiff special harm. Plaintiff claims this email was sent to cause her termination at OAH. Am. Compl. ¶ 72. Regardless of the alleged intent behind the February 18, 2016 email, the COST initiated formal proceedings after conducting its own investigation. *Id.* at 26. As provided in the Amended Complaint, "If, after investigation, the Commission has reason to believe that there is cause to discipline or remove an Administrative Law Judge, it may commence a formal proceeding against the Administrative Law Judge." *Id.* (citing Section 3730.4 of Chapter 6-B of the D.C. Municipal Regulations). As a result, Plaintiff's threadbare recital that Defendant Jarashow's February 18, 2016 email caused her harm, supported by Plaintiff's legal conclusions, are insufficient to state a claim for defamation.

### iii. Defendant Jarashow's statement was not defamatory.

The first of the four elements for a defamation claim requires that Defendant Jarashow "made a false and defamatory statement concerning [P]laintiff." *Beeton*, 779 A.2d at 923. The Plaintiff alleges that the false and defamatory statement is that she was a Democrat running as a candidate for judge. Am. Compl. ¶ 72. As a matter of law, this statement cannot be considered to be defamatory as interpreted by District of Columbia law.

In the District of Columbia, "a statement is defamatory if it tends to injure [the] plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Guilford Transp. Industries, Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000). "But not every uncomplimentary publication is libelous." *Id.* "[A]n allegedly defamatory remark

must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious,

infamous or ridiculous.'" *Id.* (internal citation omitted).

> Defamation is ... that which tends to injure "reputation" in the
> popular sense; to diminish the esteem, respect, goodwill or
> confidence in which the plaintiff is held, or to excite adverse,
> derogatory or unpleasant feelings or opinions against him. *It
> necessarily, however, involves the idea of disgrace*; and while a
> statement that a person is a Republican may very possibly arouse
> adverse feelings against him in the minds of many Democrats, and
> even diminish him in their esteem, it cannot be found in itself to be
> defamatory, since no reasonable person could consider that it
> reflects upon his character.

*Id.* (quoting W. Page Keeton, Prosser and Keeton on Torts § 111, at 773–74 (5 th ed.1984)

(emphasis in original) (footnotes omitted in original)).

"The trial court's threshold task in an action for defamation is to determine whether the

challenged statement is capable of bearing a particular meaning and whether that meaning is

defamatory." *Id.* (internal quotations and citation omitted). "It is only when the court can say

that the publication is not reasonably capable of any defamatory meaning and cannot be

reasonably understood in any defamatory sense that it can rule, as a matter of law, that it was not

libelous." *Id.*

> The court should not, however, indulge far-fetched interpretations
> of the challenged publication. The statements at issue should not
> be "interpreted by extremes, but should be construed as the
> average or common mind would naturally understand [them]." If
> the court determines that a statement is indeed capable of bearing a
> defamatory meaning, then whether that statement is in fact
> "defamatory and false [is a question] of fact to be resolved by the
> jury."

*Id.* at 594-95 (citation omitted). "Courts must therefore be careful not to imply defamatory

meaning from statements that are not capable of such meaning." *LeFande v. District of

Columbia*, 864 F. Supp. 2d 44, 52 (D.D.C. 2012).

18

In the instant case, Plaintiff asserts the defamatory statement in the email was that Plaintiff was "running as the Democrat candidate for judge." Am. Compl. ¶ 72. Plaintiff alleges this statement to be defamatory because she was a "judicial" candidate, not a Democrat or Republican candidate, and the news article attached to the email did not state that she was a Democrat candidate for judge. *Id.* However, the challenged statement is not in itself defamatory because no reasonable person would consider that Plaintiff's affiliation as a Democrat (or Republican) reflects upon Plaintiff's character. "Words which do not disparage a plaintiff's character are not actionable, even if special damages flow from their publication." *Wilner,* 760 A.2d 594.

Characterizing the Plaintiff's political affiliation as a Democrat cannot reasonably be considered to convey a defamatory meaning to the recipient of the email, Defendant Nolan, because the language does not make Plaintiff appear odious, infamous or ridiculous. Last, the news article was attached for Defendant Nolan to read himself for context and for him to determine the meaning of the article independent of Defendant Jarashow's interpretation. No reasonable person could conclude the challenged statement to be reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense. As such, this Court should dismiss the defamation claim with prejudice.

## VI.   CONCLUSION

This Court should dismiss Plaintiff's Amended Complaint because Plaintiff fails to allege a viable claim under 42 U.S.C. § 1985(3). In addition, Plaintiff fails to sufficiently plead elements required to state viable claims for interference with employment contract and defamation under District of Columbia law. Accordingly, for the reasons set forth fully below,

Defendant Jarashow respectfully requests this Court dismiss Plaintiff's Amended Complaint with prejudice.

WHEREFORE, for the reasons set forth in Defendant Jarashow's Motion to Dismiss and his Memorandum of Points and Authorities, Defendant Jarashow respectfully requests this Court grant this Motion and dismiss all three claims against him with prejudice.

Respectfully submitted,

Eccleston & Wolf, P.C.

_____/s/_____

Justin M. Flint (#491782)
Abby A. Franke (#1030041)
1629 K Street, N.W., Suite 260
Washington, DC 20006
(202) 857-1696 (Tel)
flint@ewdc.com
franke@ewdc.com
*Counsel for Defendant Ronald Jarashow*

20

## EXHIBIT INDEX

Exhibit A (February 4, 2016 formal complaint) ..................................................3, b-c

Exhibit B (The COST Order).....................................................................4, 12, 14, d-h

a

# Exhibit A

LAW OFFICES

# GORMLEY JARASHOW BOWMAN, LLC

162 WEST STREET
ANNAPOLIS MARYLAND 21401
Telephone (410) 268-2255
Facsimile (410) 974-9241

RONALD H. JARASHOW
ADMITTED MARYLAND AND D.C. BARS

EMAIL RJARASHOW@GJBLAWFIRM.COM
WWW.GJBLAWFIRM.COM

February 4, 2016

Chief Judge Eugene A. Adams
D.C. Office of Administrative Hearings
One Judiciary Square
441 4ᵗʰ St., N.W., Suite 450N
Washington, D.C. 20001
VIA FAX & FIRST CLASS MAIL                    IMMEDIATE ATTENTION

Dear Chief Judge Adams,

I am writing to you today to register a formal complaint that ALJ Claudia Barber, a filed candidate for Judge on the Circuit Court for Anne Arundel County, Maryland, should be immediately required to resign from office, or be terminated as an administrative law judge.

Under the District of Columbia Code of Ethics for OAH Administrative Law Judges, Chapter V., sections U and V, codified at D.C. Official Code §2-1831.05(a)(9), an Administrative Law Judge is required to resign upon becoming a candidate in a primary election or engaging in political activity, in this case a judicial election for Circuit Court Judge in Anne Arundel County, Maryland. Judge Barber filed for election on January 20, 2016, and has been in violation since that date.

Judge Barber should not and cannot be allowed to remain in office if she remains a candidate for election. I urge immediate action on your part, as this ALJ's continuance constitutes a violation of law, and a breach of ethical standards.

I would appreciate your immediate response to this complaint.

Yours truly,

Ronald H. Jarashow

# Exhibit B

GOVERNMENT OF THE DISTRICT OF COLUMBIA

COMMISSION ON SELECTION AND TENURE OF ADMINISTRATIVE LAW JUDGES
OF THE OFFICE OF ADMINISTRATIVE HEARINGS



**ORDER**

August 2, 2016

Upon consideration of the Office of Administrative Hearings' (OAH) allegation that Administrative Law Judge (ALJ) Claudia Barber violated Sections V(U) and V(V) the OAH Code of Ethics and recommendation of her termination as an ALJ, on July 13, 2016, the Commission on Selection and Tenure of Administrative Law Judges (COST) conducted a formal proceeding pursuant to 6-B District of Columbia Code of Municipal Regulations Section 3735. The following serves as the COST's Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT**

1.  Claudia Barber worked as an ALJ with the OAH from 2005 to the present.

2.  On January 20, 2016, ALJ Barber filed a Certificate of Candidacy, Candidate Information Sheet and Statement of Organization for Campaign Finance Entities at the Maryland State Board of Elections, declaring her candidacy for Judge of the Circuit Court for Anne Arundel County, Maryland.

3.  On February 4, 2016, Chief ALJ Eugene Adams received a formal complaint filed against Judge Barber regarding her participation as a candidate in the 2016 election for Judge of the Circuit Court for Anne Arundel County, Maryland.

4.  On February 12, 2016, Chief ALJ Adams issued a Notice of Violation to ALJ Barber for participating as a candidate in the 2016 election for Judge of the Circuit Court for Anne Arundel County, Maryland. ALJ Barber was placed on Administrative Leave with Pay.

5.  Judicial candidates in Maryland generally seek election by running in both the state Democratic primary and state Republican primary. A prescribed number of top vote-getters then appears on the general election ballot without partisan affiliation. There is no designation on the primary ballots that judicial candidates, while listed on a party primary ballot, are not affiliated with any party.

e

6. Beginning with early voting on or about April 14 through April 21, 2016, and at the primary election on April 26, 2016, ALJ Barber appeared on the ballot in two Anne Arundel County, Maryland party primaries -- on the Democratic Party ballot and the Republican Party ballot -- as a candidate for Judge of the Maryland Circuit Court, Circuit 5. Each party primary was closed in that only registered Democrats could vote in the Democratic primary, and only registered Republicans could vote in the Republican primary. A link to the sample ballots for each primary is set forth below:

7. Neither party primary ballot stated that candidates for judicial election run simultaneously in the other party's primary. Nor did the ballots state that judicial candidates participate in non-partisan contests. *See* http://www.elections.state.md.us/elections/2016/primary_ballots/AnneArundel.pdf.

## CONCLUSIONS OF LAW

Section V(U) of the OAH Code of Ethics provides:

> An Administrative Law Judge shall resign from judicial office when the Administrative Law Judge becomes a candidate either in a party primary or in a partisan general election except that the Administrative Law Judge may continue to hold office, while being a candidate for election to or serving as a delegate in a jurisdiction's constitutional convention, if otherwise permitted by law to do so.

Under Section V(V) of the OAH Code of Ethics for OAH, "[a]n Administrative Law Judge should not engage in any other partisan political activity."

The question before the COST is whether, by running in the Democratic and Republican Party state primaries in Maryland, ALJ Barber ran afoul of either Section V(U) or V(V) of the OAH Code of Ethics. For the reasons set forth below, we conclude that she did.

In summary, ALJ Barber argues that in Maryland, when asked to state their party affiliation on the state certificate of candidacy, judicial candidates list "JUDICIAL" in lieu of a party affiliation. See Barber Hrg. Exh. 5. She also states that Maryland judicial candidates routinely run in each major party's primary. As such, she maintains, the Maryland state primary elections for judges are non-partisan. This argument is of limited merit. It is certainly true that candidates and persons with sophistication about election of judges may know that each judicial candidate appears on each primary's ballot. The same cannot be said of ordinary voters in the primaries. You are either a Republican, in which case you receive a Republican ballot, or a Democrat, in which case you receive a Democratic ballot. If you are neither a registered Democrat nor a registered Republican, you cannot vote at all in the Maryland party primaries.

Thus, to voters receiving the ballots, judicial candidates appear to be partisans running alongside the party presidential candidates and others. A resident of Anne Arundel County who works in the District of Columbia -- as ALJ Barber does -- could reasonably have inferred from the ballot that ALJ Barber was running as a partisan. If that Anne Arundel County resident appeared before the OAH -- for example, as an employee of a District agency -- she could reasonably be concerned that ALJ Barber's presumed political views could affect her judging. This is precisely the appearance problem that Sections V(U) and V(V) of the OAH Code of Ethics seek to prevent.[1]

ALJ Barber argues, using a supporting affidavit from former Chief ALJ Tyrone Butler that "the OAH Code of Ethics was not promulgated nor intended to prohibit an ALJ from running in a Maryland bipartisan or nonpartisan judicial election." Barber Hrg. Exh. 8 (Butler Supp. Aff., March 16, 2016). Nothing in the COST's findings is inconsistent with former Chief ALJ Butler's stated view. As discussed above, the Maryland state primaries are neither bipartisan nor nonpartisan, as candidates run in party primaries on ballots identifying them as Republicans or Democrats, with no indication that judicial candidates are unaffiliated or independent candidates. Thus, it is of no moment that ALJ Barber did not view herself as a partisan. To voters, she appeared to be one.

We also note that ALJ Barber failed to obtain an opinion from OAH's Ethics Committee. According to her hearing testimony, she approached the OAH Ethics Committee to seek an opinion on whether her anticipated candidacy would place her at odds with OAH's Code of Ethics. For reasons that are unclear to the COST, she wished to receive the opinion on an anonymous basis (though, clearly her ultimate candidacy would be public). According to ALJ Barber, when the Ethics Committee declined to give advice on an anonymous basis, she declined to pursue an opinion of the full Ethics Committee. Even then, however, ALJ Barber did obtain a written opinion from then-Ethics Committee chair, ALJ James J. Harmon, Jr. ALJ Harmon stated, "I believe that if you determine you are running in a primary election or in a partisan general election, you must resign your ALJ position in OAH." OAH Hrg. Exh. 2 at 10. ALJ Harmon also cited a Maryland Court of Appeals decision, *Suessman v. Lamone*, 862 A.2d 1, 5 (Md. 2004), in which the court stated that judicial candidates attain a slot on the general election ballot by winning the primary election of either the Democratic or Republican party and further stated that party primaries for judicial office in Maryland are partisan affairs. *Id.* at 16. ALJ Barber obtained no clarifying or contrary advice from the Ethics Committee or any other source.[2]

[1] The Code of Ethics proscribes participation in a party primary. OAH argued at the hearing that such a primary need not be partisan. We do not accept that argument, as a "party" primary is by definition partisan.
[2] ALJ Barber subsequently sough an advisory opinion on this issue from the COST. She did not provide the context that she had already obtained a negative opinion from the OAH Ethics Committee chair. The COST declined to offer an advisory opinion, but suggested that she might seek advice from the DC Board of Ethics and Government Accountability (BEGA). ALJ Barber did obtain advice from BEGA about whether her candidacy would violate the DC Hatch Act. BEGA also stated, "We cannot opine on whether running for judicial office would comport with any OAH rules . . . ." OAH Hrg. Exh. 3. At her hearing, the COST asked ALJ Barber several times to identify any

Based on the foregoing:

The COST finds that ALJ Barber violated Section V(U) of the OAH Code of Ethics by running as a candidate in two party primary elections without resigning as the rule requires.

In light of our finding of a violation of Section V(U), we need not consider whether this conduct also violated Section V(V).

As such, pursuant to 6-B DCMR § 3729.1(a), ALJ Barber shall hereby be removed from her position as an ALJ at OAH.

District of Columbia Commission on the
Selection and Tenure of Administrative Law
Judges of the Office of Administrative
Hearings

Judge Yvonne M. Williams, Chair

Copies to:

David Branch
Law Office of David A. Branch & Associates, PLLC
1828 L Street NW
Suite 820
Washington DC  20036
*Counsel for ALJ Barber*

Office of Administrative Hearings,
Chief Administrative Law Judge Eugene Adams

---

advice stating affirmatively that she would not violate the OAH Code of Ethics by running in the primaries. No such advice -- at least none given prior to her declaration of candidacy --was identified.

h