UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION

CLAUDIA BARBER,

        PLAINTIFF,

V.

DISTRICT OF COLUMBIA
GOVERNMENT, ET AL.,

        DEFENDANTS.

CIVIL ACTION NO: 1:17-CV-620 (KBJ)

**DENFENDANT JARASHOW'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

        Defendant Ronald Jarashow, by and through his attorneys, Justin M. Flint, Abby A. Franke, and Eccleston & Wolf, P.C., pursuant to Fed. R. Civ. P. 12(b)(6), Local Rule 7, and this Court's General Order § 5(a), hereby files his Memorandum supporting the Motion to Dismiss Plaintiff's Amended Complaint and in support thereof respectfully states:

**I.      INTRODUCTION**

        No justification exists for this lawsuit based on the allegations and applicable law.  This Court should dismiss all three claims against Defendant Jarashow with prejudice.  First, Plaintiff fails to state a viable claim under 42 U.S.C. § 1985(3) because the factual allegations are insufficient to raise an inference that Defendants participated in a conspiracy motivated by class-based discriminatory animus.  Upon dismissal of Plaintiff's 42 U.S.C. § 1985(3) claim against Defendant Jarashow, this Court should decline to exercise supplemental jurisdiction over the remaining District of Columbia substantive law claims for lack of subject matter jurisdiction.

Even if this Court exercises supplemental jurisdiction, Plaintiff fails to state a viable interference with employment contract claim against Defendant Jarashow because Plaintiff cannot establish she suffered any legally cognizable harm from her proper removal by the COST, and Defendant Jarashow's alleged interference was privileged.  Last, even if this Court exercises supplemental jurisdiction, Plaintiff fails to state a viable defamation claim as to the February 18, 2016 e-mail for the following reasons: (1) The claim is time-barred by the one year statute of limitations; (2) The alleged defamatory statement is protected by absolute privilege; (3) Plaintiff fails to plead how the alleged defamatory statement caused her special harm; and (4) Defendant Jarashow's statement was not defamatory.  Further, Plaintiff fails to state a viable defamation claim as to the purported flyers distributed on November 8, 2016 because the alleged statement was not defamatory.

Accordingly, for the reasons set forth fully below, Defendant Jarashow respectfully requests this Court dismiss all three claims against him with prejudice.

## II.    PLAINTIFF'S FACT ALLEGATIONS[1]

Plaintiff filed *Barber I* on May 22, 2017 alleging, *inter alia*, (1) a civil conspiracy under 42 U.S.C. § 1985(3) (hereinafter referred to as "Section 1985(3)") against Defendants Jarashow, District of Columbia, Adams, Natale, and Nolen, (2) interference of employment contract against Defendant Jarashow, and (3) defamation against Defendant Jarashow.  On October 17, 2017, this Court consolidated 17-cv-620 ("*Barber I*") and 17-cv-1860 ("*Barber II*").  *See* Docket.  There are no allegations against Defendant Jarashow in *Barber II*; therefore, this Motion to Dismiss addresses the allegations against Defendant Jarashow in *Barber I*.

---

[1] For purposes of this Motion, the Plaintiff's allegations are accepted on face value.

Plaintiff was an Administrative Law Judge ("ALJ") at the District of Columbia Office of Administrative Hearings ("OAH") from 2005 until August 2016. *Barber I* ¶ 8. "On January 20, 2016, Plaintiff filed with the State of Maryland a Certificate of Candidacy for Judge of the Circuit Court of the Fifth Judicial Circuit, which is Anne Arundel County." *Id*. at 13. Thereafter, "[o]n February 4, 2016, OAH Chief Administrative Law Judge Eugene Adams received a letter from a Maryland attorney, Defendant Ronald H. Jarashow, a former Anne Arundel County Circuit Court judge, who was supporting other candidates for the vacant circuit court judge positions." *Id*. at 15. Defendant Jarashow's letter to Defendant Adams was a formal complaint against Plaintiff for ethical violations of the OAH Code of Ethics. *Id*.; *see* attached hereto as Exhibit A.[2] The OAH provided the February 4, 2016 formal complaint to Plaintiff on February 5, 2016. *Id*. at 18. Thereafter, on February 12, 2016, the OAH issued Plaintiff a Notice of Violation and allegedly asked Plaintiff to resign from her ALJ position. *Id*. at 19.

District of Columbia Commission on Selection and Tenure of Administrative Law Judges of the Office of Administrative Hearings (hereinafter referred to as "the COST") initiated formal proceedings against Plaintiff on April 19, 2016 after conducting its own investigation. *Id*. at 26. As provided in *Barber I*, "If, after investigation, the Commission has reason to believe that there is cause to discipline or remove an Administrative Law Judge, it may commence a formal proceeding against the Administrative Law Judge." *Id*. (citing Section 3730.4 of Chapter 6-B of the D.C. Municipal Regulations). On August 2, 2016, the COST issued its Order with findings

---

[2] The reference and attachment of the February 4, 2016 letter does not convert Defendant Jarashow's 12(b)(6) motion to dismiss to a motion for summary judgment. *See Beckwith v. Ware,* 174 F. Supp. 3d 1, 4 (D.D.C. 2014). "In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider 'any documents either attached to or incorporated in the complaint ... without converting the motion to dismiss into one for summary judgment.'" *Id*. (citations omitted). "This includes documents that are 'referred to in the complaint and [are] central to the plaintiff's claim,' even if they are produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Id*. (citations omitted).

of fact and conclusions of law.  *Id*. at 33; *see* attached hereto as Exhibit B.[3]  The COST Order concluded because of Plaintiff's violation of Section V(U), Plaintiff shall be removed from her position as an ALJ at OAH.  Ex. B at pg. 4.  Plaintiff pleads that "Defendant Jarashow continued to communicate with OAH after the hearing to inquire about the decision of the COST and OAH and Plaintiff's employment status, and OAH subsequently provided the COST Order to Defendant Jarashow."  *Id*. at 35.

Plaintiff asserts that "Defendant Jarashow engaged in efforts to interfere with Plaintiff Barber's employment and caused Defendant the District of Columbia to remove Plaintiff from her position and has published the removal decision in a manner to publicly humiliate Plaintiff and prevent her from entering into any other employment contract."  *Id*. at 65.  Specifically, Plaintiff provides, "Defendant Jarashow filed a complaint against Plaintiff Barber in February 2016 with Defendant Adams and falsely claimed that she was running as a Democrat candidate with the goal of getting Plaintiff Barber terminated."  *Id*.  In addition, Plaintiff claims sometime between March and April of 2016, "Defendant Jarashow communicated with OAH and received Plaintiff's confidential personnel information from Defendants Adams, Natale and/or Nolen and published this information before formal proceedings were instituted against Plaintiff Barber, in a manner to publicly humiliate Plaintiff." *Id*. at 23, 65.

Plaintiff alleges Defendant Jarashow "was aware that Plaintiff was an employee with a contractual interest in her position with the District of Columbia government OAH."  *Id*. at 65.

---

[3]   The reference and attachment of the COST Order does not convert Defendant Jarashow's 12(b)(6) motion to dismiss to a motion for summary judgment as it is referred to in Plaintiff's Amended Complaint ("*BarberI*") and central to Plaintiff's claims.

In addition, Plaintiff asserts that "Defendant Jarashow knew his complaint against Plaintiff Barber was false and the information he publicized was misleading and that Plaintiff Barber did not engage in any ethical violation." *Id*. at 66.

In support of her defamation claim Plaintiff asserts, "[o]n February 18, 2016, Defendant Jarashow sent an email to Defendant Nolen with the subject line: 'Claudia Barber candidacy for judge,' and in this email falsely claimed that an attached article stated that Plaintiff Barber was going to participate in a candidates' forum and she was 'running as the Democrat candidate for judge.' The attached article did not state that Plaintiff Barber was 'running as the Democrat candidate for judge.'" *Id*. at 18, 72. Plaintiff claims she discovered this email in September 2016, only after she submitted a FOIA request to the District of Columbia. *Id*. Specifically, Plaintiff contends she was running as a judicial candidate and claims Defendant Jarashow's representation that she was the Democrat candidate was intended to cause her termination as an ALJ. *Id*. at 72.

In support of both her defamation and interference with employment contract claims, Plaintiff asserts that after her termination, "Defendant Jarashow made public confidential personnel information of Plaintiff Barber, and Defendant Jarashow used that information to produce a misleading election flyer on the day of the election to cause Plaintiff Barber to be cast in a false light on election day." *Id*. at 65, 72. Specifically, Plaintiff pleads the following:

> On November 8, 2016, the date of the general election, Defendant Jarashow distributed flyers to voters with a photograph of Plaintiff Barber, which included a misleading statement that she was determined not qualified by a Judicial Nomination Commission and terminated for an ethics violation without disclosing that the alleged ethics violation was on appeal and based on the exercise of her constitutional right to run for office in a non-partisan election to become a judge.

*Id*. at 35.

Last, Plaintiff alleges, in pertinent part, Defendants Jarashow, District of Columbia, Adams, Natale, and Nolen conspired to have Plaintiff terminated from her Administrative Law Judge position at OAH and because of this conspiracy, she was deprived of equal protection of the laws and "is being denied future opportunities in her chosen profession." *Id*. at 54-55. Specifically, Plaintiff alleges Defendants' motivations behind the alleged conspiracy were "to provide a political advantage to [Defendant Jarashow's] desired [judicial] candidates," "to publicly humiliate Plaintiff," and "to cause Plaintiff Barber to be cast in a false light on election day." *Id*.  at 54.

## III.    STANDARD OF REVIEW

Whether under District of Columbia or federal law, a complaint must contain sufficient facts, accepted as true, to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When considering a motion under Rule 12(b)(6), the Court must accept as true all of the factual allegations contained in the complaint, but not the legal conclusions.  *Id.*  In addition, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.  A claim is facially plausible when the factual content "allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 663. While plausibility does not equate to the "probability requirement, [a plaintiff must show] more than a sheer possibility that a defendant acted unlawfully." *Id*. The complaint must include more than mere "labels and conclusions." *Id*.

In construing the complaint liberally in the light most favorable to Plaintiff, the Court grants Plaintiff "the benefit of all inferences that can be derived from the facts alleged."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless, the Court need not

accept inferences drawn by Plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept Plaintiff's legal conclusions. *Id*. A complaint's "factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "[D]ismissal under Rule 12(b)(6) is appropriate where the complaint fails to allege the elements of a legally viable claim." *King v. District of Columbia*, 878 F.Supp 8, 11 (D.D.C. 2012).

## IV.     NO FEDERAL CLAIM UNDER 42 U.S.C. § 1985(3) EXISTS.

Section 1985(3) "provides a cause of action against two or more persons who participate in a conspiracy motivated by class-based discriminatory animus." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009). To state a claim under Section 1985(3), Plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, ... and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States.

*Id*. (citation omitted). "The statute does not apply to all conspiratorial tortious interferences with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus." *Id*. (citation omitted).

Absent from *Barber I* are any allegations that the alleged conspiracy was motivated by class-based discriminatory animus. In other words, Plaintiff does not allege she belongs to a protected class—such as one based on race, national origin, or gender—nor does she allege that the Defendants' alleged conspiracy was driven by membership in such class. *See Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 121 (D.D.C. 2012). In the absence of pleading this

essential element, the Plaintiff's allegations are insufficient to state a valid Section 1985(3) claim. *See Id.*

The crux of Plaintiff's 1985(3) claim is that Defendants conspired to have Plaintiff terminated from her ALJ position at OAH and because of this conspiracy, she was deprived of equal protection of the laws and "is being denied future opportunities in her chosen profession." *Barber I* ¶ 54-55.  Specifically, Plaintiff alleges Defendants' motivations behind the alleged conspiracy were "to provide a political advantage to [Defendant Jarashow's] desired [judicial] candidates." *Id.*  These bare facts do not raise an inference that Defendants were conspiratorially motivated by some class-based, invidiously discriminatory animus.

The Plaintiff also asserts the Defendants "knowingly and willfully violated 42 U.S.C. § 1985(3) by conspiring with one or more other persons for the purpose of depriving Plaintiff equal protection of the laws or equal privileges under the laws."  *Id*. at 55.  However, these "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a cause of action under Section 1985(3).  *Iqbal,* 556 U.S. at 678.  As a result, this Court should dismiss the Section 1985(3) conspiracy claim against Defendant Jarashow with prejudice.

## V.   NO DISTRICT OF COLUMBIA SUBSTANTIVE LAW CLAIMS EXIST.

### A.   Upon Dismissing Plaintiff's 42 U.S.C. 1985(3) Claim, This Court Lacks Subject Matter Jurisdiction over the District of Columbia Substantive Law Claims Against Defendant Jarashow.

Procedurally, this Court should decline to exercise supplemental jurisdiction over the common law defamation and interference with employment contract claims against Defendant Jarashow because they do not derive from a common nucleus of operative fact as the constitutional violations alleged in the remaining federal claims against the District of Columbia.

A court with original jurisdiction over certain claims has supplemental jurisdiction over state law claims "that are so related ... that they form part of the same case or controversy under Article III of the United States Constitution." *Ning Ye v. Holder*, 667 F. Supp. 2d 103, 104 (D.D.C. 2009) (quoting 28 U.S.C. § 1367(a)). "In order for a federal claim and a state-law claim to form part of the same case or controversy, the claims must derive from a common nucleus of operative fact." *Id.* (citation omitted). "Claims derive from a common nucleus of operative fact only if the plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Taylor v. District of Columbia*, 626 F. Supp. 2d 25, 28 (D.D.C. 2009). "If there is almost no factual or legal overlap between the state and federal claims, a common nucleus of operative fact does not exist." *Ning Ye,* 667 F. Supp. 2d at 104 (citation omitted). "Where the federal claims that provide the Court with original jurisdiction over the action have been dismissed, the Court 'may decline to exercise supplemental jurisdiction' over the remaining state law claims." *Id.* (quoting 28 U.S.C. § 1367(c)(3)).

If this Court dismisses Plaintiff's 42 U.S.C. 1985(3) claim against Defendant Jarashow, Plaintiff's remaining claims against Defendant Jarashow are District of Columbia substantive law claims: interference with an employment contract and defamation. The remaining federal claims are those against Defendants the District of Columbia, Eugene Adams, Vanessa Natale, and Shawn Nolen (collectively "District Defendants"). The federal counts against District Defendants allege violations of procedural due process, substantive due process, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964 for retaliation and race/color discrimination. *See generally Barber I* and *Barber II.* These allegations arise from a February 12, 2016 meeting in which she was asked to resign from her position as an ALJ and subsequent removal from her

9

ALJ position by the COST Order and Plaintiff's putative employment-related conflicts with District Defendants. *Barber I* ¶¶ 21-22, 38, 43, 49-50; *See generally Barber II.*

By contrast, the two remaining claims against Defendant Jarashow, for interference with an employment contract and defamation, arise from (1) a February 4, 2016 letter Defendant Jarashow sent to Defendant Adams, Chief ALJ Judge of the OAH, communicating a formal complaint against Plaintiff for violation of the District of Columbia Code of Ethics of OAH Administrative Law Judges, Chapter V., Sections U and V, (2) a February 18, 2016 email correspondence with Defendant Nolen of OAH regarding Plaintiff's judicial candidacy, and (3) purported misleading flyers allegedly distributed on November 8, 2016. *Barber I* ¶¶ 15-18, 35, 65, 72. The facts alleged supporting liability for Defendant Jarashow and for District Defendants are completely separate: Defendant Jarashow's alleged liability stems from purported false, misleading, and defamatory statements made on February 4, 2016, February 18, 2016, and November 8, 2016, whereas the District Defendants' liability stems from its alleged failure to provide due process in Plaintiff's removal from her ALJ position for OAH ethical violations, the alleged unconstitutionality of the District of Columbia's policy in Section V(U) of the OAH Code of Ethics, and alleged retaliation and race/color discrimination. As a result, this Court should dismiss the remaining substantive law claims against Defendant Jarashow for lack of subject matter jurisdiction.

**B.    No Viable Interference with Employment Contract Claim Exists Against Defendant Jarashow.**

Even if this Court exercises supplemental jurisdiction over Plaintiff's interference with employment contract claim, Plaintiff fails to state a claim for which relief can be granted. To plead a prima facie case of intentional interference with an employment contract, the plaintiff

10

must prove: "(1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages." *Onyeoziri v. Spivok*, 44 A.3d 279, 286 (D.C. 2012). "One who intentionally and improperly interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Id*. To be actionable, the interference need not cause an actual breach of the business relationship, but instead may cause "merely a failure of performance" by one of the parties. *Id*.

Plaintiff was removed from her ALJ position on August 2, 2016 due to the COST Order. *See* Ex. B. Plaintiff cannot establish she suffered any legally cognizable harm from her proper removal by the COST, the administrative body with authority to sanction an administrative law judge's unethical conduct. Plaintiff further alleges she has been denied other employment opportunities as a result of Defendant Jarashow's conduct. *Barber I* ¶ 66. Plaintiff's claim for interference with employment opportunities, i.e., the loss of the Maryland election, due to alleged misleading flyers distributed by Defendant Jarashow on November 8, 2016, amounts to rank guesswork. In addition, Plaintiff's allegations of a nondescript publication of confidential information in or around March 2016 are inadequate to bring forth such a claim. Notably, Plaintiff does not contend that alleged flyers or published confidential information was false. "There is of course no liability for interference with a ... prospective relation on the part of one who merely gives truthful information to another." *International City Management Ass'n Retirement Corp. v. Watkins*, 726 F.Supp.2d 1, 6 (D.D.C. 1989) (citing Restatement § 772(a)). What is more, Plaintiff appealed the COST Order on September 2, 2016, making everything

public for Anne Arundel voters and future employment opportunities. To blame Defendant Jarashow for her election loss is pure conjecture.

Plaintiff cannot maintain her interference with employment contract claim because Defendant Jarashow's alleged interference was privileged. A "defendant is privileged if he acts in order to protect a present, existing economic interest." *Onyeoziri*, 44 A.3d at 286–87. The Plaintiff contends Defendant Jarashow was a former Anne Arundel County Circuit Court judge and "was supporting other candidates for the vacant circuit court judge positions" when he submitted the formal complaint to OAH. *Barber* I ¶ 15. As a result, Defendant Jarashow had present, existing economic interest in the integrity of the judiciary and the judicial election.

The District of Columbia Court of Appeals has "cited the Restatement with approval in defining the defense of legal justification or privilege: One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." *Onyeoziri*, 44 A.3d at 288. There are seven factors, adopted from the Restatement, the Court will weigh in its determination of "whether conduct that interferes with business relations is improper: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." *Id*. citing Restatement § 767.

Plaintiff alleges, "Defendant Jarashow knew his complaint against Plaintiff Barber was false and the information he publicized was misleading and that Plaintiff Barber did not engage in any ethical violation." *Barber I* ¶ 66. Plaintiff's conclusory allegations are baseless. The Chief ALJ Adams and the COST Order confirmed Defendant Jarashow's truthfulness in his formal complaint by determining that the Plaintiff violated the OAH Code of Ethics as asserted by Defendant Jarashow. *See* Ex. B at pg. 4; *see also International City Management Ass'n Retirement Corp.*, 726 F.Supp.2d at 6.

Plaintiff cannot hide from the COST Order that found her conduct unethical as violating the administrative law judge ethical code. *See* Ex. B. Similar to the matter at hand, the Court of Appeals has held, "that the recordation of *lis pendens* ancillary to litigation over real property interests is … protected by a conditional privilege against a claim of tortious interference with contract and/or prospective advantage in the District of Columbia." *Havilah Real Property Services, LLC v. VLK, LLC*, 108 A.3d 334, 346 (D.C. 2015). The Court explained, "This means that a defendant may avoid liability if he or she can establish that the notice of *lis pendens* was filed pursuant to litigation that was initiated in good faith." *Id.* Similar to a good faith filing of *lis pendens*, Defendant Jarashow's actions were initiated in good faith and were justified by the COST Order in the promotion of social justice and public interest in preventing Plaintiff's administrative law judicial misconduct. Accordingly, this Court should dismiss Plaintiff's interference with employment contract claim against Defendant Jarashow with prejudice.

13

## C.   No Viable Defamation Claim Exists Against Defendant Jarashow.

*1.   The statute of limitations bars Plaintiff's defamation claim.*

D.C. Code 12-301(4) provides a one year statute of limitations for defamation.  As a general rule, "[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs."  *Mullin v. Washington Free Weekly, Inc.,* 785 A.2d 296, 298-99 (D.C. 2001).[4]  Plaintiff alleges Defendant Jarashow sent a defamatory email to Defendant Nolen, an OAH attorney, on February 18, 2016. *Barber I ¶* 72.  Plaintiff explains she did not discover this email until September 2016 after she submitted a FOIA request to the District of Columbia.  *Id.*

No good reason exists why Plaintiff failed to submit a FOIA request after February 5, 2016, when Chief Judge Adams gave a copy of Defendant Jarashow's letter to Plaintiff.  *Id.* at 18.  Plaintiff was on notice as early as February 5, 2016 that Defendant Jarashow and the OAH were communicating about her ethical violations and judicial candidacy.  Plaintiff provides no good faith basis for her assertion that the emails between Defendant Jarashow and OAH were confidential.  In fact, they were not confidential because they were disclosed in response to a FOIA request.  As a result, Plaintiff's defamation claim against Defendant Jarashow is time-barred because Plaintiff delayed bringing her claim within the one year statute of limitations.  As such, this Court should dismiss the defamation claim with prejudice for failure to state claim for which relief can be granted.

---

[4]  This Court applies District of Columbia substantive law to analyze the statute of limitations for defamation. *Browing v. Clinton,* 292 F.3d 235, 244 (D.C. Cir. 2002).

2.      *Even if Plaintiff timely filed her defamation claim, Plaintiff fails to allege facts sufficient to plead defamation.*

In the District of Columbia, to state a cause of action for defamation Plaintiff must allege the four (4) elements of the claim: (1) Defendant Jarashow "made a false and defamatory statement concerning [P]laintiff;" (2) Defendant Jarashow "published the statement without privilege to a third party;" (3) Defendant Jarashow's "fault in publishing the statement amounted to at least negligence;" and (4) "either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001).

### i. Defendant Jarashow's statement was privileged.

Plaintiff fails to allege facts sufficient to satisfy the pleading requirement for the second element of the claim because Defendant's alleged defamatory statement was privileged.  The District of Columbia "has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relationship to the proceeding." *Oparaugo v. Watts*, 884 A.2d 63, 79 (D.C. 2005).  The District of Columbia has acknowledged, "Treatises addressing this issue have indicated that the so-called judicial privilege applies to judges, court officers, attorneys, parties, grand and petit jurors performing those functions, witnesses and participants in judicial proceedings." *Id*. at 79-80 (citing Prosser and Keeton on Torts at 816–17 (5th ed. 1984)).

The application of absolute privilege has been extended to encompass quasi-judicial proceedings conducted by administrative bodies.  *Mazanderan v. McGranery*, 490 A.2d 180, 181-182 (D.C. 1984).  It is well-settled that defamatory statements published incidental to judicial proceedings are absolutely privileged, provided the statements are relevant to the

15

proceeding. The Court of Appeals reasoned an appellee/defendant's letter to the Public Vehicles Division served as a formal complaint against an appellant, as a result of which the Hacker's License Appeal Board conducted a hearing. *Id*. at 181. As a result, the Court of Appeals held the letter to the Hacker's Board comes squarely within the ambit of absolute privilege.

First, Defendant Jarashow was a witness to Plaintiff's administrative law judicial misconduct that initiated the internal OAH investigation and OAH charges that were the subject of the COST quasi-judicial proceeding on July 13, 2016. For this reason alone, Plaintiffs' February 18, 2016 email in relation to Plaintiff's ethical violations and judicial candidacy is privileged. Second and similar to *Mazanderan*, Defendant Jarashow's formal complaint to OAH, as a result of which the COST conducted a hearing, is within the ambit of absolute privilege. Likewise and by extension, Defendant Jarashow's subsequent February 18, 2016 email to OAH was published in the course of the quasi-judicial proceeding against Plaintiff and related to the formal complaint, investigation, and formal proceedings initiated by the COST regarding Plaintiff's ethical violations and Plaintiff's judicial candidacy.

### ii. Defendant Jarashow's statement did not cause special harm.

Plaintiff fails to allege facts sufficient to satisfy the fourth element of her claim, i.e., the February 18, 2016 publication caused the Plaintiff special harm. Plaintiff claims this email was sent to cause her termination at OAH. *Barber I* ¶ 72. Regardless of the alleged intent behind the February 18, 2016 email, the COST initiated formal proceedings after conducting its own investigation. *Id*. at 26. As provided in *Barber I*, "If, after investigation, the Commission has reason to believe that there is cause to discipline or remove an Administrative Law Judge, it may commence a formal proceeding against the Administrative Law Judge." *Id*. (citing Section 3730.4 of Chapter 6-B of the D.C. Municipal Regulations). As a result, Plaintiff's threadbare

16

recital that Defendant Jarashow's February 18, 2016 email caused her harm, supported by

Plaintiff's legal conclusions, are insufficient to state a claim for defamation.

### iii. Defendant Jarashow's statement was not defamatory.

The first of the four elements for a defamation claim requires that Defendant Jarashow

"made a false and defamatory statement concerning [P]laintiff." *Beeton*, 779 A.2d at 923. The

Plaintiff alleges that the false and defamatory statement is that she was a Democrat running as a

candidate for judge. *Barber I* ¶ 72. As a matter of law, this statement cannot be considered to be

defamatory as interpreted by District of Columbia law.

In the District of Columbia, "a statement is defamatory if it tends to injure [the] plaintiff

in his trade, profession or community standing, or lower him in the estimation of the

community." *Guilford Transp. Industries, Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000). "But

not every uncomplimentary publication is libelous." *Id*. "[A]n allegedly defamatory remark

must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious,

infamous or ridiculous.'" *Id*. (internal citation omitted).

> Defamation is ... that which tends to injure "reputation" in the
> popular sense; to diminish the esteem, respect, goodwill or
> confidence in which the plaintiff is held, or to excite adverse,
> derogatory or unpleasant feelings or opinions against him. *It
> necessarily, however, involves the idea of disgrace*; and while a
> statement that a person is a Republican may very possibly arouse
> adverse feelings against him in the minds of many Democrats, and
> even diminish him in their esteem, it cannot be found in itself to be
> defamatory, since no reasonable person could consider that it
> reflects upon his character.

*Id*. (quoting W. Page Keeton, Prosser and Keeton on Torts § 111, at 773–74 (5 th ed.1984)

(emphasis in original) (footnotes omitted in original)).

17

"The trial court's threshold task in an action for defamation is to determine whether the challenged statement is capable of bearing a particular meaning and whether that meaning is defamatory." *Id*. (internal quotations and citation omitted). "It is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule, as a matter of law, that it was not libelous." *Id*.

> The court should not, however, indulge far-fetched interpretations of the challenged publication. The statements at issue should not be "interpreted by extremes, but should be construed as the average or common mind would naturally understand [them]." If the court determines that a statement is indeed capable of bearing a defamatory meaning, then whether that statement is in fact "defamatory and false [is a question] of fact to be resolved by the jury."

*Id*. at 594-95 (citation omitted). "Courts must therefore be careful not to imply defamatory meaning from statements that are not capable of such meaning." *LeFande v. District of Columbia*, 864 F. Supp. 2d 44, 52 (D.D.C. 2012).

In the instant case, Plaintiff asserts the defamatory statement in the email was that Plaintiff was "running as the Democrat candidate for judge." *Barber I* ¶ 72. Plaintiff alleges this statement to be defamatory because she was a "judicial" candidate, not a Democrat or Republican candidate, and the news article attached to the email did not state that she was a Democrat candidate for judge. *Id*. However, the challenged statement is not in itself defamatory because no reasonable person would consider that Plaintiff's affiliation as a Democrat (or Republican) reflects upon Plaintiff's character. "Words which do not disparage a plaintiff's character are not actionable, even if special damages flow from their publication." *Wilner,* 760 A.2d at 594.

Characterizing the Plaintiff's political affiliation as a Democrat cannot reasonably be considered to convey a defamatory meaning to the recipient of the email, Defendant Nolan, because the language does not make Plaintiff appear odious, infamous or ridiculous.  Last, the news article was attached for Defendant Nolan to read himself for context and for him to determine the meaning of the article independent of Defendant Jarashow's interpretation.  No reasonable person could conclude the challenged statement to be reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense.  As such, this Court should dismiss the defamation claim with prejudice.

Last, Plaintiff asserts that Defendant Jarashow made public confidential personnel information of Plaintiff and used that information allegedly to produce and distribute flyers (which are not attached to the Amended Complaint) on election day that stated she was determined not qualified by a Judicial Nomination Commission and was terminated for an ethics violation.  *Barber I* ¶¶ 35, 72.  Defendant Jarashow disputes this claim that he produced or distributed anything on election day; however, as a matter of law the statements are not defamatory.  Notably, Plaintiff does not contend that these statements are false.  "Substantial truth will succeed as a defense if a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn."  *Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013) (internal quotations omitted).  "In determining whether factual statements in an allegedly defamatory communication are substantially true, we discount minor inaccuracies so long as the substance, the gist, the sting, of the libelous charge be justified."  *Id*. (internal quotations omitted).

## VI.     CONCLUSION

This Court should dismiss all three of Plaintiff's claims against Defendant Jarashow. Plaintiff fails to allege a viable claim under 42 U.S.C. § 1985(3).  In addition, Plaintiff fails to sufficiently plead elements required to state viable claims for interference with employment contract and defamation under District of Columbia law.  Accordingly, for the reasons set forth fully below, Defendant Jarashow respectfully requests this Court dismiss all three claims against Defendant Jarashow with prejudice.

WHEREFORE, for the reasons set forth in Defendant Jarashow's Motion to Dismiss and his Memorandum of Points and Authorities, Defendant Jarashow respectfully requests this Court grant this Motion and dismiss all three claims against him with prejudice.

Respectfully submitted,

Eccleston & Wolf, P.C.

_____/s/_____
Justin M. Flint (#491782)
Abby A. Franke (#1030041)
1629 K Street, N.W., Suite 260
Washington, DC 20006
(202) 857-1696 (Tel)
flint@ewdc.com
franke@ewdc.com
*Counsel for Defendant Ronald Jarashow*