# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CLAUDIA A. BARBER** ) | |
| ) | |
| *Plaintiff,* ) | **Civil Action No.: 17-cv-620-KBJ** |
| ) | |
| **v.** ) | |
| ) | |
| **DISTRICT OF COLUMBIA** ) | |
| **GOVERNMENT,** *et al.* ) | |
| ) | |
| *Defendants.* ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT JARASHOW'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

## **Table of Content**

Introduction ................................................................................................................. 1

Facts ........................................................................................................................... 2

Argument .................................................................................................................... 8

  I.   Standard of Review ............................................................................................ 8

  II.  Plaintiff Barber has stated a claim for defamation (*Barber I* Count VII). .......................... 9

    a.   All of Plaintiff Barber's defamation claims are timely. ................................................. 9

    b.   ALJ Barber has alleged sufficient facts to support the elements of defamation. ........... 11

  III.  Plaintiff Barber has stated a claim for interference with contractual relations (*Barber I* Count VI) ............................................................................................................... 17

    a.   Defendant Jarashow has not met his burden of establishing privilege. ........................ 18

    b.   Plaintiff Barber lost employment opportunities due to Defendant Jarashow's actions.  21

  IV.  Defendant Jarashow improperly constrains the scope of Plaintiff Barber's 42 U.S.C. § 1985(3) claim. .......................................................................................................... 22

  V.  This Court would have supplemental jurisdiction over Plaintiff's claims even if Count IV was dismissed. ......................................................................................................... 25

Conclusion ............................................................................................................... 28

**Table of Authorities**

**Cases**

*Afro-Am. Publ'g Co. v. Jaffe*, 366 F.2d 649 (D.C. Cir. 1966) ...................................................... 12

*Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284 (D.C. 1977) ............. 18

*Armenian Assembly of America, Inc. v. Cafesjian*, 597 F.Supp.2d 128 (D.D.C. 2009) ............... 12

*Arneja v. Gildar*, 541 A.2d 621 (D.C. 1988) ............................................................................... 14

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)................................................................................... 8, 9

*Bell At. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................ 8

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)................................................................ 26

*Casco Marina Dev., L.L.C. v. D.C. Redevelopment and Agency*, 834 A.2d 77 (D.C. 2003) ....... 17

*Caudle v. Thomason*, 942 F. Supp. 635 (D.D.C. 1996) ................................................................ 10

*\*Crowley v. N. American Telecommunications*, 691 A.2d 1169 (D.C. 1997)............................... 12

*Doe v. U.S. Dept. of Justice*, 753 F.2d 1092 (C.A.D.C. 1985) ..................................................... 18

*East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153 (D.C. 1998) ............................. 10

*Farris v. Compton*, 652 A.2d 49 (D.C. 1994) ................................................................................ 9

*Griffin v. Breckenridge*, 403 U.S. 88 (1971)................................................................................ 22

*Guilford Transp. Industries, Inc. v. Wilner*, 760 A.2d 580 (D.C. 2000) ..................................... 12

*Havilah Real Prop. Servs. v. VLK, LLC*, 108 A.3d 334 (D.C. 2015) .............................. 18, 19, 20

*Heck v. Adamson*, 941 A.2d 1028 (D.C. 2008)............................................................................ 20

*Hill v. Gray*, 28 F. Supp. 3d 47 (D.D.C. 2014)............................................................................. 9

*\*Hobson v. Wilson*, 737 F.2d 1 (D.C. Cir. 1984)..................................................................... 22, 23

*Howard Univ. v. Best*, 484 A.2d 958 (D.C. 1984)....................................................................... 12

*Levy v. American Mutual Ins. Co.*, 196 A.2d 475 (D.C. 1964) .................................................... 13

*Lewis v. Green*, 629 F. Supp. 546 (D.D.C. 1986)........................................................................ 23

*Maupin v. Haylock*, 931 A.2d 1039 (D.C. 2007).......................................................................... 10

*Mazanderan v. McGranery*, 490 A.2d 180 (D.C. 1984).............................................................. 15

*Oparaugo v. Watts*, 884 A.2d 63 (D.C. 2005) ....................................................................... 14, 15

*Paul v. Howard Univ.*, 754 A.2d 297 (D.C. 2000) ...................................................................... 17

*Pope v. Bond*, 641 F. Supp. 489 (D.D.C. 1986).......................................................................... 22

*Prins v. International Tel. and Tel. Corp.*, 757 F. Supp. 87 (D.D.C. 1991)................................. 12

*Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59 (D.D.C. 2002) ............................................. 26

*Teltschik v. Williams & Jensen, PLLC*, 748 F.3d 1285 (D.C. Cir. 2014) ..................................... 14

*Weyrich v. The New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001)) ........................................... 13

*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) ............................................ 13

**Statutes**

28 U.S.C. § 1367(c)(3)................................................................................................................... 26

42 U.S.C. § 1985(3) ........................................................................................................... 22, 24, 25

D.C. Code § 12-301 (1989)............................................................................................................. 9

**Other Authorities**

Cong. Globe, 42d Cong., 1st Sess., 567 (1871) ............................................................... 23

Model Code of Judicial Conduct (Am. Bar Ass'n 2011) ................................................ 2

Restatement (Second) of Torts § 767 (1977) ...................................................... 18

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 8, 12

Fed. R. Civ. P. 8(e)(1) ...................................................................................................... 8

Comes now Plaintiff Claudia Barber, by and through counsel, and files this Memorandum of Points and Authorities in Opposition to Defendant Jarashow's Motion to Dismiss Plaintiff's Amended Complaint, and in support thereof states as follows.[1]

## Introduction

Plaintiff Claudia Barber, a former Administrative Law Judge ("ALJ") at the District of Columbia Office of Administrative Hearings ("OAH"), brought two cases against the District of Columbia, which have been consolidated into the case at bar. Docket No. 22. Only the lawsuit filed on April 6, 2017 names Ronald Jarashow ("Jarashow") as a defendant. *Barber v. District of Columbia, et al.*, No. 1:17-cv-620 (KBJ) [hereinafter *Barber I*].[2] In *Barber I*, Plaintiff Barber brings claims of interference with employment contract (Count VI) and defamation (Count VII) against Defendant Ronald Jarashow ("Jarashow") and a claim for violation of 42 U.S.C. § 1985(3) (Count IV) against Defendants Jarashow, the District of Columbia Government ("the District"), Eugene Adams ("Adams"), Vanessa Natale ("Natale"), and Shawn Nolen ("Nolen") (collectively "Defendants"), alleging that Defendants deprived Plaintiff of equal protection of the laws and/or privileges under the laws by conspiring to violate her due process rights under the Fifth Amendment and violating the Equal Protection Clause of the Fourteenth Amendment.

Defendant Jarashow seeks dismissal of all claims against him, which consist of Counts IV, VI, and VII of the *Barber I* Amended Complaint. Defendant Jarashow is not entitled to dismissal because he fails to address numerous allegations, misapplies and mischaracterizes the relevant legal principles, and attempts to settle disputed facts in a motion to dismiss. This Court should deny Defendant Jarashow's motion in its entirety.

---

[1] "Defendant Jarashow's Memorandum of Points and Authorities in Support of Motion to Dismiss" is cited herein as "Def. Jarashow's Mem."

[2] In a separate suit against Defendants the District of Columbia and Eugene Adams, Plaintiff Barber alleged race and color discrimination and retaliation in violation of the District of Columbia Human Rights Act and Title VII of the Civil Rights Act of 1964. *Barber v. District of Columbia, et al.*, No. 1:17-cv-1860 [hereinafter *Barber II*].

**Facts**

Plaintiff Claudia A. Barber, a resident of Anne Arundel County, Maryland, was employed as an ALJ at the OAH from 2005 through August 2016. *Barber I* Amend. Compl. ¶ 8. Throughout her tenure, she met and/or exceeded performance expectations for her position. *Id.*

In 2015, ALJ Barber considered becoming a candidate for a judge position at the Circuit Court for Anne Arundel County. *Barber I* Amend. Compl. ¶ 9. On December 8, 2015, ALJ Barber sent an email to Yvonne Williams, the Chair of the Commission on Selection and Tenure ("COST") that governs OAH ALJs, seeking an advisory opinion from the COST as to whether or not an ALJ at OAH can run in a judicial election for a judicial vacancy without resigning as an ALJ. *Id.* In the email, she specifically noted that Canon 4 of the Annotated Model Code of Conduct provides that judges need not resign when seeking another judicial position, which appeared to contrast with OAH's Ethics Code which states that an ALJ should resign when an ALJ becomes a candidate for a judicial vacancy that involves a partisan primary. *Id.*; MODEL CODE OF JUDICIAL CONDUCT Canon 4 (AM. BAR ASS'N 2011). Judge Williams responded on December 15, 2015, advising ALJ Barber that the COST was not the appropriate forum to consider the issue and directed ALJ Barber to the District of Columbia Board of Ethics and Government Accountability ("BEGA"). *Id.*

Following the suggestion of Judge Williams, ALJ Barber contacted Brian Flowers, General Counsel at BEGA, and presented the same question. *Barber I* Amend. Compl. ¶ 10. On December 18, 2015, Mr. Flowers opined that the District of Columbia Ethics Act would not prohibit an ALJ from running for judicial office in an election that is not regulated by the District of Columbia Board of Elections. *Id.* He further communicated that he could not offer an opinion on whether running for office would comport with OAH rules or the D.C. Rules of Professional

Conduct because those authorities were outside the jurisdiction of BEGA. *Id.*

ALJ Barber sent a follow-up email to Judge Williams on December 31, 2015, advising that Mr. Flowers stated BEGA would not prohibit ALJ Barber from seeking a candidacy in Maryland and providing proof of his opinion. *Barber I* Amend. Compl. ¶ 11. ALJ Barber stated that she "wanted reassurance from the Commission on Selection and Tenure as the disciplinary and enforcement authority for ALJs that [she] would not be forced to resign as an ALJ under Section V.U of [OAH's] ethics code provided [she] follow[s] the parameters Mr. Flowers set forth [in his email response]." *Id.*

On January 14, 2016, ALJ Barber sent Judge Williams an email and inquired if there was a response to her December 31, 2015 email because the filing deadline for judicial candidates to submit a certificate of candidacy was less than three weeks away, and she advised that she had conducted further research and learned that the American Bar Association considered Maryland's judicial elections to be nonpartisan, even though the primaries are considered partisan because Maryland has closed primary elections. *Barber I* Amend. Compl. ¶ 12. ALJ Barber did not receive a response from Judge Williams. *Id.*

On January 20, 2016, ALJ Barber filed with the State of Maryland a Certificate of Candidacy for a Judge of the Circuit Court for the Fifth Judicial Circuit, which is in Anne Arundel County. *Barber I* Amend. Compl. ¶ 13. In the Certificate, ALJ Barber listed her Party Affiliation as "Judicial." *Id.*

A mere two weeks later, on February 4, 2016, OAH Chief Administrative Law Judge Eugene Adams received a letter from a Maryland attorney, Defendant Ronald H. Jarashow, a former Anne Arundel County Circuit Court judge, who was supporting other candidates for the vacant circuit court judge positions. *Barber I* Amend. Compl. ¶ 15. Defendant Jarashow

3

complained that ALJ Barber had filed as a candidate for a Judge of the Circuit Court for Anne

Arundel County, Maryland and stated that she should be required to resign from her ALJ

position or be terminated. *Id.* Defendant Jarashow argued that under the District of Columbia

Code of Ethics for ALJs, Chapter V, Sections U and V, an ALJ is required to resign upon

becoming a candidate in a primary election or engaging in political activity. *Id.*

> Section V (U) of the OAH Code of Ethics provides that:

> An Administrative Law Judge shall resign from judicial office when the
> Administrative Law Judge becomes a candidate either in a party primary or in a
> partisan general election except that the Administrative Law Judge may continue
> to hold office, while being a candidate for election to or serving as a delegate in a
> jurisdiction's constitutional convention, if otherwise permitted by law to do so.[3]

*Barber I* Amend. Compl. ¶ 16.

Defendant Jarashow protested that ALJ Barber should not be allowed to remain in office

if she remained a candidate for election, and he urged immediate action by Chief Administrative

Law Judge Adams. *Barber I* Amend. Compl. ¶ 17.

The Jarashow letter was provided to ALJ Barber on February 5, 2016, and ALJ Barber

responded by providing the information she received from Judge Williams and Mr. Flowers.

*Barber I* Amend. Compl. ¶ 18. ALJ Barber did not receive an immediate response from Chief

Administrative Law Judge Adams. *Id.* Defendant Jarashow continued to make false accusations

about Plaintiff Barber. *Id.* Unbeknownst to ALJ Barber, on February 18, 2016, Defendant

Jarashow sent an email to Defendant Nolen with the subject line: "Claudia Barber candidacy for

judge," and in this email, he falsely claimed that an attached article stated that Plaintiff Barber

was going to participate in a candidate forum and she was "running as the Democrat candidate

---

[3] This provision must be read in conjunction with Section VI(A) of the OAH Code of Ethics, which states: "The commentaries provided in the 1995 ABA Model Code of Judicial Conduct for State Administrative Law Judges and the 1990 ABA Model Code of Judicial Conduct, as applicable, may be considered in interpreting this Code." In addition, page 554 of the Second Edition of the Annotated Model Code of Judicial Conduct states: "Judges need not resign when seeking another judicial position."

for judge." *Id.* The attached article did not state that Plaintiff Barber was "running as the Democrat candidate for judge." *Id.* Defendant Jarashow's February 18, 2016 email was discovered by Plaintiff Barber in September 2016 only after she submitted a FOIA request to the District of Columbia and OAH was ordered to produce the email. *Id.* As a former Circuit Court judge, Defendant Jarashow knew that candidates for Circuit Court judge positions ran as "Judicial" candidates, and not as a Democrat or Republican. *Id.*

> **From:** Ron Jarashow <rjarashow@gjblawfirm.com>
> **Sent:** Thursday, February 18, 2016 4:06 PM
> **To:** Nolen, Shawn (OAH)
> **Subject:** Claudia Barber candidacy for judge
>
> Shawn,
>
> You indicated that if I came across additional information relevant to the candidacy of Claudia Barber that I could forward it to you.
>
> Today, I found out that in yesterday's local county newspaper, an article appeared concerning a candidate's forum that is scheduled for the judges in the election. *The article says that Plaintiff Barber is going to participate in the forum and is running as the Democrat candidate for judge.* Here is the link to the article.
>
> http://www.capitalgazette.com/news/elections/ph-ac-cn-republican-judge-forum-0218-20160217-story.html
>
> In addition, I followed up on the question of whether a candidate can withdraw from an election even though the deadline for removing a candidate's name from the ballot has passed. As I understand it, pursuant to Election Law 5-601 (1)(ii), the name of the candidate may be removed from the ballot if disqualified and that fact is timely known to the Board. I sent a letter to Election Board on February 4 concerning her disqualification so they should have timely notice for removing her name if, in fact, you decide that she is disqualified from running in a partisan election. If she is "disqualified," then her name can be removed immediately.
>
> Ronald H. Jarashow
> Gormley Jarashow Bowman, LLC
> Attorneys at Law

*Id.* (emphasis added).

On February 12, 2016, ALJ Barber was given a letter with the subject: Notice of Violation—the Code of Ethics for OAH Administrative Law Judges, issued by Chief Administrative Law Judge Adams. *Barber I* Amend. Compl. ¶ 19. In the Notice of Violation, Chief Administrative Law Judge Adams acknowledged that he received a formal complaint from Defendant Jarashow and concluded that ALJ Barber violated Section V (U) of the Code of Ethics for OAH Administrative Law Judges, and that ALJ Barber's pursuit of the judgeship in Maryland violated several other rules governing the conduct of ALJs at OAH, including Sections I (A), II (D) and V (V). *Id.*

During the February 12, 2016 meeting, ALJ Barber was told by General Counsel Vanessa Natale that she could immediately resign from her position. *Barber I* Amend. Compl. ¶ 20. ALJ Barber stated that she had not done anything wrong and would not resign. *Id.* She was again encouraged to think about resigning, and ALJ Barber emphatically stated she would not resign. *Id.* ALJ Barber inquired if she could work the remainder of the day and conclude matters, and she was told that she would be permitted to work for the rest of the day. *Id.* Five minutes later, Ms. Natale returned and abruptly informed her that she must leave the office immediately. *Id.* ALJ Barber was escorted out of the OAH offices by Attorney Advisor Louis Neal in front of her colleagues and subordinates. *Id.*

On February 16, 2016, Chief Administrative Law Judge Adams sent a letter to the COST Commissioners advising that he placed ALJ Barber on administrative leave with pay after demanding her resignation and requesting COST terminate ALJ Barber. *Barber I* Amend. Compl. ¶ 21.

In March and April 2016, ALJ Barber's confidential personnel information was shared with Defendant Jarashow before formal proceedings were instituted against ALJ Barber. *Barber*

*I* Amend. Compl. ¶ 23 Defendant Jarashow then published this information to the press. *Id.*

On April 19, 2016, the COST submitted to ALJ Barber's counsel notice of initiation of formal proceeding against ALJ Barber. *Barber I* Amend. Compl. ¶ 26. On July 13, 2016, the COST convened a hearing. Defendant Jarashow was present at the hearing. *Barber I* Amend. Compl. ¶ 32. During the course of the hearing, COST Commissioner Onek questioned counsel for the OAH, Defendant Nolen, extensively on whether there was a purpose or rational basis for Section V (U) of the OAH Code of Ethics. *Id.* OAH's counsel was unable to provide a rational basis for the policy. *Id.* The COST only received testimony from Plaintiff Barber, and not her expert witnesses or other relevant witnesses, including former Chief Administrative Law Judge Butler, who promulgated the OAH Ethics Code and concluded there was no violation. *Id.*

On August 2, 2016, the COST issued an Order finding that Plaintiff Barber violated Section V (U) of the OAH Code of Ethics, and immediately removed her from her position as an administrative law judge. *Barber I* Amend. Compl. ¶ 33. Plaintiff Barber was not provided any information on her appeal rights. *Id.*

Following ALJ Barber's termination and thirty days before the general election, Defendants Adams and Natale strategically filed allegations of ethical violations of dishonesty against Plaintiff with the District of Columbia Disciplinary Counsel and the Maryland Attorney Grievance Commission on September 27, 2016. *Barber I* Amend. Compl. ¶ 34. They provided incomplete documents and misstated and misrepresented facts with the intent that the complaints would result in disciplinary action being taken against Plaintiff and would damage her personal and professional reputation. *Id.*

Defendant Jarashow continued to communicate with OAH after the hearing to inquire about the decision of the COST and OAH and Plaintiff's employment status. *Barber I* Amend.

7

Compl. ¶ 35. OAH subsequently provided the COST Order to Defendant Jarashow. *Id.*

On November 8, 2016, the date of the general election, Defendant Jarashow distributed flyers to voters with a photograph of Plaintiff Barber, which included a misleading statement that she was determined not qualified by a Judicial Nominating Commission, which does not make findings regarding a candidate's qualification, and terminated for an ethics violation without disclosing that the alleged ethics violation was on appeal and based on the exercise of her constitutional right to run for office in a non-partisan election to become a judge or the fact that Defendant Jarashow initiated the proceedings that led to ALJ Barber's termination. *Id.*

**Argument**

## I.  Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(e)(1) provides that "[e]ach averment of a pleading shall be simple concise, and direct." To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must be sufficient "to give a defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell At. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has factual plausibility. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 129 S.Ct. at 1949. "While logical conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well pleaded factual allegations, a court should assume the veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

## II.   Plaintiff Barber has stated a claim for defamation (*Barber I* Count VII).

### a.   *All of Plaintiff Barber's defamation claims are timely.*

Defendant Jarashow argues that Plaintiff Barber's defamation claim is barred by the one-year statute of limitations for defamation claims. Def. Jarashow's Mem. at 14. However, Defendant Jarashow ignores Plaintiff November 8, 2016 defamation claim, which is undeniably timely. *Barber I* Amend. Compl. ¶ 35. In addition, Defendant Jarashow is not entitled to dismissal of Plaintiff Barber's defamation claim due to the "discovery rule," as Plaintiff Barber did not discover the defamatory email sent on February 18, 2016 until September 2016. *Barber I* Amend. Compl. ¶ 18. Therefore, Plaintiff Barber's earliest defamation claim did not begin to accrue until September 2016, and she filed suit on April 6, 2017, less than one year from the dates her claims began to accrue.

"A defamation action is considered untimely and barred if it is brought after one year from the time the action accrued." *Hill v. Gray*, 28 F. Supp. 3d 47, 53 (D.D.C. 2014) (citing *Farris v. Compton*, 652 A.2d 49, 53-54 (D.C. 1994) (citing D.C. Code § 12-301 (1989))). "The moment of accrual typically begins when the injury occurs." *Id.* (citing *Farris*, 652 A.2d at 54). However, courts can extend the limitations period for actions in tort by applying the "discovery rule," which tolls the running of the statute until such time as the plaintiff "kn[ew] or by the

exercise of reasonable diligence should [have] know[n] (1) of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 157 (D.C. 1998). In defamation claims, the discovery rule can extend the statute of limitations where the defamatory communications are inherently undiscoverable, such as statements "'published secretly and/or the defendant took steps to prevent the plaintiff from uncovering the statement….'" *Maupin v. Haylock*, 931 A.2d 1039, 1042 (D.C. 2007). "[W]ith defamation claims, when the injury might not be readily apparent when it occurs, the moment of accrual is tolled and begins to run when the plaintiff 'has discovered or reasonably should have discovered all of the essential elements of her possible cause of action.'" *Hill*, 28 F. Supp. 3d at 53 (quoting *Caudle v. Thomason*, 942 F. Supp. 635, 641 (D.D.C. 1996) (quoting *Farris*, 652 A.2d at 54)).

Here, the defamatory emails are the very type of inherently undiscoverable communications contemplated by *Maupin*. Plaintiff Barber was not copied on the email; the email was confidential communication from Defendant Jarashow to Defendant Nolen, an attorney advisor with OAH. *See Barber I* Amend. Compl. ¶ 18. Further, Plaintiff Barber did not discover the email until September 18, 2016 in response to her FOIA request. *Id.* Therefore, Plaintiff Barber's defamation claim based on Defendant Jarashow's February 18, 2016 is timely because Plaintiff Barber did not discover Defendant Jarashow's defamatory statements until September 2016, after she received documents in response to a FOIA request. *Barber I* Amend. Compl. ¶ 72. Plaintiff Barber filed suit on April 6, 2017, well within one year from the date of discovery.

Defendant Jarashow's argument "[n]o good reason exists why Plaintiff failed to submit a FOIA request after February 5, 2016…" is preposterous. *See* Def. Jarashow's Mem. at 14.

Plaintiff Barber did not know that Defendant Jarashow and OAH were engaged in ongoing communications. *See Barber I* Amend. Compl. ¶ 18. Rather, she only knew that Defendant Jarashow had written one letter to the OAH regarding her candidacy for the Maryland Circuit Court. *Barber I* Amend. Compl. ¶ 15. The February 4, 2016 email did not contain a false statement of fact. Further, the February 4, 2016 letter was written *before* Defendant Jarashow wrote the February 18, 2016 defamatory email, and Plaintiff Barber could not reasonably be expected to divine that Defendant Jarashow would make a future defamatory statement about her to Defendant Nolen after he had already submitted a complaint to the OAH.

Plaintiff Barber had no reason to suspect that Defendant Jarashow was engaging in ongoing communications with OAH until July 13, 2016 when she was made aware that Defendant Jarashow was present at the COST hearing. *Barber I* Amend. Compl. ¶ 32. Finally, there is absolutely no indication in the Amended Complaint that Plaintiff Barber delayed filing her FOIA request, and the Amended Complaint suggests that the OAH was responsible for any delays in her discovery of the email because the OAH had to be ordered to produce the email. *Barber I* Amend. Compl. ¶ 72.

Defendant Jarashow has not cited any authority holding or even suggesting that knowledge of a prior non-defamatory complaint renders inherently undiscoverable defamatory communications discoverable. More importantly, Defendant Jarashow has not identified a single fact in the Amended Complaint, which suggests Plaintiff could have, through due diligence, discovered the confidential email communication between Defendant Jarashow and Defendant Nolen at an earlier date than September 2016. The discovery rule applies in this case to render Plaintiff's defamation claim based on the February 18, 2016 email timely.

   *b.  ALJ Barber has alleged sufficient facts to support the elements of defamation.*

11

For a defamation claim, a plaintiff must allege facts showing

(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. A defamatory statement is one which tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community.

*Crowley V. N. American Telecommunications*, 691 A.2d 1169, 1170 n.2 (D.C. 1997) (internal citations omitted) (citing *Prins v. International Tel. and Tel. Corp.*, 757 F. Supp. 87 (D.D.C. 1991) and *Howard Univ. v. Best*, 484 A.2d 958, 988 (D.C. 1984)). Defendant Jarashow argues that his statements are not defamatory, are privileged, and did not harm ALJ Barber. *See* Def. Jarashow's Mem. at 15-19. These arguments extend beyond the legal precedent and ignore the alleged facts.

> i)   *Defendant Jarashow's statements are defamatory.*

Defendant Jarashow argues that his February 18, 2016 email did not contain any defamatory statements as a matter of law because identifying ALJ Barber as a Democrat does not disparage her character. *Id.* at 17-18. Defendant Jarashow's argument ignores his own legal citation. *See id.* at 17 (citing *Guilford Transp. Industries, Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000) ("a statement is defamatory if it tends to injure [the] plaintiff in his trade, profession or community standing, or lower him in the estimation of the community.")). "Context is key [in] determining whether, as a matter of law, a statement is capable of bearing a defamatory meaning." *Armenian Assembly of America, Inc. v. Cafesjian*, 597 F.Supp.2d 128, 141 (D.D.C. 2009) (internal citations omitted). Even when the publication contains true statements, the false statement may be "critical in the total impact of the article." *Afro-Am. Publ'g Co. v. Jaffe*, 366 F.2d 649, 655 (D.C. Cir. 1966).

12

"On a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may only consider whether a statement cannot be reasonably capable of a defamatory meaning." *Id.* (citing *Weyrich v. The New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001)). Therefore, '[i]t is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous." *Id.* (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) (citing *Levy v. American Mutual Ins. Co.*, 196 A.2d 475, 476 (D.C. 1964))). "Whether a reader actually understood a statement as being defamatory is a question for the jury." *Id*. There is no question that when taken in context, Defendant Jarashow's statements in the February 18, 2016 email were the type of statements that would tend to injure Plaintiff Barber in her trade, profession or community standing or lower her in the estimation of the community.

Here, Defendant Jarashow's statements, when read in the context of Defendant Jarashow's February 4, 2016 letter, are plainly defamatory because they falsely suggest that Plaintiff Barber was unethical and committed an ethical violation of Section V (U) of the OAH Code of Ethics by "running as the Democrat candidate for judge" to her employer. *Barber I* Amend. Compl. ¶ 18. Committing an ethical violation is absolutely the type of statement that would tend to injure Plaintiff Barber in her trade, profession, or community standing or lower her standing in the community. In fact, Defendant Jarashow essentially admitted that Defendant Jarashow's statement initiated the OAH investigation and the COST proceeding, *see* Def. Jarashow's Mem. at 16, which damaged ALJ Barber's professional reputation as a judge and caused her to lose her job as an ALJ at OAH. *See Barber I* Amend. Compl. ¶¶ 21, 35.

Defendant Jarashow also argues that the election flyer on November 8, 2016, the day of

13

the election, is substantially true. Def. Jarashow's Mem. at 19. Again, Defendant Jarashow construes the publication out of context. The election day flyer contained a photograph of Plaintiff Barber along with a misleading statement that she was determined not qualified by a Judicial Nomination Commission and terminated for an ethics violation without disclosing that the alleged ethics violation was on appeal and based on the exercise of her constitutional right to run for office in a non-partisan election to become a judge or the fact that Defendant Jarashow initiated the proceedings that led to ALJ Barber's termination. *Barber I* Amend. Compl. ¶ 35. Voters are not likely to research Defendant Jarashow's publication the day of the election to understand the context of Plaintiff Barber's situation. The factual allegations regarding the context of the election day flyer show that the statements are capable of defamatory meaning.

*ii)  Defendant Jarashow has not met his burden of asserting privilege.*

Defendant Jarashow also argues that his statements are privileged as statements made incidental to a quasi-judicial proceeding. Def. Jarashow's Mem. at 15-16. There is no merit to this argument, and Defendant Jarashow's depiction of the law is highly misleading.

"Under the judicial privilege recognized by D.C. law, an attorney 'is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.'" *Teltschik v. Williams & Jensen, PLLC*, 748 F.3d 1285, 1287 (D.C. Cir. 2014) (citations omitted). "The privilege also applies in certain quasi-judicial proceedings." *Id.* (citing *Arneja v. Gildar*, 541 A.2d 621, 623 (D.C.1988)). However, judicial privilege is limited to statements made by "judges, court officers, attorneys, parties, grand and petit jurors performing those functions, witnesses and participants in judicial proceedings." *Oparaugo v. Watts*, 884

14

A.2d 63, 79 (D.C. 2005). While the judicial privilege "covers statements by judges, court officers, jurors, and witnesses," it only covers such statements "so long as the *speaker is involved in the proceeding* and the allegedly defamatory statements are made in the course of or preliminary to the proceeding and bear some relation to the proceeding." *Id.* (emphasis added) (citing *Oparaugo*, 884 A.2d at 79-81). In fact, the D.C. Court of Appeals in *Oparaugo* expressly declined to expand judicial privilege to "a person who was not involved in, or connected with the judicial proceedings in one of the type of capacities indicated," including, parties, witnesses, counsel, jurors, and judges. 884 A.2d at 80.

Defendant Jarashow's unsupported and conclusory claim that he was a "witness to Plaintiff's . . . judicial misconduct" is beyond belief. Def. Jarashow's Mem. at 16. A comparison of Defendant Jarashow's role to that of a privileged witness cited by Defendant Jarashow in his own brief shows the ridiculousness of his assertion. Def. Jarashow's Mem. at 16. In *Mazanderan v. McGranery*, a customer of a taxi driver wrote a complaint letter to the Public Vehicles Division of the D.C. Department of Mass Transportation about the allegedly abusive behavior of the taxi driver, during a dispute between that same customer and taxi driver. 490 A.2d 180, 181 (D.C. 1984). The complaint formed the basis of charges against the taxi driver by the board responsible for denying, suspending or revoking licenses. *Id.*

Unlike in *Mazanderan*, Defendant Jarashow did not involuntarily witness misconduct and complained about the harm he suffered. *See Barber I* Amend. Compl. ¶¶ 13-15. Instead, he monitored the Maryland website of potential judicial candidates and sought to eliminate ALJ Barber as a competitor to further his own political agenda. *See id.* Defendant Jarashow stretches the definition of witness beyond recognition.

15

Defendant Jarashow cites no support for his attempt to vastly expand judicial privilege to the facts in this case. The COST's hearing regarding Plaintiff Barber's termination was not a judicial or even quasi-judicial proceeding. Defendant Jarashow was not an attorney or a party participating in any quasi-judicial proceeding against Plaintiff Barber. He was not participating as counsel on behalf of any party in the COST hearing; nor does the Amended Complaint suggest that Defendant Jarashow was anything other than an observer of the COST hearing. *Barber I* Amend. Compl. ¶ 32. There was no proceeding in the works at the time he made his first defamatory statement on February 18, 2016, and the COST hearing had concluded when he published a flyer for the purpose of defaming Plaintiff Barber to potential voters in November 2016. Neither of his statements had anything to do with the COST hearing.

> *iii) ALJ Barber has shown that she was harmed by Defendant Jarashow's statements.*

Defendant Jarashow asserts that his February 18, 2016 statement did not cause special harm because the COST conducted its own investigation into his allegations. Def. Jarashow Mem. at 16. This is meritless because Plaintiff Barber incurred special damages, including termination from her position as an ALJ at OAH based on false accusations that she had engaged in an ethical violation and was unable to obtain future opportunities in her chosen profession, as a result of Defendant Jarashow's defamatory statements. *See Barber I* Amend. Compl. ¶ 73. Indeed, Defendant Jarashow essentially admitted that his complaint initiated the OAH investigation and COST proceedings. *See* Def. Jarashow's Mem. at 16. If Defendant Jarashow had not made these defamatory statements asserting that Plaintiff Barber had engaged in ethical violations, she would never have been subjected to a proposed termination, a COST hearing, and removal from her ALJ position.

16

Finally, Defendant Jarashow had not asserted—and cannot assert—that Plaintiff Barber's claim that Defendant Jarashow defamed her when he distributed defamatory flyers on the day of election to prevent Plaintiff Barber from being elected to a judgeship position with Anne Arundel Circuit Court fails. *See* Def. Jarashow's Mem. at 15-19. Defendant Jarashow's publication of flyers with a photograph of Plaintiff Barber, which included a misleading statement that she was determined not qualified by a Judicial Nomination Commission and terminated for an ethics violation without disclosing that the alleged ethics violation was on appeal and based on the exercise of her constitutional right to run for office in a non-partisan election to become a judge, is clearly defamatory as it injured her both in her profession and in the eyes of her community. Further, there is also no question that she incurred special damages as a result of this statement as she was not elected for the judgeship and is now being denied future opportunities in her chosen profession due, in part, to these defamatory statements.

ALJ Barber has alleged sufficient facts for her defamations claims. This Court should ignore Defendant Jarashow's conclusory and legally nonviable arguments and deny Defendant Jarashow's attempt to dismiss Plaintiff Barber's defamation claim (*Barber I* Count VII).

## III.   Plaintiff Barber has stated a claim for interference with contractual relations (*Barber I* Count VI).

Defendant Jarashow argues that Plaintiff Barber does not have a viable interference claim because Defendant Jarashow's letter was privileged and Defendant Jarashow did not cause her to lose employment opportunities. Def. Jarashow's Mem. at 10-13. However, Defendant Jarashow mischaracterizes the law and ignores the bulk of the factual allegations in the amended complaint. Defendant Jarashow is not entitled to dismissal of Plaintiff Barber's tortious interference with employment contract claim.

The elements of a tortious inference with a contract claim include: "(1) the existence of a

contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach." *Casco Marina Dev., L.L.C. v. D.C. Redevelopment and Agency*, 834 A.2d 77, 83 (D.C. 2003) (citing *Paul v. Howard Univ.*, 754 A.2d 297, 309 (D.C. 2000)). Plaintiff Barber has pled sufficient facts for her tortious interference claim.

> *a.   Defendant Jarashow has not met his burden of establishing privilege.*

Defendant Jarashow argues that his initial February 4, 2016 complaint was privileged because he acted in good faith "in order to protect a present, existing economic interest." Def. Jarashow's Mem. at 12. The assert privilege is an affirmative defense. *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 288 (D.C. 1977). "[A]n affirmative defense…cannot succeed on a Rule 12(b)(6) motion unless it is unequivocally apparent from the face of the complaint that the statute precludes the action." *Doe v. U.S. Dept. of Justice*, 753 F.2d 1092, 1116 (C.A.D.C. 1985). Defendant Jarashow has not met this standard.

Defendant Jarashow argues he "had present, existing economic interest in the integrity of the judiciary and the judicial election" because of his status as a former judge and his support for other candidates. Def. Jarashow's Mem. at 12. However, it is entirely unclear how his status give him a legitimate and good faith economic interest unless he has a quid pro quo arrangement with his supported candidates. *See id.*

However, the February 4, 2016 letter does not form the sole basis of Plaintiff Barber's defamation claims. Notably, Defendant Jarashow does not attempt to defend his other interfering actions based on privilege, including his false February 18, 2016 email, the publication of Plaintiff Barber's confidential information in or around March 2016, or the misleading election day flyer. *Barber I* Amend. Compl. ¶ 65. Defendant Jarashow is not entitled to dismissal on these claims based on privilege.

18

Defendant can establish an affirmative defense to tortious interference by showing that his interference was proper. *Havilah Real Prop. Servs. v. VLK, LLC*, 108 A.3d 334, 346 (D.C. 2015) (citing RESTATEMENT (SECOND) OF TORTS § 767 cmt. b (1977)). This Court considers the following factors to determine the appropriateness of Defendant Jarashow's actions:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

RESTATEMENT (SECOND) OF TORTS § 767.

However, "the 'motive' behind the interference is *the key consideration* in determining whether recovery under the tort is available." *Havilah Real Prop. Servs.*, 108 A.3d at 346 (emphasis added). Defendant Jarashow's February 18, 2016 email clearly revealed his intent to cause his preferred candidates to be elected and to prevent Plaintiff Barber from participating in the election, not to safeguard the integrity of the judiciary. *Barber I* Amend. Compl. ¶ 18. He wanted OAH to "disqualify" Plaintiff Barber so "her name can be removed immediately" from the Maryland ballot. *Id.* Defendant Jarashow did not act in the interest of judicial integrity as he claimed. *See id.* He just wanted to force Plaintiff Barber from the election. *Id.*

The other factors also support a finding that Defendant Jarashow's interference was inappropriate. He was the catalyst that initiated Plaintiff Barber's investigation by the OAH and he gave the OAH false information on February 18, 2016 in an attempt to remove her. *Id.* In or around March 2016, Defendant Jarashow published confidential information from Plaintiff Barber's OAH file in order to defame her. *Barber I* Amend. Compl. ¶ 23. When Plaintiff Barber was terminated from the OAH, Defendant Jarashow then mischaracterized the termination he caused in order to place Plaintiff Barber in a negative light on the day of the election. *Id.* at ¶ 35.

19

While Plaintiff Barber just wanted to exercise her constitutional right of running in a judicial election in her home state, Defendant Jarashow was motivated by his intent of depriving her that right and eliminating the competition for his chosen candidate. Defendant Jarashow is not entitled to dismissal of Plaintiff Barber's intentional interference with a contract claim.

Defendant Jarashow also invokes a conditional privilege based on an entirely unrelated real-estate principle of *lis pendens*.[4] Def. Jarashow's Mem. at 13 (citing *Havilah Real Prop. Servs., LLC v. Vlk, LLC*, 108 A.3d 334, 346 (D.C. 2013)).

> A *lis pendens* notice is "designed to enable interested third parties to discover the existence and scope of pending litigation affecting the title to or asserting a *mortgage, lien, security interest, or other interest in real property*." *Heck v. Adamson*, 941 A.2d 1028, 1029–30 (D.C.2008) (citations, internal quotation marks, and brackets omitted).

*Id.* at 337 n.1 (emphasis added). The *Havilah* court specifically narrowed its determination to: "Whether the filing of a notice of *lis pendens in connection with litigation over real property* is protected by an absolute or a conditional privilege as a defense to a claim of tortious interference with contract and/or prospective advantage." *Id.* at 337 (emphasis added). Defendant Jarashow provides no support for the extension of the *lis pendens* notice principle outside of the real property setting. Besides, the assertion of privilege under *lis pendens* requires the filing of at least one *lis pendens* notice and the party in *Havilah* filed fifty-one *lis pendens* notices. *See id.* at 338. Defendant Jarashow did not even follow the procedural requirements of this irrelevant privilege yet someone still claims its protection.

In an attempt to obtain protection based on inapplicable privileges, Defendant Jarashow degrades these legal principles and substitutes his previously expressed intent for that of a nobler variety. Defendant Jarashow certainly has not met his burden of establishing either privilege.

---

[4] *Lis pendens*, Latin for a pending suit, is a written notice that a lawsuit has been filed, which claims an interest in a real property.

20

> b. *Plaintiff Barber lost employment opportunities due to Defendant Jarashow's actions.*

Defendant Jarashow argues that Plaintiff Barber has not been harmed by Defendant Jarashow's conduct. Def. Jarashow's Mem. at 11-12. However, the complaint clearly detailed Defendant Jarashow's repeated actions throughout eleven months period that led to Plaintiff Barber's termination, loss of the Maryland election, and permanent damage to her reputation, which forecloses future employment opportunities in her chosen career as a judge. *See Barber I* Amend. Compl. ¶¶ 15-35. Defendant Jarashow essentially admitted that he initiated the investigation into ALJ Barber's candidacy through his complaint, in which he expressly requested ALJ Barber's termination in January 2016. *See* Def. Jarashow's Mem. at 16.

Chief Administrative Law Judge Adams recommended ALJ Barber's termination based on Defendant Jarashow's complaint. *Barber I* Amend. Compl. ¶ 21. In February 2016, Defendant Jarashow contacted the Maryland election board in an attempt to remove Plaintiff Barber from the ballot and emailed the OAH false information that Plaintiff Barber was indeed running a partisan election as a Democrat. *Id.* at ¶ 18. When Defendant Jarashow was unsuccessful in removing Plaintiff Barber's name from the ballot, Defendant Jarashow published information given to him by the OAH in March and April 2016 before ALJ Barber even had her hearing. *Id.* at ¶ 23. In July 2016, Defendant Jarashow attended ALJ Barber's COST hearing, presumably to obtain potentially negative information about ALJ Barber. *Id.* at ¶ 32. Defendant Jarashow then published a flyer the day of the election, criticizing ALJ Barber's integrity and ethics. *Id.* at ¶ 35. Defendant Jarashow interfered with Plaintiff Barber's ALJ position at the OAH, her campaign for a judge position, and her future employment opportunities through these actions. Plaintiff Barber has alleged that these flyers lost her votes causing her not to be elected. *See id.* A motion to dismiss is inappropriate to determine whether the flyer was indeed misleading and the effect

21

the flyer had on Plaintiff Barber's campaign for judge and future employment opportunities.

## IV. Defendant Jarashow improperly constrains the scope of Plaintiff Barber's 42 U.S.C. § 1985(3) claim.

Plaintiff Barber must allege the following elements to establish a claim under Section 1985(3):

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Hobson v. Wilson*, 737 F.2d 1, 14 (D.C. Cir. 1984). In addition, "there must be some racial, or perhaps *otherwise class-based*, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis added). Defendant Jarashow argues that Plaintiff Barber has not shown that "she belongs to a member of a protected class." Def. Jarashow's Mem. at 7. This is the wrong standard. Defendant Jarashow's own cited standard shows that defendant's intent and animus toward a class is at issue, and not plaintiff's actual classification into the alleged protected class. *Griffin*, 403 U.S. at 102. This Court should deny Defendant Jarashow's motion to dismiss Plaintiff Barber's Section 1985(3) claim because Defendant ignores the factual allegations that show Defendant Jarashow and District Defendants acted due to their belief that Plaintiff Barber was running as a Democrat.

Race, national origin, and gender are not the only classes protected from animus. *See Griffin*, 403 U.S. at 102 ("racial, or perhaps otherwise class-based, invidiously discriminatory animus"); *Pope v. Bond*, 641 F. Supp. 489, 499 (D.D.C. 1986) ("Hence, the language of the statute was meant to be broader than just protection against racial bias."). "[The D.C. C]ircuit has recognized that political groups may [be] define[d] classes protected by § 1985(3)." *Pope*, 641 F. Supp. at 498 (citing *Hobson*, 737 F.2d at 21). The Supreme Court has long held political groups

that support civil rights are protected by Section 1985(3). *Griffin*, 403 U.S. at 103 ("The complaint further alleges that the respondents were 'acting under a mistaken belief that R. G. Grady was a worker for Civil Rights for Negroes.'"); *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 827, 838 (1983) ("the predominant purpose of § 1985(3) was to combat the then-prevalent animus against Negroes and their supporters….The animus was against Negroes and their sympathizers, and perhaps against Republicans as a class….").[5]

In *Scott*, the Supreme Court considered whether conspiracies purely motivated by political bias fall within the purview of Section 1985(c) and acknowledged that the legislative history supports a claim based on political bias alone. 463 U.S. at 836-37 (citing Cong. Globe, 42d Cong., 1st Sess., 567 (1871) ("Senator Edmunds[]…said that if a conspiracy were formed against a man 'because he was a Democrat…then this section could reach it.'"). Despite these comments, the Supreme Court elected not to decide whether political affiliation constitutes a class protected from animus. *See id.*

The D.C. Circuit has not previously determined whether animus directed at a political class is protected, but has made favorable comments regarding the classification. *See Hobson*, 737 F.2d at 16-21 (citing only other circuits that found political affiliation as a protected class and acknowledging the legislative support for the interpretation). Subsequent cases in this Court also noted political affiliation as a potential class protected from animus. *See Lewis v. Green*, 629 F. Supp. 546, 551 (D.D.C. 1986) (noting *Hobson*'s inclusion of political groups that support civil rights for Blacks and political affiliation as a protected class in other jurisdictions); *Pope*, 641 F. Supp. at 498 ("There is no question that Congress was concerned not just with blacks suffering from intimidation, but also with white Republicans ('Carpetbaggers') who were subject to

---

[5] As Plaintiff Barber was the first African-American female on the general election ballot of the Circuit Court for Anne Arundel County, the conspiracy was racially motivated.

conspiracies by the Ku Klux Klan."). Based on these cases, political animus should satisfy the class-based discriminatory animus requirement of Section 1984(3).

Plaintiff Barber sufficiently alleged that there was political animus behind Defendant Jarashow's actions.[6] In January 2016, Defendant Jarashow initiated contact with the OAH specifically for the purpose of forcing Plaintiff Barber's termination from the OAH for her candidacy in the Maryland election and removing her from the Maryland election ballot so that Defendant Jarashow's candidate would have a "political advantage." *Barber I* Amend. Compl. ¶¶ 15, 18, 54. Defendant Jarashow remained in contact with Defendant Nolen of the OAH, and in February 2016, Defendant Jarashow expressly asserted that Plaintiff Barber was "running as a Democrat candidate for judge" even though the article he supposedly based his belief on never even used the word "Democrat" in any context. *Barber I* Amend. Compl. ¶ 18. He wished to prevent Plaintiff Barber, the supposed Democrat, from running in order to favor his preferred candidate. *See id.* In the same email in which he misidentified Plaintiff Barber's status, he stated his desire of removing Plaintiff Barber from the ballot. *Id.* Plaintiff Barber also alleged that OAH employees worked in concert with Defendant Jarashow by providing him with the ammunition to attack Plaintiff Barber when they disclosed her confidential personnel information before formal COST proceedings were announced and filed incomplete and inaccurate ethics complaints against her. *Barber I* Amend. Compl. ¶¶ 23, 34. Plaintiff had alleged that she was part of a protected class and provided sufficient facts to support her allegation. Plaintiff Barber's allegations in her Amended Complaint speak for themselves.

> Defendant Jarashow, who knew Plaintiff Barber was a resident of Anne Arundel
> County, Maryland and had a constitutional right to run in a judicial election, filed

---

[6] Plaintiff Barber indeed alleges that she was part of a non-partisan election; her own understanding of her classification is wholly irrelevant to the 42 U.S.C. § 1985(3) claim. Instead, at issue is whether defendants' intent was rooted in a class-based animus.

a complaint against Plaintiff Barber with Defendant Adams, falsely claiming that she was running as a Democrat candidate, with the goal of getting Plaintiff Barber terminated from her position at OAH, to provide a political advantage to his desired candidates. The District of Columbia Defendants demanded that Plaintiff Barber resign from her position as an ALJ on February 12, 2016, and thereafter removed her from the OAH and shared Plaintiff's confidential personnel information with Defendant Jarashow before formal proceedings were instituted in a manner to publicly humiliate Plaintiff. Defendants Adams, Natale and Nolen conspired with Jared Demarinis at the Maryland State Board of Elections to execute an affidavit, which was prepared by Defendant Nolen, to offer a legal opinion on whether the Maryland election for Circuit Court judges was partisan. Mr. Demarinis further articulated a letter to Plaintiff dated April 4, 2016, misrepresenting the office of judge of the Circuit Court in Maryland as a partisan office. Defendant Adams engaged in ex parte contact with The COST to deny Plaintiff Barber's due process rights. Defendant Adams conspired with Defendant Jarashow to make public confidential personnel information of Plaintiff Barber, and Defendant Jarashow used that information to produce a misleading election flyer on the day of the election to cause Plaintiff Barber to be cast in a false light on election day. Defendant Adams and Defendant Natale filed misleading charges with the District of Columbia Disciplinary Counsel and the Maryland Attorney Grievance Commission on September 27, 2016.

*Barber I* Amend. Compl. ¶ 54. This Court should deny Defendant Jarashow's motion to dismiss Plaintiff Barber's Section 1985(3) claim.

## V.   This Court would have supplemental jurisdiction over Plaintiff's claims even if Count IV was dismissed.

Defendant Jarashow argues that Counts VI and VII of Plaintiff's Amended Complaint alleging intentional interference with contractual relations and defamation, which are based in the common law of the District of Columbia, should be dismissed if the Court dismisses Plaintiff's claim against Defendant Jarashow for violation of 42 U.S.C. § 1985(3) in Count IV of the amended complaint. Specifically, Defendant Jarashow contends that this Court does not have supplemental jurisdiction over these state law claims because they are not a part of the same case or controversy as Plaintiff's federal Section 1985 claim. Def. Jarashow's Mem. at 8-10.

As an initial matter, as described above, Plaintiff has stated a claim that Defendant Jarashow violated 42 USC § 1985(3), and Defendant Jarashow does not dispute that Count IV of

Plaintiff's Amended Complaint is a part of the same case or controversy as Counts VI and VII, and therefore, does not dispute that this Court has subject matter jurisdiction over these counts if Count IV is not dismissed.

Moreover, even if all of Plaintiff's federal claims were dismissed, this Court may exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if…(3) the district court has dismissed all claims over which it has original jurisdiction. . . ."). It would be an immense waste of judicial resources for this court to dismiss Counts VI and VII when Plaintiff Barber has a number of federal claims (Counts I, II, III, and IV) involving the same issues of fact and to force Plaintiff Barber to pursue separate actions against the Defendants. Indeed, all Parties already twice briefed this Court on factual and legal matters concerning Plaintiff Barber's claim. *See* Docket 12-15, 17-18, 25-26. Further, even if the court separates the state law matters between Plaintiff Barber and Defendant Jarashow, both Parties will still require information from Defendant the District during discovery.

Regardless of whether Count IV survives, this Court has supplemental jurisdiction over Counts VI and VII of Plaintiff's Amended Complaint because they are part of the same case and controversy as the remaining federal claims in Counts I and II regarding Plaintiff Barber's Fifth Amendment due process rights. This Court may exercise supplemental jurisdiction over state law claims if they are "adequately related" to the federal claim. *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 75 (D.D.C. 2002). The claims need not use the exact same facts in order to be tried together. *See id.* In *Shekoyan*, the court found that both of plaintiff's state and federal law claims "'derive from a common nucleus of operative fact,' namely, the circumstances surrounding [plaintiff's] employment termination." *Id.* While this Court has the discretion to separate the

state claim, "'judicial economy, convenience, and fairness to litigants' favor the several claims being litigated in a single proceeding." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988)).

Similar to *Shekoyan*, Plaintiff Barber's federal and state claims, specifically Counts I, II, VI, and VII, derive from the circumstances surrounding her termination and inability to pursue a career as a judge. *Barber I* Amend. Compl. ¶¶ 38, 44, 50, 66, 67, 73. Defendant Jarashow unsuccessfully attempts to extract particular incidents from the series of events that led to Plaintiff Barber's termination, Def. Jarashow's Mem. at 9-10, but an examination of the facts show that these events are part of a larger whole and led to subsequent incidents in the series. *See Barber I* Amend. Compl. ¶¶ 15-35.

Defendant Jarashow claims that his February 4, 2016 complaint letter applies only to the state law defamation and intentional inference claims and is unrelated to the February 12, 2016 OAH demand of resignation in Plaintiff Barber's federal due process claims. Def. Jarashow's Mem. at 9-10. However, the February 12, 2016 meeting was based on the OAH Code of Ethics violation initially raised in Defendant Jarashow's February 4, 2016 complaint and Defendant Adams noted Defendant Jarashow's complaint in his February 12, 2016 letter to Plaintiff Barber. *Barber I* Amend. Compl. ¶ 19. Defendant Jarashow's initial complaint letter on February 4, 2016 was the catalyst that prompted the entire investigation and his February 18, 2016 email with false statements also contributed to the investigation that led to Plaintiff Barber's termination and denial of future employment opportunities. Defendant Jarashow asked OAH to disqualify Plaintiff Barber so that her name could be removed from the ballot. *Barber I* Amend. Compl. ¶ 8. Defendant Jarashow's correspondence with the OAH in February 2016 is essential to both Plaintiff Barber's state and federal law claims. *Barber I* Amend. Compl. ¶¶ 38, 44, 50, 66, 67,

73.

Plaintiff Barber's alleged damage for her state law defamation claim is based on the OAH investigation and termination that are central to her federal due process claims. *See supra*, II(d), III(b). Plaintiff Barber was harmed and defamed by the February 18, 2016 letter because it contributed to her investigation and termination. *See Barber I* Amend. Compl. ¶¶ 66, 73. Defendant Jarashow interfered with Plaintiff Barber's employment contract when he made these false statements, which led to the violations of Plaintiff's due process rights. *See id.*

OAH employees then gave Defendant Jarashow Plaintiff Barber's confidential information from her OAH file, which Defendant Jarashow published in or around March 2016. *Barber I* Amend. Compl. ¶ 23. The distribution of the confidential information was alleged in Plaintiff Barber's federal and state law claims. *Barber I* Amend. Compl. ¶¶ 38, 43, 65. After Plaintiff Barber's termination based on the ethical issue Defendant Jarashow initially raised on February 4, 2016, Defendant Jarashow used Plaintiff Barber's termination to defame her. "Defendant Jarashow used that information to produce a misleading election flyer on the day of the election to cause Plaintiff Barber to be cast in a false light on election day." *Barber I* Amend. Compl. ¶ 65. The facts essential to Plaintiff Barber's federal and state law claims overlap and cannot be separated from each other.

## Conclusion

For these reasons, Plaintiff Barber respectfully requests the Court deny Defendant Jarashow's Motion to Dismiss Plaintiff's Amended Complaint.

Date:   December 5, 2017                    Respectfully submitted,

                                           _____/s/_____
                                           David A. Branch #438764
                                           Law Offices of David A. Branch &
                                           Associates, PLLC
                                           1828 L Street, NW, Suite 820
                                           Washington, DC 20036
                                           (202) 785-2805 (phone)
                                           (202) 785-0289 (fax)
                                           davidbranch@dbranchlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December, 2017, I caused a copy of the foregoing

to be served by electronic mail on:

Cara J. Spencer, Jr.
Kerslyn D. Featherstone
441 Fourth Street NW
Suite 600 South
Washington, DC 20001

*Counsel for Defendants District of Columbia Government, Eugene Adams, Vanessa Natale, and Shawn Nolen*

Justin M. Flint
Abby A. Franke
Eccleston & Wolf, P.C.
1629 K Street, N.W., Suite 260
Washington, D.C. 20006

*Counsel for Defendant Ronald Jarashow*

　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　David A. Branch