**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **CLAUDIA A. BARBER** | ) ) ) | |
| *Plaintiff,* | ) ) | |
| **v.** | ) ) | **Civil Action No.: 17-cv-620 (KBJ)** |
| **DISTRICT OF COLUMBIA GOVERNMENT,** *et al.* | ) ) ) | **Jury Trial Demand** |
| *Defendants.* | ) ) ) ) | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Claudia A. Barber, by and through counsel, hereby files this Second Amended Complaint against Defendant the District of Columbia ("the District") and Defendant Eugene Adams ("Adams") (collectively the "Defendants").

1.      Plaintiff Barber seeks relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.* ("DCHRA"), and the District of Columbia Whistleblowers Protection Act, § 1-615.53 *et seq.* ("DCWPA"), including but not limited to declaratory, injunctive and other equitable relief, compensatory damages, litigation expenses and reasonable attorneys' fees, based on Defendants' violation of Plaintiff's rights.

**Jurisdiction and Venue**

2.      This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 1331 and 2201(a).

3.      Plaintiff has exhausted all administrative remedies prior to filing suit.

1

4.      Venue is proper in this court pursuant to 28 U.S.C. §§ 1391(b) and 1391(e)(1) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendants may be found in this judicial district.

<strong><u>Parties</u></strong>

5.      Plaintiff Claudia A. Barber, an African American woman, was a former Administrative Law Judge ("ALJ") at the District of Columbia Office of Administrative Hearings ("OAH"). She is a citizen of the United States and a resident of the state of Maryland.

6.      The District of Columbia ("the District") is a municipal government. Defendant the District is an employer within the meaning of Title VII, the DCHRA, and the DCWPA. Defendant Adams is the Chief Administrative Law Judge of OAH. Defendant Adams is an employer within the meaning of the DCHRA and a "District employee, supervisor, or official having personal involvement in the prohibited personnel action" within the meaning of D.C. Code § 1-615.54 of the DCWPA.

7.       Defendant Adams is being sued in his individual and official capacities.

<strong><u>Factual Allegations</u></strong>

8.      Plaintiff Claudia A. Barber, a dark skinned, African American woman, was employed as an ALJ at the OAH from August 15, 2005 through August 2, 2016. Throughout her tenure, she met and/or exceeded performance expectations for her position.

9.      In February 2014, Wanda Tucker, an African American with medium brown skin color, became the Interim Chief Administrative Law Judge and Plaintiff Barber's supervisor. On November 7, 2014, Plaintiff Barber made an internal complaint to Ms. Tucker that there was a disparity in the complexity of cases assigned to the Caucasian ALJs versus the African American ALJs. The African American ALJs routinely received less complex and less serious cases than

2

their Caucasian counterparts. For example, all the nursing board cases were assigned to Caucasian judges, and Plaintiff Barber had not received a nursing board case since 2010. Elizabeth Figueroa, a Caucasian Principal Administrative Law Judge ("PALJ"), assigned these nursing board cases during the relevant period and did not assign Plaintiff Barber a nursing board case, until after Plaintiff Barber highlighted the disparity to PALJ Figueroa. Approximately three days after her complaint to Ms. Tucker, on November 10, 2014, Plaintiff Barber was not assigned to a PALJ position to fill a vacancy, even though she was routinely assigned to an acting PALJ position to fill vacancies from 2005 to November 2014.

10.     There are approximately six PALJs and over twenty ALJs within the OAH. During Chief Judge Tyrone Butler's and Chief Judge Mary Oates Walker's tenures, PALJs received a higher salary than ALJs. In addition, PALJs have supervisory duties beyond that of the ALJs, such as approving payroll, approving annual and sick leave taken by ALJs, assigning complex cases to ALJs, and preparing and signing ALJs' performance evaluations. The PALJ is in charge of a cluster of jurisdictions within the OAH and the ALJs are assigned to that group and report to the PALJ. Routine assignment to an acting PALJ position increases the chance that the ALJ would be promoted to a PALJ, as was done in the case of former PALJ Louis Burnett (Caucasian male).

11.     On December 2, 2014, two PALJs were demoted to ALJs. However, they were allowed to keep the salary of a PALJ, which was approximately $3,000 more than an ALJ. Plaintiff Barber, an African American woman, was paid less than at least one Caucasian male ALJ colleague, Robert Sharkey.

12.     On or about December 2, 2014, Ms. Tucker selected and appointed Scott Harvey, a Caucasian, to the vacant PALJ position covering the jurisdictions of the Department of Consumer and Regulatory Affairs, Office of Planning, Department of Insurance and Banking,

3

Department of Small and Disadvantage Businesses, and Office of Tax and Revenue cases without previously notifying the ALJs of the vacancy. Plaintiff Barber was denied the opportunity to apply to this PALJ position.

13.     PALJ Harvey took several days of leave in December 2014 and only selected a Caucasian ALJ, Mary Masulla, to be the acting PALJ each time. He asked Caucasian ALJs Nicholas Cobbs and Margaret Mangan, who were junior, to be his acting PALJ, even though more senior African American ALJs were available to be acting PALJ. ALJ Cobbs had made racial comments in team meetings in the past. For example, he publicly referred to the African American employees as "darkies" in a training setting in or around September 2014. On December 29, 2014, Mr. Harvey again chose a Caucasian ALJ, Mary Masulla, as his substitute, and Plaintiff Barber asked him about his choice. Mr. Harvey told Plaintiff Barber not to question his decisions.

14.     Mr. Harvey served as the PALJ until the end of January 2015. Ms. Tucker left the PALJ position open after Mr. Harvey left the position, even though Plaintiff Barber expressed interest in being placed in the position. Ms. Tucker then announced the open PALJ position to all ALJs. As part of the announcement, she instituted unreasonable selection criteria in an effort to disqualify and retaliate against Plaintiff Barber. Plaintiff Barber believes that the standard was to discourage and eliminate African American ALJs from applying for the open position; indeed, ALJ Audrey Jenkins did not apply to the position. When Plaintiff Barber expressed her interest, Ms. Tucker made her take the equivalent of a literacy test, which Plaintiff Barber found humiliating. When Plaintiff Barber submitted her application, she received no response from Ms. Tucker in spite of her request to urgently submit a completed application. Instead, Paul Handy, a Caucasian, was selected for the PALJ position.

15.     On or around March 9, 2015, Plaintiff Barber filed a formal charge of discrimination with the D.C. Office of Human Rights, which was cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). She alleged discrimination based on her race and color and retaliation due to her complaints.

16.     In April 2015, Defendant Adams became the Chief Administrative Law Judge and Plaintiff Barber's supervisor. He learned of her EEO case against Ms. Tucker shortly after he became the chief. On information and belief, Defendant Adams was advised to retaliate against Plaintiff Barber and sought to force Plaintiff Barber's resignation.

17.     Due to the demonstrated limitation in advancement opportunities within the OAH, Plaintiff Barber began contemplating whether she would and could become a candidate for a judge position at the Circuit Court for Anne Arundel County.

18.     On January 20, 2016, Plaintiff Barber filed with the State of Maryland a Certificate of Candidacy for a Judge of the Circuit Court for the Fifth Judicial Circuit, which is Anne Arundel County. In the Certificate, Plaintiff Barber listed her Party Affiliation as "Judicial."

19.     On or about January 2016, Ms. Barber made protected disclosures when she filed a complaint with the Office of D.C. Inspector General and disclosed that Defendant Adams ordered OAH ALJs to attend mandatory diversity training and later allowed a large number of Caucasian ALJs to not attend the training that was already paid for by taxpayers. By April 2016, Defendant Adams was contacted by an individual who was contacted by an investigator in the Office of Inspector General and commented that ALJ Barber filed the complaint against him with the Office of Inspector General.

20.     In January 2016, Defendant Adams announced a new plan for the fair selection of PALJs. OAH planned to promote those ALJs who volunteer to be PALJs alphabetically, and Plaintiff

Barber should have been the next ALJ to be promoted to PALJ. In February 2016, Defendant Adams instead promoted a Caucasian ALJ, Sharon Goodie, to PALJ and ignored the selection plan adopted by OAH in January 2016. The selected ALJ was less qualified than Plaintiff Barber. This selection was the third time a less qualified Caucasian ALJ was selected for a PALJ position over Plaintiff Barber.

21.    On February 12, 2016, Plaintiff Barber completed a portion of her morning docket when General Counsel Vanessa Natale and Attorney Advisor Louis Neal came to her office. At this meeting, Plaintiff Barber was given a letter with the subject: Notice of Violation—the Code of Ethics for OAH Administrative Law Judges, issued by Chief Administrative Law Judge Adams. The letter contained no appeal rights and bypassed all protocol established under Title 6B DCMR Chapter 37, governing disciplinary action taken against ALJs. In the Notice of Violation, Chief Administrative Law Judge Adams stated that he had unilaterally determined that Plaintiff Barber violated Section V(U) of the Code of Ethics for OAH Administrative Law Judges, and that Plaintiff Barber's pursuit of the judgeship in Maryland violated several other rules governing the conduct of ALJs at OAH, including Sections I(A), II(D) and V(V). Chief Administrative Law Judge Adams stated that the Maryland State Board of Elections confirmed that Plaintiff Barber was a candidate in a party primary scheduled for April 26, 2016 and the primary is viewed as a partisan election. He noted that Plaintiff Barber would appear as a candidate for Circuit Court Judge in both the Republican and Democratic primaries and both primaries are exclusive to the respective parties and exclude unaffiliated and third party voters, and by participating on these party tickets, Plaintiff Barber violated Section V(U) of the OAH Code of Ethics.

22.    Chief Administrative Law Judge Adams cited the Maryland Court of Appeals decision, *Suessmann v. Lamone*, 862 A.2d 1 (Md. 2004), for the contention that a judicial election is

6

partisan. Chief Administrative Law Judge Adams further commented that Plaintiff Barber had an obligation to uphold the integrity and independence of the agency. Even though Plaintiff Barber had contacted Brian Flowers, General Counsel at the District of Columbia Board of Ethics and Government Accountability ("BEGA"), and the Chair of the District of Columbia Commission on Selection and Tenure ("The COST"), Yvonne Williams, to obtain an opinion on whether or not an ALJ at OAH can run in a judicial election for a judicial vacancy without resigning as an ALJ, Chief Administrative Law Judge asserted that Plaintiff Barber made no additional effort to determine whether the election was partisan. Chief Administrative Law Judge Adams claimed there was clear case law that would have provided guidance. Finally, Chief Administrative Law Judge Adams noted that Plaintiff Barber's campaign website represented that she had received the highest ratings for all years as an ALJ, and stated that he believed that Plaintiff Barber used her ALJ position for her private interests.

23.    During the February 12, 2016 meeting, Plaintiff Barber was told by Ms. Natale that she could immediately resign from her position. Plaintiff Barber stated that she had not done anything wrong and would not resign. She was again encouraged to think about resigning, and Plaintiff Barber emphatically stated she would not resign. Plaintiff Barber inquired if she could work the remainder of the day and conclude matters, and she was told that she would be permitted to work for the rest of the day. Five minutes later, Ms. Natale returned and abruptly informed her that she must leave the office immediately. Plaintiff Barber was escorted out of the OAH offices by Mr. Neal in front of her colleagues and subordinates. She was also asked to remove all property from her office immediately, even though the COST had made no determination on Adams' Notice of Violation, and the Notice of Violation violated all established protocal for ALJs.

24. On February 16, 2016, Chief Administrative Law Judge Adams sent a letter to The COST Commissioners advising that he placed Plaintiff Barber on administrative leave with pay after demanding her resignation and that Plaintiff Barber refused to resign from her position. Chief Administrative Law Judge Adams requested that the Commissioners consider his letter as a proposal to terminate Plaintiff Barber from her position. Plaintiff Barber was not given notice of any violations or charges or an opportunity to respond to any alleged violations before the letter was sent to The COST. After February 16, 2016, Plaintiff Barber sent a number of emails to The COST regarding her response to the Notice of Violation.

25. On April 19, 2016, The COST submitted to ALJ Barber's counsel notice of initiation of formal proceeding against ALJ Barber. Section 3730.4 of Chapter 6-B of the D.C. Municipal Regulations provides that: "If, after investigation, the Commission has reason to believe that there is cause to discipline or remove an Administrative Law Judge, it may commence a formal proceeding against the Administrative Law Judge." 6-B DCMR § 3730.4. Section 3730.6 further provides that "**Before** instituting a formal proceeding against an Administrative Law Judge, the Commission shall serve the Administrative Law Judge with notice of the investigation and offer the Administrative Law Judge an opportunity to meet with the Commission." 6-B DCMR § 3730.6 (emphasis added). The COST did not serve notice of any investigation, nor offer ALJ Barber an opportunity to meet with The COST before instituting a formal proceeding in violation of 6-B DCMR § 3730.4 and 6-B DCMR § 3730.6.

26. While The COST did not communicate with ALJ Barber, they communicated with CALJ Adams. For example, on May 24, 2016, the COST held a conference call with the Commissioners and CALJ Adams. Following the conference call, CALJ Adams sent a letter to the COST where he acknowledged discussions during the COST conference call about the

Barber matter and provided information regarding the date of the hearing. CALJ Adams could only learn of the information presented in the letter by participating in the COST conference call or receiving information from the call. On May 24, 2016, ALJ Barber requested that the COST disclose all *ex parte* communication with CALJ Adams regarding the Barber matter. On May 25, 2016, ALJ Barber, through counsel, objected to CALJ Adams' *ex parte* communication with The COST and requested the dates, content, and substance of all conversations and communication between CALJ Adams and the COST. The COST did not disclose this information. ALJ Barber later filed a motion for recusal of the COST panel and appointment of an independent panel, which was not immediately addressed by Judge Williams.

27.    On May 18, 2016, The COST, through Judge Williams, scheduled an evidentiary hearing on June 10, 2016. After the notice was issued, COST Commissioner Joseph Onek sent an email expressing surprise at the scheduling of the hearing because the date of the hearing did not provide the adequate (thirty days) advance notice as required by 6-B DCMR § 3735.2. Mr. Onek emailed The COST Commissioners, including Defendant Adams, on May 18, 2016, stating that: "I thought we couldn't have a hearing on June 10 because of the notice requirements." The June 10, 2016 hearing date was subsequently vacated after Plaintiff Barber protested the violation of the applicable regulations.

28.    On July 13, 2016, The COST convened a hearing without giving Plaintiff an opportunity to meet with COST as allowed by 6B DCMR 3730.6. The COST excluded all witness testimony and only received testimony from Plaintiff Barber, and not her expert witnesses or other relevant witnesses, including former Chief Tyrone Butler, who promulgated the OAH Ethics Code. This was a per se violation of 6B DCMR 3735.14.

29.     On August 2, 2016, The COST issued an Order finding that Plaintiff Barber violated Section V(U) of the OAH Code of Ethics, and immediately removed her from her position as an administrative law judge. Plaintiff Barber was not provided any information on her appeal rights.

30.     Following ALJ's Barber's termination and thirty days before the general election, Defendant Adams and his general counsel, Vanessa Natale, strategically filed allegations of ethical violations of dishonesty against Plaintiff with the District of Columbia Disciplinary Counsel and the Maryland Attorney Grievance Commission on September 27, 2016, and provided incomplete documents and misstated and misrepresented facts with the intent that the complaints would result in disciplinary action being taken against Plaintiff and would damage her personal and professional reputation.

31.     In or around September 2016, Plaintiff Barber again filed a charge of discrimination with the D.C. Office of Human Rights, which was cross-filed with the EEOC, alleging race discrimination and retaliation. Plaintiff Barber received Notice of Right to Sue letters for both administrative complaints on April 12, 2017.

## COUNT I

**Violation of the District of Columbia Human Rights Act**
**D.C. Code § 2-1401 *et seq.***
**(Discrimination based on Race and Color)**
**(*Barber v. Defendants District of Columbia and Adams*)**

32.     Plaintiff realleges and incorporates by reference all paragraphs above as if set forth fully herein.

33.     At all pertinent times, Defendants the District and Adams were employers within the meaning of the DCHRA.

34.     At all pertinent times, Plaintiff was entitled to protection under the DCHRA.

10

35.     The DCHRA prohibits discrimination in employment based on an individual's race and color.

36.     Defendants, in violation of the DCHRA, knowingly and intentionally engaged in unlawful discrimination against Plaintiff based on her race and color. Specifically, Defendants gave Plaintiff Barber less complex case assignments than her Caucasian colleagues; passed her over for the PALJ and Acting PALJ positions for a less qualified Caucasian colleague; promoted less qualified Caucasian ALJs to PALJ positions over her in December 2014, February 2015 and February 2016; required only Plaintiff to take a literacy test to humiliate her; deviated from the Agency's own selection policy to promote a less qualified Caucasian ALJ in February 2016; directed her to resign and proposed her for termination in February 2016; placed her on administrative leave in February 2016; and caused her to be terminated from OAH in August 2016. Defendant Adams had *ex parte* communications with the COST in May 2016 and was involved in and responsible for Plaintiff's termination in August 2016, and he filed false and misleading ethical violations of dishonesty against Plaintiff with the District of Columbia Disciplinary Counsel and the Maryland Attorney Grievance Commission in September 2016 with the intent to permanently damage her judicial career and future employment prospects.

37.     As a result of such acts, Plaintiff has suffered damages.

38.     Defendants had no legitimate business reason for any such acts.

39.     Plaintiff believes that in addition to the facts enumerated above, Defendants may have engaged in other discriminatory practices that are not yet fully known.

## COUNT II

### Violation of the District of Columbia Human Rights Act
### D.C. Code § 2-1401 *et seq.*
### (Retaliation)
### (*Barber v. Defendants District of Columbia and Adams*)

40.    Plaintiff realleges and incorporates by reference all paragraphs above as if set forth fully herein.

41.    At all pertinent times, Defendants the District and Adams were employers within the meaning of the DCHRA.

42.    At all pertinent times, Plaintiff was entitled to protection under the DCHRA.

43.    The DCHRA prohibits retaliation for engaging in protected activity.

44.    Plaintiff engaged in protected activity when she complained about racial discrimination to Ms. Tucker in November 2014, complained about discrimination and/or objected to discriminatory practices to a PALJ in December 2014, and filed a formal charge of discrimination and retaliation with the D.C. Office of Human Rights and the EEOC in March 2015. Defendant Adams became aware of Plaintiff Barber's formal charge of discrimination by April 2015.

45.    Defendants, in violation of the DCHRA, knowingly and intentionally engaged in unlawful retaliation against Plaintiff. Specifically, Defendants gave Plaintiff Barber less complex case assignments; passed her over for the Acting PALJ position for a less qualified colleague less than three days after her November 2014 complaint of discrimination; paid her less than other ALJs, including Erika Pierson and Steve Wellner; promoted less qualified ALJs to PALJ positions over her in December 2014 and February 2015; required Plaintiff to take a literacy test to humiliate her; deviated from the Agency's own selection policy to promote a less qualified ALJ in February 2016; directed her to resign and proposed her for termination in February 2016;

12

placed her on administrative leave in February 2016 before COST met to consider instituting formal proceedings against Plaintiff, which is a per se violation of 6B DCMR 3734.6; denied her due process before and during the removal proceedings by refusing to allow any of her witnesses to testify, and refusing to provide her appeal rights; and caused her to be terminated from OAH in August 2016. Defendant Adams had *ex parte* communications with the COST in May 2016 and was involved in and responsible for Plaintiff's termination in August 2016, and he filed false and misleading ethical violations of dishonesty against Plaintiff with the District of Columbia Disciplinary Counsel and the Maryland Attorney Grievance Commission in September 2016.

46.     As a result of such acts, Plaintiff has suffered damages.

47.     Defendants had no legitimate business reason for any such acts.

48.     Plaintiff believes that in addition to the facts enumerated above, Defendants may have engaged in other retaliatory practices that are not yet fully known.

## COUNT III

**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e *et seq.***
**(Race and Color Discrimination)**
**(*Barber v. District of Columbia*)**

49.     Plaintiff realleges and incorporates by reference all paragraphs above as if set forth fully herein.

50.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or color.

51.     At all pertinent times, the Defendant the District was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

13

52.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

53.     In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, Defendant the District knowingly and intentionally engaged in unlawful discrimination against Plaintiff based on her race and color. Specifically, Defendant the District, through its agents, gave Plaintiff Barber less complex case assignments than her Caucasian colleagues; passed her over for the PALJ position in the Regulatory and Tax affairs jurisdictions and passed her over for an Acting PALJ position for a less qualified Caucasian colleague; paid her less than Caucasian ALJs; promoted less qualified Caucasian ALJs to PALJ positions over her in December 2014 and February 2015; required Plaintiff to take a literacy test to humiliate her; deviated from the Agency's own selection policy to promote a less qualified Caucasian ALJ in February 2016; directed her to resign and proposed her for termination in February 2016; placed her on administrative leave in February and March 2016; caused her to be terminated from OAH in August 2016; and caused false and misleading ethical violations of dishonesty against Plaintiff to be filed with the District of Columbia Disciplinary Counsel and the Maryland Attorney Grievance Commission in September 2016.

54.     As a result of such acts, Plaintiff has suffered damages.

55.     Defendant the District had no legitimate business reason for any such acts.

56.     Plaintiff believes that in addition to the facts enumerated above, Defendant the District may have engaged in other discriminatory practices that are not yet fully known.

## COUNT IV

**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e *et seq.***
**(Retaliation)**
**(*Barber v. District of Columbia*)**

57.     Plaintiff realleges and incorporates by reference all paragraphs above as if set forth fully herein.

58.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to retaliate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because such individual filed a complaint of discrimination.

59.     At all pertinent times, the Defendant the District was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

60.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

61.     Plaintiff engaged in protected activity when she complained about racial discrimination to Ms. Tucker in November 2014, complained about discrimination and/or objected to discriminatory practices to a PALJ in December 2014, and filed a formal charge of discrimination and retaliation with the D.C. Office of Human Rights and the EEOC in March 2015. Defendant Adams was aware of Plaintiff Barber's formal charge of discrimination by April 2015 and recommended her forced resignation in May 2015.

62.     In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, Defendant the District knowingly and intentionally engaged in unlawful retaliation against Plaintiff. Specifically, Defendant the District, through its agents, gave Plaintiff Barber less complex case assignments; passed her over for the Acting PALJ position for a less qualified

colleague less than three days after her November 2014 complaint of discrimination; paid her less than other ALJs who reverted back to their ALJ positions; promoted less qualified ALJs to PALJ positions over her in December 2014 and February 2015; required Plaintiff to take a literacy test to humiliate her; deviated from the Agency's own selection policy to promote a less qualified ALJ in February 2016; directed her to resign and proposed her for termination in February 2016; placed her on administrative leave in March 2016; caused her to be terminated from OAH in August 2016; and caused false and misleading ethical violations of dishonesty against Plaintiff to be filed with the District of Columbia Disciplinary Counsel and the Maryland Attorney Grievance Commission in September 2016.

63.    As a result of such acts, Plaintiff has suffered damages.

64.    Defendant the District had no legitimate business reason for any such acts.

65.    Plaintiff believes that in addition to the facts enumerated above, Defendant the District may have engaged in other discriminatory practices that are not yet fully known.

**<u>Count V</u>**

**Violation of the D.C. Whistleblower's Protection Act**
**D.C. § 1-615.53, *et seq.***
**(Retaliation)**
**(*Barber v. Defendants District of Columbia and Adams*)**

66.    Plaintiff Barber realleges and incorporates by reference all paragraphs above as if set forth fully herein.

67.    At all pertinent times, Defendants the District of Columbia and Adams were employers and/or persons subject to provisions of the D.C. Whistleblowers Protection Act, § 1-615.53 *et seq.*, of the District of Columbia Code.

68.    At all pertinent times, Plaintiff was an employee entitled to protection under the D.C. Whistleblower's Protection Act.

69.     The D.C. Whistleblower's Protection Act prohibits personnel action being taken against an employee because she refuses to comply with an illegal order or because she has made a protected disclosure. The D.C. Whistleblower's Protection Act guarantees that a D.C. employee is free to disclose information that is illegal or unethical or that threatens public funds and public health and safety without fear of retaliation. On or about January 2016, Ms. Barber made protected disclosures when she filed a complaint with the Office of D.C. Inspector General and disclosed that Defendant Adams ordered OAH ALJs to attend mandatory diversity training and later allowed a large number of Caucasian ALJs to not attend the training that was already paid for by taxpayers. On October 11, 2016, Plaintiff discovered through a Freedom of Information Act (FOIA) request that by April 2016, Defendant Adams was contacted by an individual who was contacted by an investigator in the Office of Inspector General and commented that ALJ Barber filed the complaint against him with the Office of Inspector General. Defendants responded to these disclosures and prior protected disclosures made in 2015 by Plaintiff Barber and Linda Bussey by removing both from the OAH; denying Plaintiff Barber a pre-termination meeting with The COST; conspiring with Mr. Jarashow to cause Plaintiff's termination; engaging in *ex parte* communication between Defendant Adams and The COST; authorizing Mr. Nolen to draft an affidavit on behalf of Jared Demarinis; attempting to schedule a hearing without thirty-days' notice as required by the applicable regulations; denying Plaintiff's request for witnesses at The COST evidentiary hearing; publishing the decision and other personnel data on Plaintiff to Mr. Jarashow in a manner to publicly humiliate Plaintiff; and filing disciplinary actions with the District of Columbia Disciplinary Counsel and Maryland Attorney Grievance.

70.     Defendants District of Columbia and Adams took "prohibited personnel actions," as defined by the Whistleblower's Protection Act, § 1-615.52(a)(5), and otherwise retaliated against

17

Ms. Barber because of her protected activities. Plaintiff Barber's exercise of her whistleblower rights was a substantial or motivating factor in the adverse actions taken against her by Defendants between February 2016 and August 2, 2016.

71.    As a direct and proximate cause of the Defendants' actions, Plaintiff Barber lost wages and benefits and suffered damage to her professional reputation and career, emotional distress, embarrassment, mental distress and humiliation.

## Prayer for Relief

WHEREFORE, Plaintiff Claudia Barber prays as follows:

A.  That the court issue an Order declaring Defendants' actions to be a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.* ("DCHRA"), and the District of Columbia Whistleblowers Protection Act, § 1-615.53 *et seq.* ("DCWPA");

B.  Enter judgment against the Defendants individually in an amount to be determined at trial;

C.  Order Defendant District of Columbia Government to reinstate Plaintiff to the same position as before her termination;

D.  Issue a permanent injunction prohibiting Defendants from engaging in any discriminatory acts;

E.  Enter judgment in favor of Plaintiff against Defendants for all equitable monetary damages available under the law, including but not limited to back pay and front pay in amounts to be determined at trial;

F.  Order Defendants to refrain from any retaliation against Plaintiff or any other person for participating in or supporting this case in any manner;

G.  Order Defendants to pay compensatory damages in amounts to be determined at trial;

H.  Order Defendants to pay Plaintiff's reasonable attorneys' fees, expert fees, and costs; and

I.  Order Defendants to pay pre-judgment and post-judgment interest as provided by law.

## Jury Trial Demand

Plaintiff demands a jury trial on all counts.

Respectfully submitted,


_____/s/_____

David A. Branch #438764
Law Office of David A. Branch &
    Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax
davidbranch@dbranchlaw.com

19