**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CLAUDIA A. BARBER

*Plaintiff*,

v.                                                          Civil Action No. 1:17-cv-00620-KBJ

DISTRICT OF COLUMBIA, *et al*.,

*Defendants*.

**DEFENDANTS DISTRICT OF COLUMBIA AND EUGENE ADAMS'S
MOTION FOR SUMMARY JUDGMENT**

Defendants District of Columbia the District and Eugene Adams (CALJ Adams) move

this Court for summary judgment pursuant to Fed. R. Civ. P 56 as to all claims in Plaintiff

Claudia Barber's Second Amended Complaint [49].  In her Second Amended Complaint,

Plaintiff claims that she was discriminated against based on race and color and subject to retaliation

against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et*

*seq*., and the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1401.01, *et seq*..

Further, Plaintiff alleges that she was retaliated against in violation of the D.C. Whistleblower

Protection Act (DCWPA) after making protected disclosures.

Defendants are entitled to judgment on each of these claims because (1) Plaintiff failed to

exhaust her administrative remedies before seeking relief for her claims under Title VII against the

District (Counts III and IV); (2) Barber's claims of race/color discrimination under Title VII and

DCHRA (Counts I and III) fail as a matter of law; (3) Barber failed to establish a prima facie case of

retaliation under Title VII and DCHRA (Count II and IV) and (4) Barber's claim under the DCWPA

(Count V) fail as a matter of law.  Moreover, Defendants actions against Plaintiff were for legitimate

non-discriminatory/non-retaliatory reasons.  Therefore, Defendants are entitled to judgment as a matter of law on all claims in Plaintiff's Second Amended Complaint.

A memorandum of points and authorities, a statement of undisputed material facts, and a proposed order are attached for the Court's consideration.

Date:  March 5, 2021                    Respectfully Submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Alicia M. Cullen*
ALICIA M. CULLEN [1015227]
Chief, Civil Litigation Division, Section III

*/s/ Kerslyn D. Featherstone*
KERSLYN D. FEATHERSTONE [478758]
Senior Assistant Attorney General
ANTOINE M. WILLIAMS [16322919]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 7224-6600; (202) 256-2810
Fax: (202) 741-8924; (202) 741-8995
Email:  kerslyn.featherstone@dc.gov
antoine.williams1@dc.gov
*Counsel for Defendants District of Columbia and Eugene Adams*

2

## TABLE OF CONTENTS

FACTUAL BACKGROUND.......................................................................................................... 2

PROCEDURAL HISTORY........................................................................................................... 7

LEGAL STANDARD ................................................................................................................... 8

ARGUMENT ................................................................................................................................. 9

       I.      Plaintiff Failed to Exhaust Her Administrative Remedies and Therefore Her
              Claims Under Title VII (Counts III and IV) Fail as a Matter of Law........................ 9

       II.     Plaintiff's Claims of Race and Color Discrimination Fail As A Matter of Law..... 10
              A.   Legal Standards ................................................................................................ 10
              B.   Barber Cannot Prove A Prima Facie Case of Race or Color Discrimination
                    Under Title VII or DCHRA. .............................................................................. 11

       III.    Barber Cannot Establish A *Prima Facie* Case of Retaliation Under TitleVII or
              DCHRA………………………………………………………………………16
              A.   Legal Standards ................................................................................................ 16
               B.   Plaintiff Cannot Establish A *Prima Facie* Case of Retaliation.......................... 18
              C.   Plaintiff Cannot Establish She Was Subjected to Adverse Actions. ............... 18

IV.  The District Had Non-Discriminatory Legitimate Business Reasons For Their Actions
     Against Plaintiff ........................................................................................................ 26

V.   Plaintiff's Claim Under the DCWPA Fails as a Matter of Law. ............................... 27
              A.  Plaintiff Cannot Make Out a Prima Facie Case of Retaliation Under the
                 DCWPA................................................................................................................ 28

CONCLUSION ........................................................................................................................... 35

## TABLE OF AUTHORITIES

**Cases**

*Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 95 (D.D.C. 2007)..................................... 19

*Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) .................................................... 17

*Amtrak v. Morgan*, 536 U.S. 101, 110 (2002); *Lewis v. City of Chicago*, 560 U.S. 205, 210

(2010)........................................................................................................................... 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)............................................. 8

*Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 n.17 (D.C.1993) ................................... 11

*Ass'n of Flight Attendants-CWA, AFL-CIO v. United States Dep't of Transp.*, 564 F.3d 462, 465

(D.C. Cir. 2009) ......................................................................................................... 8

*Brown v. Brody,* 199 F.3d 446,452 (D.C. Cir. 1999)...................................................... 16

*Bryant v. District of Columbia*, 102 A.3d 264, 267 (D.C. 2014);................................... 17

*Burlington Northern & Santa Fe. Ry. Co. v. White,* 548 U.S. 53, 67 (2006........................... 16, 17

*Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012) ................................................... 10, 26

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986)........................................................... 8, 12

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) 22

*Diaz v. Washington Metropolitan Area Transit Auth.*, 243 F. Supp. 3d 86, 88 (D.D.C. 2017)...... 8

*Dobbs v. Roche,* 329 F. Supp. 2d 33, 44 (D.D.C. 2004 ........................................................ 10, 15

*Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009))........................................................... 15

*Freeman v. District of Columbia*, 60 A.3d 1131, 1143 (D.C. 2012). ........................................... 28

*Furline v. Morrison,* 953 A.2d 344, 350-351 (D.C. 2008) ................................................... 18, 25

*Futrell v. Dep't of Labor Federal Credit Union*, 816 A.2d 793, 803 (D.C. 2003)....................... 10

*Grimes v. District of Columbia, Business Decisions Information Inc.*, 89 A.3d 107, 112 (D.C.2014); .................................................................................................................. 17

*Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) ...................................................... 17

*Hazward v. Runyon*, 14 F.Supp.2d 120, 124-5 (D.D.C. 1998). ............................................... 23, 24

*Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) ................................................................ 15

*Jones v. Castro,* 188 F. Supp. 3d 169 (D.D.C. 2016) ................................................................... 20

*Keys v. Donovan,* 37 F. Supp. 3d 368, 372 (D.D.C. 2014) ........................................................... 22

*Kumar v. District of Columbia Water & Sewer Auth.*, 25 A.3d 9, 17 (D.C. 2011) ...................... 11

*Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 51-52 (D.D.C. 2015) ............................. 17

*McDonnell Douglas Corp. v. Green,* 411U.S. 792, 802–04 (1973) .............................................. 17

*McFarland v. George Washington Univ.*, 935 A.2d 337*,* 347 (D.C. 2007) .................................. 11

*Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985) ............................................................... 21

*Propp v. Counterpart Intern.*, 39 A.3d 856, 868 (D.C. 2012). ..................................................... 18

*Rattigan v. Holder*, 982 F. Supp. 2d 69, 81 (D.D.C. 2013). ........................................................ 17

*Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ............................................................................... 8

*Slack v. Washington Metropolitan Area Transit Auth.*, 353 F. Supp. 3d 1, 6 (D.D.C. 2019) ........ 8

*St. Mary's Honor Center, et al. v. Hicks,* 509 U.S. 502, 113 S. Ct. 2742 (1993) ................... 26

*Suessman v. Lamone,* 862 A.2d 1, 5 (Md. 2004) ......................................................................... 27

*Ukwuani v. District of Columbia*, 241 A.3d 529 (D.C. 2020). ............................................... 28, 30

*University of Tex. S.W. Med. Ctr. v.Nassar,* 133 S.Ct. 2517, 2533 (2013 ................................... 17

*Walden v. Patient-Centered Outcomes Research Institute,* 177 F. Supp. 3d 336, 342 (D.D.C. 2016) ................................................................................................................................... 15

*Zirkle v. District of Columbia*, 830 A.2d 1250, 1259-60 (D.C. 2003) .......................................... 29

**Statutes**

D.C. Code § 2-1831.06(b ........................................................................................ 31

D.C. Code 6B § 3734.6 ........................................................................................... 31

42 U.S.C. § 2000e-2(a)(1) (2006) ........................................................................... 9

42 U.S.C. § 2000e–3(a) ......................................................................................... 16

42 U.S.C. § 2000e–5(f)(1) ...................................................................................... 9

D.C. Code § 2-1402.11(a). ...................................................................................... 11

D.C. Code § 2-1402.11.61 (a) ................................................................................ 17

D.C. Code § 2-183 l.05(a)(5) .................................................................................. 19

D.C. Code § 2-1831.01 *et seq* ............................................................................... 5

D.C. Code § 2-1831.05(a)(9) ............................................................................. 6, 31

D.C. Code §2-1831.07(a) ....................................................................................... 33

D.C. Code 6B § 3734.6 ........................................................................................... 31

D.C. Official Code § 2-1831.05(a)(9). ................................................................... 32

D.C. Official Code§§ 2-1831.01 *et seq* .................................................................. 6

D.C. Code § 1-615.51 ............................................................................................. 28

**Other Authorities**

D.C. Personnel Manual § 3729 ............................................................................... 32

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................ 8

**INDEX OF EXHIBITS**

| Exhibit | Description |
| --- | --- |
| 1 | Claudia Barber Deposition |
| 2 | 8/26/6 EEOC Charge of Discrimination |
| 3 | Wanda Tucker Deposition |
| 4 | Plaintiff's Response to Request for Admissions No. 3 |
| 5 | Eugene Adams Deposition |
| 6 | Eugene Adams Deposition, with attached deposition Exhibit 5 |
| 7 | 3/9/15 EEOC Charge of Discrimination |
| 8 | 1/27/16 Office of Human Rights Notice of Dismissal |
| 9 | Letter to OHR re: Reopen |
| 10 | 9/29/16 OHR Determination re: Reopen |
| 11 | EEOC Workshare Agreement |
| 12 | 1/13/17 OHR Investigation |
| 13 | OHR Dismissal 2 |
| 14 | Yvonne Williams Deposition |
| 15 | Office of Administrative Hearings Code of Ethics |
| 16 | Plaintiff's Answer to Interrogatory No. 10. |

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLAUDIA A. BARBER<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:17-cv-00620-KBJ |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Claudia Barber alleges that Defendants violated her rights under Title VII, DCHRA and the DCWPA.  Plaintiff claims that in 2005, she was appointed as an Administrative Law Judge (ALJ) with the D.C. Office of Admininstrative Hearings (OAH).  She served in that role until her removal by the Commision on Selection and Tenure (COST) on August 2, 2016. During her time as an ALJ, specifically in 2014, Barber alleges that due her to race and color (dark-skinned black), she was denied selection to the position of Principal Adminstrative Law Judge (PALJ) over other underqualified Caucaisan ALJs, given less complex assignmnets, and forced to complete trainings that other Caucasian ALJs were not required to attend.  Further, Barber alleges that after she made complaints of unfair disciminatory treament of the black ALJs to then Acting Chief Judge Wanda Tucker (CALJ), she was subjected to retaliation, including denial of PALJ selections thereby receiving less pay for the same work as other ALJs who had served as PALJs.  Defendnat Adams was appointed as Chief Judge in April 2015.  Shortly thereafter, Barber alleges that her complaints of discriminatory treatment were made known to CALJ Adams and, as a result, he futher retaliated against her by also denying her selelction as a PALJ, placing her on adminstrative leave, recommending her for removal from her position as

ALJ. It was Barber's perceived lack of advancement opportunities at OAH that led her to run in an election for Judge of the Circuit Court for Anne Arundel County, Maryland, in violation of OAH Code of Ethics Section V, which states ALJs must resign if they run in a partisan election. As a result of her decision to run in an election, Plaintiff Barber violated the OAH Code of Ethics and was ultimately removed from her position as an ALJ after the COST held a hearing. For the reasons stated below, the Court should grant summary judgment in favor of Defendants on all claims in Plaintiff's Second Amended Complaint [49].

## FACTUAL BACKGROUND

I. <u>Facts Relevant to Plaintiff</u>

Plaintiff Claudia Barber, a dark-skinned African Amercian, was appointed as an ALJ with the OAH on August 15, 2005. Defendants' Statement of Material Facts (SMF) ¶ 1. Plaintiff served in that position until her removal in August 2016 by the COST. SMF ¶ 2. Plaintiff perceived the PALJ position as a career enhancer that could lead to a D.C. Superior Court role. SMF ¶ 3. Beginning in 2014, Wanda Tucker served as Acting Chief Adminstrative Law Judge (CALJ). SMF ¶ 4. She served in this position for 13 months. SMF ¶ 5. Shortly after being appointed, in November 2014, Plaintiff complained to CALJ Tucker about the disparity in complex case assginments in the office. SMF ¶ 6. Using her predessors methodoloy of selction, CALJ Tucker appointed several PALJs. SMF ¶ 7. One change made by CALJ Tucker was that a PALJ would not be paid a higher salary than ALJs. SMF ¶ 8. Tucker also believed that those that were previously appointed PALJ before her tenture as Acting Chief Adminstrative Law Judge would revert back to the salary of the ALJ. SMF ¶ 9. However she took no action nor did she believe she could take any action to reduce the salaries of two ALJs who stepped down from a PALJ position who had been given additional monies. SMF ¶ 10. On

2

or about December 2014, Barber alleges that CALJ Tucker appointed a white male, ALJ Scott Harvey, to serve as a PALJ. SMF ¶ 11. Barber and another ALJ, Paul Handy, complained about the selection due to a lack of transparency in the selection process. SMF ¶ 12.

In early 2015, PALJ Harvey resigned from his position and Plaintiff approached CALJ Tucker about applying for the vacancy. SMF ¶ 13. CALJ Tucker sent out a general email to the ALJ staff on February 2, 2015, soliciting applicants for the PALJ opening. SMF ¶ 14. Plaintiff Barber contends that one of the application requirements was a "literacy test," which was added to the application process to dissuade African American ALJs to apply for the vacancy. SMF ¶ 15.

On January 20, 2016, she filed a Certificate of Candidacy, Candidate Information Sheet and Statement of Organization for Campaign Finance Entities at the Maryland State Board of Elections, declaring her candidacy for Judge of the Circuit for Anne Arundel County, Maryland. SMF ¶ 16. Shortly after Plaintiff filed the paperwork to run for office, CALJ Adams received a complaint filed against Plaintiff regarding her participation as a candidate in the 2016 election for Judge of the Circuit Court for Anne Arundel County, Maryland. SMF ¶ 17.

After conducting an internal investigation, CALJ Adams determined that judicial candidates in Maryland generally seek election by running in both state Democratic primary and state Republican primary. SMF ¶ 18. As a result, CALJ Adams issued a Notice of Violation to Plaintiff for participating as a candidate in the 2016 election for Judge of the Circuit Court for Anne Arundel County, Maryland. SMF ¶ 19. Plaintiff was placed on Administrative Leave with Pay effective February 12, 2016. SMF ¶ 20.

Plaintiff promptly filed an Office of the Inspector General complaint on February 20, 2016, alleging that there was no formal proceeding before the COST in order for her to be placed

3

on administrative leave in violation of Section 8 of the D.C. Code § 2-1831.05. SMF ¶ 21. The

Plaintiff remained on administrative leave with pay while she fought for re-instatement by

vigorously protesting to the COST. SMF ¶ 22.

Eventually, Plaintiff appeared before the COST on July 13, 2016, to advocate for re-

instatement. SMF ¶ 23. The COST determined that Plaintiff violated OAH Code of Ethics

Section V and removed her from her ALJ position on August 2, 2016. SMF ¶ 24.

II.        **Charges of Discrimination**

On March 9, 2015, Plaintiff filed a charge of discrimination with the Office of Human

Rights (OHR), which was cross filed with the Equal Employment Opportunity Commssion

(EEOC). SMF ¶ 25. Plaintiff alleged race and color discrimination and retaliation. SMF ¶ 26.

On January 27, 2016, Plaintiff received notification of the official dismissal of her complaint

upon her written request. SMF ¶ 27. In that notice, it reported that "Complaintant states

Respondent has opened Principal Adminstrative Law Judge poisition slots to any Adminstrative

Lawe Judges inerested in the position. Complaintant states that this action has resolved her EEO

complaint." SMF ¶ 28. On February 17, 2016, Plaintiff sought to reopen her charge with OHR.

SMF ¶ 29. On September 29, 2016, OHR issued its determination on Plaintiff's request to

reopen her case and granted her the relief. SMF ¶ 30.

On August 26, 2016, rather than amend her current pending March 9, 2015 charge of

discrimination, Plaintiff filed a second charge of discrimination with EEOC alleging again race

and color discrimination and retaliation. SMF ¶ 31. Through the workshare agreement, on

September 2, 2016, EEOC notified Plaintiff that OHR would investigate the charge of

discrimination. SMF ¶ 32. On January 13, 2017, OHR began its investigation of both pending

charges of discrimination. SMF ¶ 33. On March 29, 2017, OHR dismissed Plaintiff's August

4

26, 2016 complaint per her September 14, 2017 request.  SMF ¶ 34.  The notice of dismissal only dismissed the August 26, 2016 complaint.  SMF ¶ 35.

### III.    Facts Relevant to the District

#### A.    The Office of Administrative Hearings

OAH is an administrative court that was created in 2001 by the Council of the District of Columbia to provide centralized adjudication services for several District agencies.   D.C. Code § 2-1831.01 *et seq.* (the OAH Establishment Act).  SMF ¶36.  As an independent agency, OAH is a neutral, impartial tribunal that holds hearings and issues decisions on a wide variety of subject matters including, but not limited to, unemployment compensation, Medicaid, rental housing, business licenses and regulatory violations. SMF ¶ 37.

In accordance with the OAH Establishment Act, the CALJ oversees OAH by appointment of the Mayor of the District of Columbia, with confirmation by the Council of the District of Columbia.  SMF ¶ 38.  The CALJ is responsible for the fairness, impartiality, effectiveness, and efficiency of OAH and has the authority to issue and implement procedures, practices and guidelines relating to the operation of the office.  SMF ¶ 39.  The CALJ does not have the authority to appoint, reappoint, discipline or remove ALJs.  SMF ¶ 40.

#### B.    The Commission on Selection and Tenure (COST)

The body that has the sole authority over the ALJs is the COST.  SMF ¶ 41.  The COST is an independent commission, as part of the statutory scheme to preserve the judicial independence of the ALJs.  SMF ¶ 42.

5

At all relevant times, the voting members of the included Commission Chairperson and Superior Court Judge Yvonne Williams, James Cooper, and Joseph Onek.   Nadine Wilburn from the D.C. Office of Attorney General and CALJ Adams serve as non-voting *ex officio* members of the COST.  SMF ¶ 43.

### C.    The OAH Code of Ethics for Administrative Law Judges

The OAG Code of Ethics shall apply to the Chief Administrative Law Judge and all Administrative Law Judges appointed to a position in the Office of Administrative Hearings (OAH) pursuant to Office of Administrative Hearings Establishment Act of 2001, D.C. Law 14-76, codified at D.C. Official Code§§ 2-1831.01 *et seq.,* as amended.  SMF ¶ 44.  Further pursuant to D.C. Code § 2-1831.05(a)(9), the Chief Administrative Law Judge shall develop and implement a code of professional responsibility for Administrative Law Judges.  SMF ¶ 45. Specifically, under § V(U) of the OAH Code of Ethics, an ALJ at OAH is prohibited from becoming a political candidate in a party primary or partisan general election.  SMF ¶ 46.

### D.    Ronald Jarashow Complaint

On February 4, 2016, CALJ Adams received a formal complaint from Ronald Jarashow, a former judge for the Circuit Court of Anne Arundel County, Maryland.  SMF ¶ 47.  Under §V(U) of the OAH Code of Ethics:

> An Administrative Law Judge shall resign from judicial office when the Administrative Law Judge **becomes a candidate either in a party primary** or in a partisan general election except that the Administrative Law Judge may continue to hold office, while being a candidate for election to or serving  as a delegate  in a jurisdiction's constitutional convention,  if otherwise permitted by law to do so.

6

SMF ¶ 48 (emphasis added).   Plaintiff participated in the Maryland party primary on April 26, 2016.  SMF ¶ 49.  Under §V(V) of the OAH Code of Ethics, "[a]n ALJ should not engage in any partisan political activity."  SMF ¶ 50.

## PROCEDURAL HISTORY

On April 6, 2017, Plaintiff filed the instant action [1] against the District of Columbia, Eugene Adams, Vanessa Natale, Shawn Nolen and Ronald Jarashow alleging that her removal violated the constitution and the DCWPA.  Plaintiff also had a matter that had been removed from Superior Court to this Court arising out of the same facts and circumstances.  *See Barber II,* 2017- cv- 1860 (KBJ).  In that complaint, Barber alleging claims of Title VII and DCHRA violations.  On May 22, 2017, Plaintiff filed an amended complaint [11].  All parties moved to dismiss the amended complaint [12, 13].  Further, the Court consolidated the two matters (Barber I and Barber II) and ordered a single response to the complaints [22].  All Defendants moved to dismiss the consolidated complaints [25, 26].  By order of this Court, on August 13, 2019, the District Defendants' motions were granted in part and denied in part.[1]  Specifically, all claims against Vanessa Natale and Shawn Nolen were dismissed in their entirety.  The following claims against the District and CALJ Adams remain:  Count I – DCHRA Race and Color Discrimination (District); Count II – DCHRA Retaliation (District); Count III – Title VII Race and Color Discrimination (District); Count IV – Title VII Retaliation (District); and Count V – DCWPA (District and Adams), which were refiled in a second amended complaint [49], as ordered by the Court.

---

[1]       Defendant Jarashow, who was separately represented by Counsel, was dismissed.  [44].

## LEGAL STANDARD

Summary judgment is appropriate upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is material if it could alter the outcome of the suit under the substantive governing law." *Slack v. Washington Metropolitan Area Transit Auth.*, 353 F. Supp. 3d 1, 6 (D.D.C. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Nor maysummary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant." *Diaz v. Washington Metropolitan Area Transit Auth.*, 243 F. Supp. 3d 86, 88 (D.D.C. 2017) (quoting *Anderson*, 477 U.S. at 248).

Conclusory allegations with no basis in the record will not allow the non-movant to escape summary judgment. *Id.* (citing *Ass'n of Flight Attendants-CWA, AFL-CIO v. United States Dep't of Transp.*, 564 F.3d 462, 465 (D.C. Cir. 2009)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Although courts should approach the employer's motion for summary judgment on employment discrimination claims with "special caution," Plaintiff nonetheless bears his usual burden to "designate specific facts showing that there exists a genuine dispute requiring trial." *Id.* (citing *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "[A]complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). As demonstrated below, Plaintiff cannot meet her burden on any claim in her second amended complaint.

**ARGUMENT**

**I.    Plaintiff Failed to Exhaust Her Administrative Remedies and Therefore Her Claims Under Title VII (Counts III and IV) Fail as a Matter of Law.**

Title VII of the Civil Rights Act prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2006). It is also unlawful under Title VII for an employer to retaliate against an employee because the employee "opposed" a practice proscribed by Title VII or because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a) (2006). A plaintiff seeking to recover damages under Title VII, must first exhaust her administrative remedies for each discrete act of unlawful discrimination or retaliation. *Amtrak v. Morgan*, 536 U.S. 101, 110 (2002); *Lewis v. City of Chicago*, 560 U.S. 205, 210 (2010).

Pursuant to 42 U.S.C. § 2000e–5(f)(1), the receipt of a right to sue notice is a condition precedent to the initiation of a Title VII civil action. Here, the record is completely devoid of any evidence that Plaintiff secured a right to sue letter before filing her suit seeking redress regarding her alleged Title VII violations (Counts III and IV). The record evidence in this matter shows that on March 9, 2015 and August 26, 2016, Plaintiff filed charges of discrimination alleging race and color discrimination and retaliation, SMF ¶¶ 25, 31. Both charges were filed with OHR and cross-filed with EEOC. *Id.* Plaintiff originally withdrew her March 9, 2015 charge, but later requested the matter be reopened. SMF ¶¶ 27, 29-30. In addition, after initially filing on August 26, 2016, OHR began its investigation of both complaint pursuant to the workshare agreement with EEOC. SMF ¶¶32-33. After no final action had been taken on either complaint by OHR, Plaintiff requested a withdrawal of both complaints and OHR issued a notice

9

of dismissal on March 29, 2017.  SMF ¶34.  However, that notice of withdrawal only addressed

Plaintiff's 2016 Charge.  SMF ¶35.  The records show no further action was taken on Plaintiff's

March 9, 2015 charge.  It is evident from the notice of dismissal that a right to sue letter was

being requested. *Id.*  However, there is nothing in this record that evinces that the EEOC issued a

right to sue letter for either charge of discrimination.  As such, Barber cannot proceed on her

Title VII claims as outlined in Counts III and IV and the Court must grant judgment in favor of

the District.

**II.      Plaintiff's Claims of Race and Color Discrimination Fail As A Matter of Law.**

Despite Plaintiff's failure to exhaust her adminstrative remendies regarding her Title VII

Claims (Counts III and IV), assuming *arguendo* that Plaintiff had properly exhausted her Title

VII claims, both her Title VII and DCHRA claims of race and color discrimination would still

fail as a matter of law.

### A.      Legal Standards

#### 1.      Title VII Standard

Under Title VII, to establish a prima facie case of race and color discrimination, the

plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse

employment action; and (3) the unfavorable action gives rise to an inference of discrimination."

*See Dobbs v. Roche,* 329 F. Supp. 2d 33, 44 (D.D.C. 2004).  *The McDonnell-Douglas* burden-

shifting framework governs the analysis.  *Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012); *Futrell*

*v. Dep't of Labor Federal Credit Union*, 816 A.2d 793, 803 (D.C. 2003).  "To survive a

summary judgment motion, Plaintiff must first "make a *prima facie* showing of discrimination

by a preponderance of the evidence."  *Futrell*, 816 A.2d at 803 (internal quotation marks and

ellipses omitted).  To make a prima facie case, Plaintiff must show "(1) he is a member of a

protected class; (2) he suffered an adverse employment action; and (3) the circumstances give rise to an inference of discrimination." *Kumar v. District of Columbia Water & Sewer Auth.*, 25 A.3d 9, 17 (D.C. 2011). "If a plaintiff fails to establish a prima facie case, the inquiry stops and a grant of summary judgment is appropriate." *McFarland v. George Washington Univ.*, 935 A.2d 337, 347 (D.C. 2007). "If the employee establishes a prima facie case, the employer bears the burden to produce evidence of a legitimate, nondiscriminatory reason for its actions. If the employer carries this burden, the burden shifts back to the employee to prove that the employer's stated reason is a mere pretext for discrimination." *Kumar*, 25 A.3d at 17 (citations omitted).

### 2.   DCHRA Standard

The DCHRA prohibits employers from discriminating against any individual on the basis of that individual's race and color. D.C. Code § 2-1402.11(a). District of Columbia courts follow federal courts' constructions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 to 2000e-16 (Title VII) in interpreting the DCHRA. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 n.17 (D.C.1993).

### B.   Barber Cannot Prove A Prima Facie Case of Race or Color Discrimination Under Title VII or DCHRA.

To survive summary judgment, Barber must show "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the circumstances give rise to an inference of discrimination. *Kumar v. District of Columbia Water & Sewer Auth.*, 25 A.3d 9, 17 (D.C. 2011).

### 1. Color Discrimination

Plaintiff identifies as a dark-skinned African-American. SMF ¶ 1. However, other than her conclusory allegations, there is no evidence in this record that Plaintiff's color of being a self-proclaimed "dark-skinned" was the basis for any actions taken against her. There is no

11

evidence as to what measure was used to determine Plaintiff's assertion of being dark-skinned. Further, the record is devoid of how, if in any way, Plaintiff's perceived dark skin, either directly or indirectly caused her to be discriminated against in violation of Title VII and the DCHRA. In fact, when asked in discovery what facts she has to support her claim of color discrimination, Plaintiff merely offered that she further relied on "expert statements made in the neuroscience classes she attended that darker skinned persons are subject to greater and more severe punishment than lighter skinned persons. They are also considered less intelligent than blacks of a lighter hue." SMF ¶ 56. This unsupported contention without any record evidence to support fails. There is simply a lack of evidence in this record where Plaintiff's color was basis for any action taken against her. Conclusory allegations, without more, cannot stave off judgment on this claim. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986) ("[A]complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Because there is no record evidence of color discrimination, the District is entitled to judgment on these claims.

### 2. Race Discrimination

On Plaintiff's claim of race discrimination, whether she is a member of a protected class is not at issue. However, Plaintiff cannot meet her burden on the additional elements of this claim. That is, Plaintiff cannot establish (2) that she suffered an adverse employment action; and (3) the circumstances give rise to an inference of discrimination. To meet her burden on the second prong, Plaintiff must show that the claimed actions against her amounted to an adverse employment action and those actions gave rise to an inference of discrimination. Here, on this record, Plaintiff cannot meet this burden. In her Second Amended Complaint, Barber alleges the following discrete acts of discrimination based on race and color:

12

- given less complex assingments than her Caucasian colleagues;

- passed over for the PALJ and Acting PALJ positions for a less qualified Caucasian colleague in December 2014, February 2015, and February 2016;

- required to take a literacy test;

- directed to resign and proposed for termination in February 2016;

- placed on adminstrative leave in February 2016;

- caused to be terminated from OAH in August 2016;

- filed ethical violations with the District of Columbia Discplinary Counsel and the Maryland Attorney Greivance Commission in September 2016;

*See* 2d Am. Compl. [49] at ¶¶ 36, 53.

Addtionally, according to Plaintiff's March 9, 2015, Charge of discrimination, she alleges two instaces of race discrimination. SMF ¶¶ 25-26. First, on November 10, 2014, she was not assigned to be acting PALJ in the absence of a PALJ, after having just complained to CALJ Tucker on November 7, 2014 about perceived discriminatory practices within OAH. *Id.* Second, she alleges that on December 29, 2014, she was not considered to be an acting PALJ in the absence of a PALJ. Further, in Plaintiff's August 26, 2016 charge of discrimination, she adds one additional claim of discrimination to include her non-selction as PALJ in February 2016.[2]

It is well established that in accordance with the OAH Establishment Act, the CALJ oversees OAH by appointment of the Mayor of the District of Columbia, with confirmation by the Council of the District of Columbia. SMF ¶ 38. The CALJ is responsible for the

---

[2]     Although Plaintiff's Second Amended Complaint identifies a third charge of discrimination and right to sue letter filed in September 2016 and issued on April 12, 2017, no such documents have been provided in this litigation. *See* 2d Am. Compl. [49] at 31. Further there are no allegations in the complaint that flow from the September 2016 charge of discrimination.

13

fairness, impartiality, effectiveness, and efficiency of OAH and has the authority to issue and implement procedures, practices and guidelines relating to the operation of the office. SMF ¶ 39. The CALJ <u>does not have the authority to appoint, reappoint, discipline or remove ALJs.</u> *Id.* These functions are solely within the authority of the COST, an independent commission, as partof the statutory scheme to preserve the judicial independence of the ALJs. SMF ¶¶41-42.

Here, each of Plaintiff's allegations of discrimination for CALJs Tucker and Adams' failure to appoint, promote or otherwise consider her for the position of PALJ are fundamentally rooted in error. Beginning under CALJ Tucker, the PALJs were meant to serve as an additional administrative aide to the CALJ, which would allow for efficiency within OAH in terms of assignment cases. SMF ¶ 51. These "positions" were not independent positions created by the COST. Further, selection or non-selection to act in the PALJ did not affect the terms or conditions of the position of ALJ. SMF ¶ 52. CALJ Tucker testified that she did not agree that there should be a pay difference for those working as a PALJ, as it was never meant to be a "promotion". SMF ¶ 53. Therefore, when Tucker made her selections for PALJ, they were kept at the same salary as an ALJ, kept their same primary duties as ALJ and only added the administrative duties of managing the assignment of cases. Actions taken by the prior CALJs and before her appointment as CALJ on the issue of how PALJs were decided and whether they received any additional compensation was outside her purview. SMF ¶ 55. Simply put, Plaintiff's non-selection by CALJ Tucker to be a PALJ was not an adverse action and the claim fails.

An "adverse employment action" under the DCHRA is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing a significant change in benefits." *Walden v. Patient-Centered Outcomes Research Institute,* 177 F. Supp. 3d 336, 342 (D.D.C. 2016) (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)) (interpreting the DCHRA). "To be significant, a change must have materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact might find objectively tangible harm." *Id*. (quoting *Douglas*, 559 F.3d at 552).

Even if found to be adverse, Plaintiff still cannot show that that her non-selection as a PALJ gives rise to an inference of race discrimination. Plaintiff alleges that on December 29, 2014, she and other "black" ALJs were not considered over white ALJs for a PALJ selection. This conclusory statement—without any record support—does not pass muster. Plaintiff offered no evidence that the white ALJs selected were similarly situated to her. "To create such an inference, the plaintiff must identify a similarly situated employee, outside [her] protected class, who was treated more favorably than the plaintiff." *See Dobbs v. Roche,* 329 F. Supp. 2d 33, 44 (D.D.C. 2004), citing *Holbrook v. Reno,* 196 F.3d 255, 261 (D.C. Cir. 1999). To be deemed similarly situated, the plaintiff must "demonstrate that all of the relevant aspects of [her] employment situation are nearly identical to those of the [alleged comparator]." *Id.*

Here, Plaintiff does no such thing. The only comparator she seeks to use is race and the fact they were both ALJs. There is no evidence in this record to compare Plaintiff and any selectee's employment situation as being nearly identical to establish that she has meet her burden. The only factors Plaintiff intends to rely on are the facts that they are white, and she is black and that they are all ALJs. She has offered no evidence comparing subject-matter experience, time in ALJ position, prior administrative experience, similar evaluations, same

strengths, etc.  In addition, because the position is meant to serve at the aide of the CALJ, part of the decision-making has to be subjective of the CALJs belief that an ALJ can handle the additional duties that come with being a PALJ.  Given Barber has not met her burden of proving that she was the better qualified candidate to serve in that role, and that her non-selection had an inference of discrimination, her complaint for race discrimination (Count I and III) both Title VII (if properly exhausted) and DHCRA fail as a matter of law and judgment must be granted in favor of the District on those claims.

### III. Barber Cannot Establish A *Prima Facie* Case of Retaliation Under TitleVII or DCHRA.

#### A. Legal Standards

##### 1. Title VII

The anti-retaliation provision of Title VII states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge,  testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

To establish the *prima facie* elements for retaliation, a plaintiff must show that he (1) engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two.  *Brown v. Brody,* 199 F.3d 446, 452 (D.C. Cir. 1999).  A challenged action may be considered retaliatory under Title VII if it would have dissuaded a reasonable worker from making or supporting a charge of discrimination.   *Burlington Northern & Santa Fe. Ry. Co. v. White,* 548 U.S. 53, 67 (2006).  Where, as in the instant case, there is no direct proof of discrimination and a plaintiff bases her

16

claim of retaliation entirely on circumstantial evidence, the Court considers a plaintiff's claims under the traditional *McDonnell Douglas* standard. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973). Moreover, a Title VII retaliation claim requires proof that the desire to retaliate was the but-for cause of the challenged employment action." *University of Tex. S.W. Med. Ctr. v.Nassar,* 133 S.Ct. 2517, 2533 (2013). Under this standard:

> it is not sufficient for plaintiff to demonstrate that a reasonable jury could find that retaliatory animus by plaintiff's supervisor was *a* cause for the referral. Rather, plaintiff must demonstrate that there is a genuine issue of material fact as to whether retaliatory animus was *the* cause for the referral.

*Rattigan v. Holder*, 982 F. Supp. 2d 69, 81 (D.D.C. 2013).

### 2.     DCHRA

To prove a retaliation claim under the DCHRA, a plaintiff must prove a protected activity, a materially adverse action, and a causal link between the two. D.C. Code § 2-1402.11.61 (a); *Grimes v. District of Columbia, Business Decisions Information Inc*., 89 A.3d 107, 112 (D.C.2014); *Bryant v. District of Columbia*, 102 A.3d 264, 267 (D.C. 2014); *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015); *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012). A "materially adverse action" is one that would "dissuade[] a reasonable employee from making orsupporting an equal employment claim." *Allen*, 795 F.3d at 47 n.5; *see also Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 51-52 (D.D.C. 2015) (noting that materially adverse actions need not be as significant as adverse actions for the purposes of a discrimination claim). Yet, "[a]n employee's decision to report discriminatory behavior cannot immunize that employeefrom those petty slights or minor annoyances that often take place at work and that all employeesexperience." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

17

Once a plaintiff makes this showing, the burden shifts to defendants to articulate a legitimate and non-retaliatory reason for the challenged actions. *Propp v. Counterpart Intern.*, 39 A.3d 856, 868 (D.C. 2012).   At that point, the court should consider "the ultimate question— whether [the plaintiff] presented sufficient evidence for a jury to find that retaliation . . . actually motivated the employer's decision." *Furline v. Morrison*, 953 A.2d 344, 353 (D.C. 2008).

Courts consider whether the jury could infer retaliation from a combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of [retaliation] that may be available to the plaintiff."   *Id*. at 354.  "But the emphasis is on the need for *evidence*:   As courts are not free to second-guess an employer's business judgment, a plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding an employer's articulated reasons for its decisions." *Id*.

### B.        Plaintiff Cannot Establish A *Prima Facie* Case of Retaliation.

Plaintiff has failed to establish a *prima facie* case of retaliation for:  l) making an informal complaint on November 7, 2014 for claimed discriminatory practices at OAH; 2) complaining to a PALJ about discriminatory practices in December 2014; and filing a charge of discrimination in March 2015.

#### 1.        Plaintiff Cannot Establish She Was Subjected to Adverse Actions.

##### a.        Plaintiff's Allegations of Non-Selections As A PALJ Are Not Adverse Actions.

*First,* Plaintiff alleges that on November 7, 2014, she filed an internal complaint with Acting CALJ Tucker regarding discriminatory practices within OAH.  SMF ¶ 6.  On November 10, 2014, Acting CALJ Tucker made an appointment for a PALJ and did not select Plaintiff.

18

SMF ¶ 11.   Barber also contends she was not selected for PALJ positions in December 2014 and February 2016 because of her engaging in protected activity.

*Second,* Barber alleges that in December 2014, she complained to a PALJ about the discriminatory practices around the selection of PALJs.  As a result of her complaint, she alleges that she was not selected on December 29, 2014 to serve as a PALJ. *Id.*

*Third,* Barber alleges that on March 9, 2015, she filed a formal complaint with OHR, which was cross-filed with the EEOC for discrimination and retaliation.  As a result of this complaint, she alleges that CALJ Adams in February 2016 failed to promote her to PALJ, placed her on administrative leave, recommended her for termination, caused her to be terminated from OAH, and reported her for ethical violations with the District of Columbia Disciplinary Counsel and the Maryland Attorney General Grievance Commission in September 2016.

None of Plaintiff's non-selections as a PALJ constitute an adverse action.  An adverse employment action requires a tangible employment action.  *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 95 (D.D.C. 2007).  A tangible employment action constitutes a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  *Id*.  Here, Plaintiff did not suffer a tangible employment action based on the cone-selection.  The CALJ of OAH does not have the statutory authority to promote, discipline or remove ALJs within OAH.  *See* D.C. Code § 2-183 l.05(a)(5) (the CALJ has the authority to promote *staff* employed by OAH *"other than Administrative Law Judges"*) (Emphasis added).  By concept, the PALJ position is an opportunity for ALJs to participate in the assignment and distribution of cases within a jurisdictional cluster.  The position carries no increased salary.  There is no evidence in this case that either Acting PALJ Tucker or CALJ Adams paid any ALJ a higher salary to

19

perform the functions of a PALJ.  By contrast, prior to Acting PALJ Tucker assuming her role, there were two PALJs that had been given an increase by the prior CALJ, but CALJ Tucker chose to not keep that practice.  SMF ¶ 9.  Her rationale was that the position did not warrant an increase in salary.  SMF ¶ 8.  To her point, no PALJ selected during CALJ Tucker or CALJ Adams's tenures at all times relevant were given an increase in salary.  *Id*.  Further, because Tucker was not responsible for the increase given to the two judges by the prior CALJ, she did believe she had the authority to decrease their salary.  SMF ¶¶ 9-10.  Regardless of the basis for the non-selection, there is no evidence in the record that Plaintiff's job was impacted in any way by her non-selections as a PALJ.  There is no evidence that her job duties did changed or that her salary and benefits did not the same. As a result of not being assigned the PALJ position, Barber suffered no tangible employment action as a result of her prior complaints against and thus cannot establish that an adverse action was taken against her because of protected activity.

### b.    Administrative Leave is Not an Adverse Action.

Being placed on administrative leave is not an adverse action.  *Jones v. Castro,* 188 F. Supp. 3d 169 (D.D.C. 2016) (court held that a 19 month period of paid administrative leave while an investigation is ongoing—an initial two-week period followed by periodic extensions— does not, by itself, constitute an adverse action).  Here, on February 4, 2016, CALJ Adams received a formal complaint from Ronald Jarashow, a former judge for the Circuit Court of Anne Arundel County, Maryland. SMF ¶ 17.  Under § V(U) of the OAH Code of Ethics:

> An Administrative Law Judge shall resign from judicial office when the Administrative Law Judge **becomes a candidate either in a party primary** or in a partisan general election except that the Administrative Law Judge may continue to hold office, while being a candidate for election to or serving  as a delegate  in a jurisdiction's constitutional convention,  if otherwise permitted by law to do so.

20

SMF ¶ 48. (emphasis added).

Under §V(V) of the OAH Code of Ethics, "[a]n ALJ should not engage in any partisan political activity."  SMF ¶ 50. Upon speaking with Plaintiff about the complaint, Plaintiff offered that she was not in violation of the OAH Code of Ethics, had permission to run and would not withdraw from the election.  Thereafter, on February 12, 2016, Plaintiff was placed on administrative leave pending the investigation of the potential ethics violation.  SMF ¶ 20. There is no claim that this placement caused Plaintiff any financial loss or a material change in her employment.  As such, Plaintiff cannot establish on this record she suffered an adverse action when she was placed on administrative leave.

### 2.    Barber Cannot Establish A Causal Connection Between the Alleged Protected Activity And the Adverse Employment Actions.

Assuming *arguendo* that Barber established that she suffered an adverse action, by not being assigned the PALJ positions, being placed on administrative leave, being recommended for termination and her ultimate termination, her allegations of retaliation are nonetheless fatally flawed, as she cannot establish any causal connection between the protected activity and the alleged adverse action.  With regard to the causal component of a claim of retaliation, courts have routinely held that a causal connection "may be established by showing that the employer had knowledge of the employee's protected  activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985).  Courts have routinely held that a causal connection "may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). According to *Keys v. Donovan,* the Supreme Court held:  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment

21

action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Keys v. Donovan,* 37 F. Supp. 3d 368, 372 (D.D.C. 2014) *citing Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (internal citations omitted).

While Defendants do not believe that Plaintiff's November 2014, December 2014, and February 10, 2016 non-selections are adverse actions, as argued, *supra,* assuming such non-selections are found to be adverse actions, the claims still fail because Plaintiff cannot establish a causal connection between the alleged adverse actions and her claimed protected activity.

### a.   November and December 2014 Protected Activity

Here, Plaintiff attempts to establish a causal connection between her allegation of the date of her "informal complaint" and when the non-selection in November 2014 took place. However, in deposition, Plaintiff first testified that in November, when CALJ Tucker first came aboard, she made a complaint about how there was a disparity in the case assignments between her and an ALJ on her team.  SMF ¶ 6.  As a result, CALJ Tucker made PALJ appointments that specifically excluded her.  Due to the proximity of the alleged complaint and the non-selection, Plaintiff alleged it was retaliatory.  However, Barber then doubled down on that assertion and stated that actually CALJ Tucker's appointment of PALJs was being done identical to her predecessor Mary Oates Walker and that both she and ALJ Paul Handy complained that the selection lacked transparency.  SMF¶ 64.  There is no evidence in this record that the process used by Mary Oates Walker was discriminatory.  While normally temporal proximity may establish a causal connection to make a *prima facie* case of retaliation, by Plaintiff's own admission CALJ Tucker's non-selection of her was in fact not in response to her complaints of

22

discriminatory practices at all.  Rather, based on her testimony it was rooted in a predetermined process that CALJ Tucker used by her predecessor.

With regards to Plaintiff's alleged complaint of discrimination in December 2014, the record is devoid of any evidence that Plaintiff made a complaint at all.  In fact, at deposition, Barber testified that she complained about the selection of white PALJs with other black ALJs.  SMF ¶ 66.  She further testified that she may have also complained to her PALJ but could not say for certain.  *Id.*  This allegation is shaky at best.  Without any evidence to support her contention, this allegation lacks merit.  Further, there is no evidence in this record that CALJ Tucker knew about her complaints or took any actions because of the complaint.  *Hazward v. Runyon*, 14 F.Supp.2d 120, 124-5 (D.D.C. 1998) (Court finding that without knowledge of the protected activity, a causal link cannot be made to permit an inference of retaliatory motive.)  Barber haphazardly asserts that in December with PALJ Scott Harvey, a white male, left his position as a PALJ, but Tucker refused to put her in the position despite her qualifications, made her complete a literacy test as part of her application were all retaliatory.  SMF ¶¶ 13-15.  These facts are conclusory at best.

### b.    March 9, 2015 Charge of Discrimination

Next, with regards to Plaintiff's claims of retaliation based on her March 9, 2015 charge of discrimination, Plaintiff cannot establish a causal connection to her 1) February 10, 2016, PALJ non-selection by CALJ Adams, 2) her being placed on administrative leave; 3) her recommendation for termination; and 4) her removal by the COST as an ALJ.

Prior to her non-selection on February 10, 2016, CALJ Adams established as of February 8, 2016, the date the "roll-out" plan was set to be implemented, and any open PALJ position in the Public Assistance and Benefits cluster would be offered to the next ALJ within the cluster in

23

alphabetical order.  SMF ¶ 31.  Barber would be next in line to serve as PALJ under this plan. *Id.*  However, Barber was never formally offered the position because on February 4, 2016, she became the subject of a formal ethics inquiry that was initiated by Ronald Jarashow, an independent member of the public having no connection to OAH.  SMF ¶ 47.  As such, ALJ Sharon Goodie, a white female, was offered the PALJ position on or about February 10, 2016, after the decision was made to place Barber on administrative leave with pay pending the ethics investigation.  SMF ¶ 65.  At the conclusion of the investigation as to whether Barber violated the OAH Ethic Code of SMF ¶ 18.  Conduct, CALJ Adams recommended to the COST that Plaintiff be removed.  *Id.*  After a hearing before the COST, Plaintiff was removed from her position as ALJ with OAH in August 2016 by a unanimous vote of the voting members of the COST.  *Id.*

Here, there was an 11-month interval between Plaintiff's charge, filed on March 9, 2015 (before CALJ Adams was ever appointed), and the alleged adverse actions of not being assigned as the PALJ on February 10, 2016, being placed on administrative leave, recommended for termination and removed as an ALJ by the COST.  There is a lack of evidence in this record that CALJ Adams or the COST were aware of the March 9, 2015 Charge or otherwise knew about the alleged protected activity.  *See Hazward, supra* at 124-5.  Further, the disconnect increases given the fact that CALJ Tucker was the subject of the initial charge and it was CALJ Adams that made the PALJ assignment in February 2016, placed Plaintiff on administrative leave and recommended her removal.

Lastly, Plaintiff's August 2, 2016 removal by the COST also does not pass muster on the test of a causal connection to her alleged protected activity to prove a *prima facie* case of retaliation.  As argued *supra,* one way to show causal connection is through temporal proximity.

In this instance, at the time of her August 2, 2016, removal, more than 17 months had since the filing of her March 9, 2015 charge of discrimination. Given the increased length of delay and the absence of any other evidence of causation, Plaintiff cannot prove causation.

Even if Plaintiff could prove a *prima facie* case of discrimination or retaliation, the District had legitimate, non-discriminatory, non-retaliatory reasons for taking the actions against Plaintiff. Moreover, even assuming *arguendo* that Plaintiff could establish a causal nexus, any inference of retaliation is negated where the evidence of retaliatory motive is directed at a non-decisionmaker. *See Furline v. Morrison,* 953 A.2d 344, 350-351 (D.C. 2008) (an independent investigation removed any taint on the suspension left by an allegedly biased supervisor; even if the supervisor's recommendation was vindictive or discriminatory, "the review process ensured that the [employee] was disciplined solely for the legitimate reason given.").

Here, the COST terminated Barber's employment after conducting an investigation and formal proceeding on July 13, 2016. CALJ Adams, while a non-voting member of the COST as the CALJ, did not participate in the formal proceeding and had no statutory authority to terminate. He made the recommendation as the CALJ. SMF ¶ 18. Other than her baseless unsupported factual assertions, there is no authority in this jurisdiction that precludes CALJ Adams from speaking with the COST about his recommendation during a COST meeting, or otherwise providing a basis for his recommendation.

Moreover, OAH, as the independent body that has the sole authority over the ALJs they are charged with enforcement of the COST disciplinary procedures. SMF ¶¶ 36-37. Their adherence to this charge, without more, does not constitute and adverse employment action. There is no evidence on this record that the terms and conditions of Barber's employment

25

included a right to expect that she would be allowed to continue her responsibilities while she was facing an ethical charge that could and did subsequently result in her dismissal.

For all these reasons, the Court should grant judgment to the District on Barber's Title VII and DCHRA claims of retaliation (Counts II and IV).

## IV.    The District Had Non-Discriminatory Legitimate Business Reasons For Their Actions Against Plaintiff

As shown above, Plaintiff cannot prove a prima facie case of discrimination or retaliation.  Under the *McDonnell-Douglas* framework, this ends the inquiry and the burden doesnot shift to the District to supply its actual legitimate, non-discriminatory and non-retaliatory reasons for the challenged actions.  *See Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012).  Here, the District had a legitimate non-discriminatory reason for terminating Plaintiff and Plaintiff cannot show the reason was false and that discrimination was the real reason.  *See St. Mary's Honor Center, et al. v. Hicks,* 509 U.S. 502, 113 S. Ct. 2742 (1993) (if a nondiscriminatory reason is provided, the presumption raised by the *prima facie* case is rebuttedand drops from the case).

On February 4, 2016, CALJ Adams received a complaint from Ronald Jarashow, an independent private citizen of the State of Maryland, asking for Plaintiff's immediate resignation or termination for violating §V(U) of the OAH Code of Ethics. SMF ¶ 47.  Under §V(U) of the OAH Code of Ethics:

> An Administrative Law Judge shall resign from judicial office when the Administrative Law Judge **becomes a candidate either in a party primary** or in a partisan general election except that the Administrative Law Judge may continue to hold office, while being a candidate for election to or serving  as a delegate  in a jurisdiction's constitutional convention,  if otherwise permitted by law to do so.

26

SMF ¶ 48. (emphasis added). Plaintiff participated in the Maryland party primary on April 26, 2016. SMF ¶ 49.

Under §V(V) of the OAH Code of Ethics, "[a]n ALJ should not engage in any partisan political activity." The Maryland State Board of Elections asserts, and the Maryland Court of Appeals agrees that party primaries are partisan, even for judicial candidates. Quoting the Maryland Court of Appeals:

> There is no evidence of a practice separately confining nominees for the circuit court to the so-called nonpartisan ballot as mandated by§ 9-206(a)(5); nor is thereany evidence that the State Board of Elections has ever demanded that political parties use a nonpartisan ballot for their circuit court nominees. Thus, the State Board of Elections maintains a continuing practice and interpretation of§ 9- 206(a)(5) that views judicial primaries as partisan affairs, which is due a level of deference.

*Suessman v. Lamone,* 862 A.2d 1, 5 (Md. 2004).

Based on OAH's investigation and Plaintiff's inability to provide a plausible explanation of her political activity on February 5, 2016, the decision was made to refer her to the COST for disciplinary process. SMF ¶ 18. A formal proceeding before the COST, in which Barber was allowed to present evidence and call witnesses, was held on July 13, 2016. *Id.* As a result of the formal proceeding, the COST made the independent decision to terminate Barber's employment on August 2, 2016. *Id.* Because the Districts has presented non-discriminatory/non-retaliatory reason for Plaintiff's termination, Plaintiff bears the burden to show pretext.

## V.    Plaintiff's Claim Under the DCWPA Fails as a Matter of Law.

Plaintiff also alleges that the District and CALJ Adams retaliated by terminating her employment for "protected activities" under the meaning of the DCWPA. In order for her claim to survive summary judgment she must establish that: (1) she made a "protected disclosure" or

27

refused to comply with an illegal order; (2) a supervisor took or threatened to take a "prohibited personnel action" against her; and (3) the disclosure or refusal was a "contributing factor" in the personnel action. *Ukwuani v. District of Columbia*, 241 A.3d 529 (D.C. 2020). Here, the evidence of record is plain that Plaintiff has failed to meet both elements (1) and (3). The alleged "protected disclosures" either do not qualify under the DCWPA or Plaintiff has failed to show a causal link between the disclosure and the retaliatory personnel action. Furthermore, even if the Plaintiff could muster a demonstration of all three elements for a prima facie case, the record unquestionably shows that she would have lost her job anyway on the legitimate grounds that she violated the OAH Code of Ethics as decided by the independent COST. For these reasons, the Court should grant summary judgment in Defendants' favor on Plaintiff's DCWPA claim (Count V).

A.    **Plaintiff Cannot Make Out a Prima Facie Case of Retaliation Under the DCWPA.**

1.    **Plaintiff's Alleged "Protected Disclosures" Do Not Meet Definitions For a "Protected Disclosure" under the DCWPA.**

A "protected disclosure" is defined to include "any disclosure of information . . . to any person by an employee . . . that the employee reasonably believes evidences," among other things, waste, fraud, abuse of authority, a violation of law or a substantial and threats to public health or safety without fear of retaliation or reprisal. *See* D.C. Code § 1-615.51. The employee must hold such a belief at the time the whistle is blown, and the belief must be both sincere and objectively reasonable. *See Freeman v. District of Columbia*, 60 A.3d 1131, 1143 (D.C. 2012). The reasonableness of the belief is evaluated under the "disinterested observer test," which asks whether "a disinterested observer with knowledge of the essential facts known to and readily

ascertainable by the employee reasonably [could] conclude that the actions of the government evidence illegality?" *Zirkle v. District of Columbia*, 830 A.2d 1250, 1259-60 (D.C. 2003).

A review of the record reveals that Plaintiffs alleges three protected disclosures during the events that led up to her removal from her ALJ position, which are: (1) An oral complaint to interim CALJ Wanda Tucker in November 2014 asserting that African American ALJs were receiving less complex cases than their Caucasian counterparts; (2) her March 9, 2015, Charge of discrimination alleging racial bias and retaliation, regarding her not being selected for a PALJ position; and (3) a formal complaint with the Office of the Inspector General in approximately January 2016 alleging improper removal from her ALJ position. None of the allegations meet the criteria to be considered a "protected disclosure" under the DCWPA.

Initially, the oral complaint to interim CALJ Tucker in November 2014 does not meet the requirements of a "protected disclosure" under the DCWPA. Plaintiff's sole concern is the allocation of complex cases amongst the ALJs, which she perceived the distribution to be racially biased. SMF ¶ 6. The distribution of cases a simple business administrative policy clearly does not pose a threat to public health or safety. However, Further, Plaintiff fails to show the "protected disclosure" is relevant regarding waste, fraud, abuse of authority or a violation of law. Notably, CALJ Tucker at the time of the complaint was newly assigned as the interim CALJ. The record does not show nor does Plaintiff allege that CALJ Tucker previously was responsible for the distribution of cases amongst the ALJs. As such, a disinterested observer could view the initial conversation as a discussion about business processes as opposed to a discussion about racial bias in the workplace, especially because Plaintiff presented no quantifiable evidence of bias. Plaintiff Barber did not produce evidence showing the number of complex cases distributed to Caucasian ALJs versus African American ALJs. Nor did she

provide a qualitative analysis of how she determined which cases were more complex than others. Plaintiff's sole assessment tool was a review of the eCourt system, but there was no presentation of how she interpreted the data in the eCourt system to make the determination that there was bias in the distribution of complex cases. SMF ¶ 67. As such, the initial conversation with the newly assigned interim CALJ was simply a discussion about a business practice. "A mere policy disagreement with an agency or supervisor is not enough to show either gross management or a substantial and specific danger to public safety; an employee must disclose such serious errors by the agency that a conclusion that the agency erred is not debatable among reasonable people." *Ukwuani*, 241 A.3d at 529, 553. Therefore, the November 2014 oral complaint regarding the distribution of complex cases is not a protected disclosure under the DCWPA.

The second "protected disclosure" in March 2015 also does not meet the criteria under the DCWPA. Plaintiff alleged that she was passed over for a PALJ promotion because of racial bias. Once again, there is no obvious threat to public health or safety. From a busines operational standpoint Plaintiff has not provided any evidence that her not being selected for a PALJ position has caused waste, fraud, or involved an abuse of authority. It appears that Plaintiff brings this protected closure as a violation of law. However, Plaintiff's racial contentions are easily dismissed. As previously noted above, interim CALJ Tucker was newly assigned to the position. SMF ¶ 4. The selection of the white ALJ was her first selection and there is no indication that the selection was based on race. In fact, by Barber's own admission, CALJ Tucker used the same methodology used by her predecessor Mary Oates Walker. SMF ¶ 7. There was no historical record to support a theory of racial bias when it came to CALJ Tucker's selection for a PALJ who happened to be white when she was not involved in other

30

hiring decisions.  Thus, the March 2015 allegation does not meet the requirements for a "protected disclosure" under the DCWPA.

The last "protected disclosure" a complaint to the Office of the Attorney General in January 2016 alleged a violation of due process rights due to Plaintiff being placed on administrative leave by CALJ Adams also does not meet the criteria for a "protected disclosure" under DCWPA.  The disclosure does not qualify under any of the aforementioned enumerated categories.  With regard to the allegation that CALJ Adams violated Plaintiff's due process rights under D.C. Code 6B § 3734.6, Plaintiff has failed to read the section in its entirety; particularly, § 3734.1, which states "If the Commission institutes a formal proceeding against an Administrative Law Judge, it shall issue a written notice to the Administrative Law Judge advising him or her that the investigation has led to the institution of a formal proceeding against him or her."  The Commission in this instance is the COST, which has the sole discretion to appoint, renew and remove ALJs from their positions.[3]  However, in this instance, CALJ Adams suspended Plaintiff on February 12, 2016, due to her violating OAH Code of Ethics Section V.  Notably, the establishment of the Code of Ethics for ALJs is at the sole discretion of the CALJ.[4]  Moreover, CALJ Adam's action was taken independent of the COST followed by a notification to the COST along with a recommendation for her removal; all of which is consistent with the authority of the CALJ position.

Plaintiff also contends that being placed on administrative leave violated due process under Title D.C. Code 6B § 3734.6 as well as the District of Columbia's Personnel Manual, which limited a suspension to 10 days.  Once again, Plaintiff has failed to fully read through the

---

[3]     D.C. Code § 2-1831.06(b) states the Commission on the Selection and Tenure (COST) shall have final authority to appoint, reappoint, discipline, and remove Administrative Law Judges.
[4]     D.C. Code § 2-1831.05(a)(9) The Chief Administrative Law Judge shall develop and implement a code of professional responsibility for Administrative Law Judges.

corresponding regulation.  Section 3741 of the personnel manual titled Summary Suspension of an Administrative Law Judge states in § 3741.1 that a Chief Administrative Law Judge may summarily suspend an Administrative Law Judge without pay if there is cause for discipline or removal pursuant to section 3729, which includes conduct violations.[5]  Section 3741.2 states "Any summary suspension imposed by the Chief Administrative Law Judge may last no longer than nine (9) days."  However, once the COST is notified and begins a review of the evidence, § 3741.7 states the summary suspension shall not be stayed during the pendency of the matter before the Commission.  Therefore, in this instance the COST did not initiate the suspension, CALJ Adams had the authority to suspend Plaintiff.  As such, the perceived violation of her due process rights cannot be considered a "protected disclosure" under the DCWPA.

The analysis above clearly demonstrates that the oral complaint in November 2014; the March 2015 racial bias complaint, and the OIG complaint in January 2016 all do not meet the requirements of a "protected disclosure" under the DCWPA.  Therefore, the summary judgment as requested on this claim (Count V) should be granted.

### 2. There is No Causal Relationship Between the Alleged "Protected Disclosures" and the Lack of Selection for PALJ or Removal From the ALJ Position.

Even if Plaintiff's three purported disclosures qualify as protected under the DCWPA, Plaintiff cannot show that the disclosures were a "contributing factor" in the personnel action. The evidence of record does not reveal a causal relationship between the "protected disclosures" and Plaintiff's removal from her ALJ position.

---

[5]    D.C. Personnel Manual § 3729 Cause to discipline or remove an Administrative Law Judge under the Act includes any of the following:  Willful misconduct in office, violation of applicable law or rules, including without limitation, any violation of a code of professional responsibility applicable to the Administrative Law Judge pursuant to section 8(a)(9) of the Act, D.C. Official Code § 2-1831.05(a)(9).

32

First, neither CALJ Tucker nor CALJ Adams had the authority to remove Plaintiff from her ALJ position. As previously discussed above, the sole authority for the appoint, renewal, and termination of ALJs rests solely with the COST. Plaintiff's "protected disclosures" were not made to the one entity that could have removed her from an ALJ position. During her deposition Plaintiff was specifically asked if the COST retaliated against her for the email that she sent to the OIG in January 2016 after she was placed on administrative leave. Barber could not provide any evidence that the independent body of the COST was aware of the complaint and retaliated against her by removing her from the ALJ position. Barber's sole argument was an objection to CALJ Adams having "*ex parte*" communications with the COST, which shows a lack of understanding of how the COST functions. CALJ Adams is a non-voting member of the COST; however, he is a member of the COST that participates in all meetings as well as gives his opinion on the retention of ALJs by regulation.[6] The final decision about appointment, renewal, and termination of ALJs rests with the three voting members of the COST. In this particular instance, the three voting members voted to remove Plaintiff after the July 13, 2016, hearing. Thus, there is no causal relationship between the alleged "protected disclosures" and the removal action by the COST.

There is also no causal relationship between the alleged "protected disclosures" and other ALJs, particularly white ALJs, being selected for PALJ positions aside from Plaintiff. Plaintiff Barber was asked at her deposition to provide evidence that CALJ Tucker retaliated against her

---

[6]    D.C. Code §2-1831.07(a) COST shall consist of 3 voting members. The voting members of COST shall serve staggered terms, as provided in subsections (c) and (d) of this section. One voting member shall be appointed by the Mayor, one voting member shall be appointed by the Chairman of the Council of the District of Columbia, with the approval of a majority of the Council, and one voting member shall be appointed by the Chief Judge of the Superior Court of the District of Columbia. The Attorney General, or his or her designee from within the ranks of the Senior Executive Attorney Service, and the Chief Administrative Law Judge shall serve as non-voting ex officio members of COST.

for complaining about African Americans receiving fewer complex cases.  She could not specifically point to any evidence except what she deemed was a "literacy test".  SMF ¶ 58. CALJ Tucker openly requested applications to fill a vacant ALJ position and included some additional requirements that everyone applying for the position needed to meet.  Plaintiff nor other African American ALJs were not singled out as the only ones that had a different application process.  A disinterested observer would be hard pressed to find racial discrimination as the reason CALJ Tucker did not select ALJ Baber for the PALJ position.

Lastly, regarding Defendant CALJ Adams.  There is no evidence in the record to support a causal relationship between the asserted "protective disclosures" and the actions of CALJ Adams.  As clearly stated above, CALJ Adams did not have the authority to remove ALJ Barber from her position.  The COST removed ALJ Barber from her position for violations of the OHA Code of Ethics.  When specifically questioned during her deposition about the actions of CALJ Adams, Plaintiff stated that CALJ Adams placed her on administrative leave and denied her appointment as a PALJ.  SMF ¶ 62.  Plaintiff consistently believed that CALJ Adams was influenced and informed of her racial bias allegations by interim CALJ Tucker.  The notion that CALJ was informed about prior department matters is not far-fetched considering he would be the person in charge of the ALJs.  However, knowledge alone does not equal deliberate bias against an individual.  Plaintiff offers no evidence that CALJ Adams had a vendetta against her or other African Americans in the section after he was assigned.  There is no evidence that CALJ Adams spoke harshly or disciplined Plaintiff.  To the contrary, CALJ Adams received a complaint, which he investigated and determined that Plaintiff had violated the OAH Code of Ethics.  He then turned the matter over to the COST to make a final determination.

Based on the above, there is no causal relationship between the Plaintiff's alleged "protected disclosures" and her failure to be promoted to a PALJ position or her removal by the COST. Accordingly, the Court should enter judgment in favor of Defendants on Plaintiff's DCWPA claim.

## CONCLUSION

For these reasons, the Court should enter judgment in favor of Defendants on all claims in Plaintiff's Second Amended Complaint.

Date:  March 5, 2021

Respectfully Submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ Alicia M. Cullen
ALICIA M. CULLEN [1015227]
Chief, Civil Litigation Division, Section III

/s/ Kerslyn D. Featherstone
KERSLYN D. FEATHERSTONE [478758]
Senior Assistant Attorney General
ANTOINE M. WILLIAMS [16322919]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 7224-6600  (202) 256-2810
Fax: (202) 741-8924 (202) 741-8995
Email:  kerslyn.featherstone@dc.gov
antoine.williams1@dc.gov
*Counsel for Defendants District of Columbia and Eugene Adams*

35